United States District Court
Southern District of Texas
**ENTERED**
October 11, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TABARI S STRONG, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-131 |
| | § | |
| BRAD  LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN ACTION**

This civil rights action was filed by Tabari Sharrieff Strong, a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless of whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir.1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam), *cert. denied*, 527 U.S. 1041 (1999). For purposes of screening, Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, it is respectfully recommended that Plaintiff's RLUIPA claim for injunctive relief against Warden Matt Barber[1] be retained and service ordered on Warden Barber in his official capacity. Additionally, it is respectfully recommended that Plaintiff's retaliation claim for injunctive relief against Warden Matt Barber be retained and service ordered on Warden Barber in his official capacity. It is further respectfully recommended that Plaintiff's excessive force claims be retained and service ordered on Sergeant Lorenzo Diaz, Sergeant Jose Fernandez, Officer Megan Gonzalez, and Officer Anthony Mackey in their individual capacities. Finally, it is respectfully recommended that Plaintiff's remaining claims be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I.   JURISDICTION

Jurisdiction and venue are proper because the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID), and he is currently confined in the McConnell Unit (MCU) in Beeville, Texas. He is serving a life sentence without parole for capital murder.

Plaintiff is a Muslim and in April 2012, he filed a Religious Land Use and Institutionalized Persons Act (RLUIPA) action against the TDCJ seeking to wear a quarter-inch beard. Following the decision in *Garner v. Kennedy*, 713 F.3d 237 (5th Cir.

---

[1] Gary Currie was serving as warden during the time of the incidents giving rise to the complaint; however, Currie has since left the McConnell Unit. Matt Barber is now the warden and is the only defendant in a position to affect any policy change at the facility presently.

2013), Plaintiff was granted a preliminary injunction to grow and maintain a quarter-inch beard while defendants appealed the injunctive relief. (Case No. 2:12-cv-106, D.E. 67). Defendants eventually dismissed their interlocutory appeal based on the Supreme Court's decision in *Holt v. Hobbs*, 135 S.Ct. 853 (2015), but the case was stayed as the TDCJ worked on developing a new beard policy and the *Ali* case remained pending before the Fifth Circuit. According to policy effective August 1, 2015, TDCJ Muslim prisoners can now wear a half-inch beard. However, on May 2, 2016, the Fifth Circuit affirmed the *Ali* trial court and held that Ali could wear a fist length beard. *Ali v. Stephens*, 822 F.3d 776, 793-94 (5th Cir. 2016).

On April 22, 2016, Plaintiff filed his original complaint pursuant to 42 U.S.C. § 1983 and named 69 defendants. (D.E. 1). The subject of the petition is the pattern of retaliatory conduct and the use of excessive force allegedly committed by the staff of the Texas Department of Criminal Justice's McConnell Unit in Beeville, Texas. (D.E. 1).

On May 13, 2016, a *Spears*[2] hearing was held, (D.E. 8), and on July 25, 2016, the Court entered an Order For More Definite Statement, requiring Plaintiff to submit a more definite statement of the facts involved in this action. (D.E. 10). On August 22, 2016, Plaintiff filed a More Definite Statement pursuant to the Court's order. (D.E. 11). The following representations were made in Plaintiff's original complaint (D.E. 1), at the *Spears* hearing (D.E. 8), or in Plaintiff's more definite statement (D.E. 11):

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

In February 2013, Plaintiff was given the right to wear a ¼ inch beard in his other civil suit. Plaintiff alleges a course of retaliatory conduct which began around the same time as he was given the right to wear a ¼ inch beard. (D.E. 11, Page 3). Plaintiff asserts the retaliation heightened on or about November 22, 2013, when then Warden Gary Currie[3] instructed his subordinates to forge disciplinary cases against Plaintiff if he continued to wear his beard. (D.E. 11, Page 3). Starting in October 2013, Plaintiff was told he would have to be clean shaven to go to the cafeteria for meals and some officers would close him in his cell to prevent him from going to the cafeteria. (D.E. 8, Pages 7-8). The denial of meals was not an everyday occurrence and he believed officers were "nitpicking" because he had filed grievances against them. (D.E. 8, Page 11). On two occasions, officers brought Plaintiff a pork tray although he is on a pork-free diet due to his religious beliefs. (D.E. 8, Page 12-13). Plaintiff indicated that the problem regarding access to meals worked itself out by mid-2014. (D.E. 8, Page 11). Plaintiff did not indicate he had lost any weight or suffered any health problems due to the lost meals which occurred about once a week.[4] (D.E. 8, Page 14).

Starting around November 13, 2013, Plaintiff alleges he was regularly denied recreation time outside of his cell. (D.E. 8, Pages 17-18). Plaintiff contends when it came to be his turn to have recreation time, the officers would indicate there was a shortage of staff due to breaks or responding to situations with other inmates. (D.E. 8, Page 17).

---

[3] Plaintiff claims Gary Currie breached his contract with the United States District Court and Plaintiff. However, there was no existing contract, and Plaintiff has no cognizable claim for breach of contract.

[4] *See Green v. Ferrell*, 801 F.2d 765 (5th Cir. 1986) (holding even on a regular basis two meals a day may be adequate); *Berry v. Brady*, 192 F.3d 504 (5th Cir. 1999) (holding prisoner, who was denied meals but did not allege any specific physical harm other than hunger, failed to state a claim upon which relief may be granted).

Plaintiff was supposed to be allowed one day out for recreation a week and at least two times each month he was refused his recreation time. (D.E. 8, Page 17). Plaintiff experienced this denial of recreation time until around October of 2014. (D.E. 8, Page 18). Plaintiff does not allege any physical injury resulting from this loss of recreation, just that he feels he is not in shape like he is supposed to be.[5] (D.E. 8, Page 20).

Plaintiff alleges that from November 2015 to February 2016 he was housed inadequately. (D.E. 8, Pages 21-22). Around November 2015, Plaintiff was put in ten cell of eleven building because he allegedly caused an altercation with another inmate. (D.E. 8, Page 23). The cell had no working lights, was infested with ants, and was damp (D.E. 8, Pages 23-24). Plaintiff suffered numerous ant bites and guards refused to allow Plaintiff breakfast for a span of four days because his light was not on, as is required by TDCJ policy. (D.E. 8, Pages 24-25). From December 2015 to February 2016, Plaintiff was housed in K-Pod, fifty-eight cell. (D.E. 8, Page 26). This cell had ants at the bottom of the bunk, no heat[6], and rain could enter from the outside[7]. (D.E. 8, Page 25). The water leaking into the cell caused mold and mildew to collect in the cell. (D.E. 8, Page 25). Plaintiff told officers about the situation and every officer on duty laughed at him and moved on. (D.E. 8, Page 27). Plaintiff believes he became a target for placement in these

---

[5] *See Umondak v. Ginsel*, 426 Fed. Appx. 267 (5th Cir. 2011) (alleged denial of out-of-cell recreation for 25 days failed to state a due process violation and did not deprive him of the minimal level of life's necessities under the Eighth Amendment).

[6] A low cell temperature does not establish an Eighth Amendment violation by itself but may if combined with an enforcement action by the prison such as failing to issue blankets. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

[7] Plaintiff does not allege anyone intentionally confined him to these conditions. *See Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983) ("statements that the defendant party intentionally subjected him to a cold, rainy, roach-infested facility and furnished him with inoperative, scum-encrusted washing and toilet facilities sufficiently alleges a cause of action cognizable under 42 U.S.C. § 1983 and the eighth and fourteenth amendments.").

cells or officers ignored his conditions because of his wearing a beard. (D.E. 8, Pages 31-32). Further, Plaintiff asserts he was put in solitary confinement[8] because he was in the dayroom while on restriction; however, Plaintiff maintains he was given permission to be in the dayroom because his cellmate had tried to attack him. (D.E. 1-3, Pages 11-12). Yet, other officials chose to pursue disciplinary action because of the Plaintiff's situation and constant grievance filing.

Plaintiff maintains over one hundred and fifty dollars of personal property has been misplaced, lost, or damaged.[9] (D.E. 11, Page 8). Plaintiff reports that various items were taken from his cell, including on May 16, 2014, officers searched his cell[10] and took a jar of Vaseline from his personal belongings and on March 25, 2016, a magazine and some pictures were taken. (D.E. 8, Page 36 and D.E. 1-3, Page 34). When Plaintiff was released from solitary confinement, the property officers did not provide him with his fan, hotpot, radio, and other personal items. (D.E. 1-3, Page 14). After numerous inquiries and grievances, Plaintiff still had not received his personal items following his release from solitary confinement. (D.E. 1-3, Pages 15-16). Plaintiff also noticed a discrepancy in his inmate trust account. (D.E. 1-3, Page 22).

Plaintiff further maintains that he was denied access to the commissary. Plaintiff states he was routinely denied regular visits to the commissary.[11] Around September 15,

---

[8] Solitary confinement does not implicate due process liberty interests because it is not an atypical punishment. *See Sandin v. Conner*, 515 U.S. 472 (1995).

[9] Plaintiff has an adequate post-deprivation remedy; therefore, due process is not implicated. *See* Tex. Gov't Code § 501.007.

[10] There is no legitimate expectation of privacy in a prison cell entitling them to Fourth Amendment protection. *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984).

[11] A prisoner does not have a protected liberty interest in access to the commissary. *See Sandin v. Conner*, 515 U.S. 472 (1995).

2015, Plaintiff reported he had not been allowed regular commissary privileges for over ninety days and had only one restricted commissary visit in over sixty days. (D.E. 1-3, Page 23). On October 22, 2015, Plaintiff was denied a regular visit to the commissary and Plaintiff filed a grievance based on this event, indicating that the property officer lost his ID causing him to only be able to make one purchase in the last four months. (D.E. 1-3, Page 24). Plaintiff states that he had a regular commissary visit on November 3, 2015, which was his first since January of that year. (D.E. 1-3, Page 25).

Additionally, Plaintiff alleges access to his mail was interrupted and interfered with by TDCJ staff. Plaintiff filed numerous complaints about not receiving his Islamic newspaper.[12] The first reported incidence was August 3, 2015 and Plaintiff eventually received copies of the paper on September 14, 2015. (D.E. 1-3, Page 22). Again in January of 2016, the mail room at the McConnell Unit had received issues of his paper subscription but refused to deliver the paper, and when delivery was finally made, only one of the withheld issues was delivered to Plaintiff. (D.E. 1-3, Page 31).

On an unspecified date between November 22, 2013 and the time the present suit was filed, Plaintiff alleges that Sergeant Jose Fernandez organized an assault on him. (D.E. 11, page 13). Plaintiff claims Fernandez approached another offender, named Mendoza, to attack him by the "B-side Chow Hall." (D.E. 11, Page 13). Plaintiff states that Mendoza informed him, in front of two other inmates,[13] that Fernandez approached

---

[12] A prison official's interference with mail may constitute a constitutional violation if it violates the prisoner's right to access the courts or First Amendment rights. *See Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir. 1993). Plaintiff fails to allege any prejudice in a pending lawsuit due to this disruption of his access to mail or any infringement on his First Amendment rights.

[13] The inmates names are Derrick White and Billy Fritz. (D.E. 11, Page 13).

him about the attack. (D.E. 11, Page 13). Plaintiff claims that this attack left him with a broken left shoulder. (D.E. 11, Page 13).

In late June or July of 2015, Plaintiff states a small group of officers used excessive force because Plaintiff had been telling the officers about how his cell had no lights, an ant infestation, no ventilation, and no outlet to use his fan. (D.E. 11, Page 5-6). Plaintiff had also been asking about the location of approximately forty-one dollars of his property that was missing. (D.E. 11, Page 6). Plaintiff alleges he wanted to speak to a ranking officer about the issues; however, Sergeant Lorenzo Diaz ignored protocol and ordered the officers to use force on Plaintiff. (D.E. 11, Pages 5-6). An unknown officer and Officer Anthony Mackey jumped on Plaintiff while he was on the floor. (D.E. 11, Page 6). Plaintiff was in hand restraints and a sling, due to recently breaking his left shoulder in the incident mentioned above. (D.E. 11, Page 6). Officer Megan Gonzalez and another unknown officer picked Plaintiff up and drove his left shoulder into the walls as they placed him in his cell. (D.E. 11, Page 6). Finally, Plaintiff alleges he was dumped onto the floor, landing on his left shoulder. (D.E. 11, Page 6). Plaintiff claims that as a result he has suffered nerve damage to his arm and has been experiencing sharp pains, stiffness, and twitching in his left arm and shoulder. (D.E. 11, Page 7).

## III.   APPLICABLE LAW

Regardless of whether a plaintiff has properly exhausted his administrative remedies, his action may be dismissed for failure to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c)(2). An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim

entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). The complaint must be liberally construed in favor of the prisoner and the truth of all pleaded facts must be assumed. *Id.* (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability for supervisors under section 1983. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). In order for a supervisor to be liable, the plaintiff must show (1) the supervisor failed to supervise or train the subordinate official, (2) a causal link exists between the failure to train or supervise and the constitutional violation, and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights. *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

Establishing a supervisor's deliberate indifference generally requires a plaintiff to show "at least a pattern of similar violations." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

## IV.   DISCUSSION

### A.   Eleventh Amendment Immunity and Official Capacity Claims

Plaintiff is suing Defendants in their official and individual capacities. (D.E. 11, Page 5).

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff is suing any defendant in his or her official capacities for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Defendants

in their official capacities be dismissed with prejudice as barred by the Eleventh Amendment.

### B.     Religious Land Use and Institutionalized Persons Act (RLUIPA)

Plaintiff challenges the TDCJ policy that he must shave once a year for an identification photograph as placing a substantial burden on religious freedom.[14] (D.E. 1-1, Pages 1-3).

Congress enacted the RLUIPA as a response to the Supreme Court's decisions in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990) and *City of Boerne v. Flores*, 521 U.S. 507 (1997). In *Smith*, the Supreme Court held that the Free Exercise Clause typically does not shield religiously motivated conduct from the burdens of generally applicable laws.  494  U.S. at 878-79. Congress responded three years later by enacting the Religious Freedom Restoration Act ("RFRA"). In an effort to restore the level of protection that religious observations enjoyed before Smith, the RFRA mandated that "government"—including state and local governments—"shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless such a burden met a "compelling governmental interest" and "least restrictive means" test. 42 U.S.C. § 2000bb-1. In *Flores*, the Court declared the RFRA's application to the States unconstitutional because it exceeded Congress's Fourteenth Amendment enforcement power. 521 U.S. at 532-36.

---

[14] This claim appears in Plaintiff's original complaint (D.E. 1) but does not appear in Plaintiff's more definite statement (D.E. 11).

In response to the *Flores* decision, Congress enacted RLUIPA, predicating its enactment not only on its power to enforce the Fourteenth Amendment, but also on its Spending and Commerce powers. RLUIPA targets two areas: land-use regulation and institutions that receive federal funds. With respect to its protection of institutionalized persons, the RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The Act broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id*. § 2000cc-5(7)(A). Under the RLUIPA, the plaintiff bears the burden to prove that the challenged law, regulation or practice substantially burdens his exercise of religion. Once a plaintiff has made this prima facie showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest. *Id.*, § 2000cc-2(b). See *Sossamon v. Texas*, 131 S. Ct. 1651, 1656 (2011).

Despite RLUIPA's express purpose to protect the religious observances of individualized persons, the statute does not give courts carte blanche to second-guess the reasoned judgments of prison officials. While Congress enacted the RLUIPA to address

the many "frivolous or arbitrary" barriers impeding institutionalized persons' religious exercise, it nevertheless anticipated that courts entertaining RLUIPA challenges "would accord 'due deference to the experience and expertise of prison and jail administrators.'" *Cutter v. Wilkinson*, 544 U.S.709, 716-17 (2005) (quoting 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sens. Hatch and Kennedy on the RLUIPA)). The Supreme Court has cautioned that "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety," and "an accommodation must be measured so that it does not override other significant interests." *Id*. at 722. The Court further instructed:

> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling governmental interest" standard, context matters in the application of that standard. Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.

*Id*. at 722-23 (internal quotation marks and citations omitted). This deference is not, however, unlimited, and "policies grounded on mere speculation, exaggerated fears, or post-hoc rationalizations will not suffice to meet the Act's requirements." *Rich v. Secretary, Fla. Dep't of Corr.*, 716 F.3d 525, 533 (11th Cir. 2013) (internal quotation marks omitted).

The Supreme Court has held prison grooming policies restricting prisoners growing beards in accordance with their religious beliefs violate RLUIPA. *See Holt v.*

*Hobbs*, 135 S. Ct. 853, 867 (2015) (holding Arkansas Department of Corrections policy preventing a Muslim prisoner from growing a half inch beard violated RLUIPA). The Fifth Circuit has followed suit, holding prison grooming policies restricting Muslim inmates from growing beards violates RLUIPA. *See Garner v. Kennedy*, 713 F.3d 237 (5th Cir. 2013) (holding TDCJ no-beard policy was not the least restrictive means of furthering its compelling interest in security) and *Ali v. Stephens* 822 F.3d 776 (5th Cir. 2016) (holding ban on four-inch beards did not further compelling interest of identification and assuming it did, it was not the least restrictive means).

To the extent plaintiff has attempted to allege RLUIPA claims against defendants in their individual capacities, he cannot do so. RLUIPA does not permit a claim against individual defendants in their individual capacities. *See* 42 U.S.C. § 2000cc-1. The statute expressly states that RLUIPA's scope is limited to "a program or activity that receives Federal financial assistance." *Id*. § 2000cc-(b)(1). Moreover, RLUIPA was enacted pursuant to the Spending Clause which can impose liability only upon the recipient of the federal funds. *Sossamon*, 131 S. Ct. at 1663. In this case, the recipient of federal funds is the TDCJ, a state agency. Thus, because no individual defendant receives Federal financial assistance as that term is used in the statute, plaintiff cannot maintain a RLUIPA claim against a defendant in his or her individual capacity. *See Stewart v. Beach*, 701 F.3d 1322, 1333-34 (10th Cir. 2012) (RLUIPA does not permit a claim against individual defendants in their individual capacities). Thus, it is respectfully recommended Plaintiff's RLUIPA claims against Defendants in their individual capacities be dismissed with prejudice.

14 / 22

However, Plaintiff has sufficiently stated a RLUIPA claim against Defendants in their official capacities to survive screening under 1915(e)(2) and 1915A. The existing TDCJ policy requires Muslim prisoners to shave clean once a year for an identification photograph. Other non-Muslim prisoners are only required to take an identification photograph every three years. In light of the *Ali* decision, Muslim prisoners could wear a fist length beard. Plaintiff seems to be asserting that the requirement of shaving clean once a year would effectively prevent Plaintiff from exercising his right to grow a fist-length beard according to his religious beliefs. Accordingly, taken as true and in the light most favorable to Plaintiff, he has alleged a violation of RLUIPA. Since Warden Barber is the only defendant in a position to redress any potential claims and in the interest of convenience, Plaintiff's claim for injunctive relief regarding Plaintiff's RLUIPA claim is best directed at Warden Matt Barber. Thus, it is respectfully recommended that Plaintiff's RLUIPA claim against Warden Matt Barber be retained and service ordered on Warden Matt Barber in his official capacity only for injunctive relief.

### C.    Retaliation

Plaintiff claims that Defendants have engaged in a campaign of retaliation against him because he prevailed in obtaining the right to wear a ¼ inch beard and now, due to Fifth Circuit precedent, can wear a fist-length beard.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable only if the retaliatory act "is capable of deterring a person of

ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). It is well-settled that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the Fifth Circuit has emphasized that "[p]risoner's claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 Fed. Appx. 386, 387 (5th Cir. 2010) (unpublished) (citing *Wood*, 60 F. 3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id*. at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

16 / 22

Taking as true Plaintiff's allegations, he squarely states a claim of retaliation. After Plaintiff was granted the right to wear a ¼ inch beard in Case No. 2:12-cv-106, a series of events took place that, taking the allegations as true, demonstrate a pattern of retaliatory behavior. Plaintiff states he was put in solitary confinement in response to disciplinary forms that he alleges were forged by various officers. Plaintiff claims to have certain property that either disappeared or was lost. He asserts that he was deliberately not provided pork-free meals in conformity with his religious preferences and on several occasions he was denied certain meals all together. He further asserts that he was denied access to showers, recreation time, and adequate living conditions. Plaintiff alleges officers stopped allowing him access to the commissary even on a restricted basis. Officers allegedly delayed and/or tampered with his mail on several occasions. Finally, Plaintiff claims that his cell was frequently searched by corrections officers.

While the acts of retaliation by themselves do not constitute constitutional violations, they do demonstrate a chronology of events from which retaliation may plausibly be inferred. For the purposes of § 1915A, Plaintiff has stated a claim for retaliation. Plaintiff names 69 defendants in his original complaint, but none of the defendants singularly orchestrated the retaliation or participated in all incidents. Because the warden is the only defendant in a position of control over the McConnell Unit and in the interest of convenience, Plaintiff's claim for injunctive relief regarding retaliation is best directed at Warden Matt Barber. Thus, it is respectfully recommended that Plaintiff's retaliation claim against Warden Matt Barber be retained and service ordered on Warden Matt Barber in his official capacity only for injunctive relief. To the extent Plaintiff is

seeking monetary relief, he fails to establish that any single defendant was involved in a chronology of events from which retaliation can be inferred, and therefore, those claims are dismissed with prejudice.

### D.    Excessive Force

Plaintiff alleges that four named officers and two unnamed officers used excessive force against him in violation of his constitutional right to be free from cruel and unusual punishment.

Inmates have a constitutional right to be free from the use of excessive force. *Anthony v. Martinez*, 185 Fed. Appx. 360, 363 (5th Cir. 2006). To state a claim for excessive force, a prisoner-plaintiff must show that the force was not applied in a good-faith effort to maintain or restore discipline, but was applied maliciously and sadistically to cause harm, and that the injury he suffered was more than *de minimis*, but not necessarily significant. *See Hudson v. McMillian*, 503 U.S. 1, 6, 10 (1992); *Gomez v. Chandler*, 163 F.3d 921, 923-34 (5th Cir. 1999); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). The factors to be considered are (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Gomez*, 163 F.3d at 923.

In *Wilkins v. Gaddy*, the Supreme Court ruled that a district court "erred in dismissing Wilkins' excessive force complaint based on the supposedly *de minimis* nature of his injuries." 559 U.S. 34, 40 (2010) (per curiam). The Court grounded this conclusion on the principle that "the core judicial inquiry [is] not whether a certain

quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. at 37 (citations omitted).

Although a *de minimis* injury is not cognizable, the extent of the injury necessary to satisfy the injury requirement "is directly related to the amount of force that is constitutionally permissible under the circumstances." *Ikerd v. Blair*, 1010 F.3d 430, 434-35 (5th Cir. 1996) (citations omitted); *see also Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir 2004) (noting that the minimum qualifying injury "changes with the facts of each case"); *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) ("What constitutes an injury in an excessive force claim is . . . subjective—it is defined entirely by the context in which the injury arises.") In general, the courts have concluded that the amount of injury necessary to satisfy the requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Williams*, 180 F.3d at 703-04. Thus, courts may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such a wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Relating to the first incident, Plaintiff's broken left shoulder in and of itself supports a claim of excessive force. While here the officer did not apply the force against Plaintiff, Plaintiff alleges the officer told another inmate to assault Plaintiff. As alleged, the officer was aware of a serious risk of harm to Plaintiff and did not take action to stop

it. Plaintiff alleges that he was in fact attacked by the inmate, resulting in his left shoulder being broken. Taken as true and in the light most favorable to Plaintiff, he has alleged an Eighth Amendment claim against Fernandez.

Relating to the second incident, Plaintiff's injury, nerve damage in his left shoulder, in and of itself supports a claim of excessive force against the officers applying the force, Mackey and Gonzalez, and against Sergeant Diaz who, according to Plaintiff, ordered the force and was set on using it despite the fact that Plaintiff was not presenting any danger and was in hand restraints. Taken as true and in the light most favorable to Plaintiff, he has alleged Eighth Amendment claims against Diaz, Mackey, and Gonzalez. Therefore, it is respectfully recommended that service be ordered on these defendants in their individual capacities.

## V.    RECOMMENDATION

For the reasons stated above, it is respectfully recommended that Plaintiff's RLUIPA claim against Warden Matt Barber in his official capacity for injunctive relief be **RETAINED** and service ordered on this defendant. Additionally, it is respectfully recommended that Plaintiff's retaliation claims against Warden Matt Barber in his official capacity for injunctive relief be **RETAINED** and service ordered on this defendant. Further, it is respectfully recommended that the excessive force claims against Lorenzo Diaz, Megan Gonzalez, Anthony Mackey, and Jose Fernandez in their individual capacities be **RETAINED** and service ordered on these defendants. Finally, it is respectfully recommended that all remaining claims and Defendants be **DISMISSED**

**with prejudice** for failure to state a claim and/or frivolous pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

Respectfully submitted this 11th day of October, 2016.

Jason B. Libby
United States Magistrate Judge

21 / 22

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).