**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **TABARI S. STRONG,** | § | |
| **TDCJ #1689849** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 2:16-CV-131 |
| | § | |
| **BRAD LIVINGSTON, ET AL.,** | § | |
| *Defendants.* | § | |

# APPENDIX



| TEXAS DEPARTMENT | NUMBER: 06.16 |
|---|---|
| OF | DATE: August 1, 2015 |
| CRIMINAL JUSTICE | PAGE: 1 of 4 |
| CORRECTIONAL INSTITUTIONS DIVISION | SUPERSEDES: None |

# SECURITY MEMORANDUM

| **SUBJECT:** | **OFFENDER GROOMING** |
|---|---|
| **REFERENCE:** | American Correctional Association (ACA) Standard: 4-4283 |
| | AD-03.75, "Offender Identification Cards;" AD-04.11, "Security Precaution Designators;" TDCJ *Disciplinary Rules and Procedures for Offenders*; TDCJ *Use of Force Plan;* Unit Classification Procedures Manual Number 6.01, "Updating Offender Photographs;" Unit Classification Procedures Manual Number 6.03, "Religious Beards." |
| **AUTHORITY:** | *Holt v. Hobbs, 135 S. Ct. 853 (2015)* |
| **POLICY:** | To establish guidelines for managing offender grooming standards and to ensure proper identification of offenders at all times. |

## DEFINITIONS:

"Identification (ID) Card" is a plastic card with an offender's color photograph, name, TDCJ number and date of birth. A magnetic strip on the back or bar code on the front of the card enables machine identification of the bearer.

"Religious Beard" for the purpose of this policy, is any facial hair not altered from its natural growth pattern, including sideburns; a mustache; or any hair on the cheeks, chin, and neck.

## PROCEDURES:

The Texas Department of Criminal Justice (TDCJ) shall establish grooming standards for offenders and ensure compliance for reasons related to security, safety, and sanitation. The only exceptions shall be due to a medically documented issue.

I.   GROOMING STANDARDS

    A.   Male Offenders

STRONG MSJ APP. 1

1.      Male offenders must be clean-shaven.  No beards, mustaches, or hair under the lip will be allowed, unless the offender is permitted to grow a religious beard.

2.      Male offenders shall keep hair trimmed up the back of the neck and head.

3.      Hair must be neatly cut.

4.      Hair must be cut around the ears.

5.      Sideburns shall not extend below the middle of the ears, unless the offender is permitted to grow a religious beard.

6.      No block style, afro, or shag haircuts shall be permitted.

7.      Fad or extreme hairstyles or haircuts are not allowed.

8.      Mohawks, tails, or designs cut into the hair are not allowed.

B.    Female Offenders

Female offenders shall not have extreme hairstyles.  Mohawks, tailed haircuts or shaved/partially-shaved heads shall not be permitted.  Female offenders may wear braids in accordance with unit policy.  Female offenders may go to the beauty shop on their unit; however, going to the beauty shop is a privilege.  Female offenders may be restricted from going to the beauty shop as the result of disciplinary action.

II.    RELIGIOUS BEARDS

A.    Religious Beard Specifications

1.      Religious beards shall not extend more than one-half (1/2) inch in length outward from the face.

2.      Lines, designs, patterns, symbols cut or shaped, or any alterations from the natural hair growth are not allowed.

3.      Religious beards shall not be sculpted and must remain neatly trimmed and clean.

4.      Offenders who refuse to comply with the religious beard specifications outlined in this policy will be charged with offense code 24.1, Refusing to Adhere to Grooming Standards, and disciplined in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*.  Additionally, the

facial hair (FH) designator shall be displayed for the disciplinary case on the UCR 06 and 22 Screens.

B.   Exceptions

1.   Offenders with a security precaution designator for escape and/or attempted escape in accordance with AD-04.11, "Security Precaution Designators," shall not be allowed to grow a religious beard.

2.   If an offender attempts to conceal contraband in their religious beard, the offender will no longer be eligible to grow a religious beard and will be charged with offense code 16.0, Possession of Contraband, and disciplined in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*.  Additionally, the FH designator shall be displayed for the disciplinary case on the UCR 06 and 22 Screens.

C.   Religious Beard Request Procedures

1.   Offenders who want to grow a religious beard shall submit an Inmate Request to an Official, I-60, to the warden or designee at each unit. Offenders must have completed the intake process and be assigned to the unit by the Unit Classification Committee (UCC).

2.   After receiving the I-60, the designated staff member shall process the I-60, which includes updating the UCR 07 Screen to reflect that the offender has requested to grow a beard for religious preferences.

3.   The designated staff member shall provide a response to the offender on the I-60 by noting the date the I-60 was received and approved, which shall serve as the offender's notification.

D.   Required Photos

1.   The designated staff member shall ensure the appropriate photos are taken of offenders who request to grow a religious beard.

2.   Approximately 30 days after the offender is approved to grow a religious beard, the bearded offender will be scheduled to take a photo and a new offender identification (ID) card will be issued.  The designated staff member shall disseminate new ID cards issued as the result of a religious beard request.

3.   Offenders with religious beards are required to take a clean-shaven photo each year, during the month of the offender's birthday.  This photo will be captured and stored for current identification purposes only.  The offender

is required to shave prior to the scheduled lay-in.  This photo shall be uploaded from the digital camera to the offender's electronic file; however, a new ID card will not be issued.  The unit may print a copy of the offender's clean shaven photo for temporary identification purposes, if needed.

E.    Change in Religious Beard Status

1.    An offender with a religious beard is required to notify the designated staff member if the offender decides to no longer grow the religious beard.

2.    The UCR 07 Screen shall be updated by the designated staff member to reflect the offender's decision to no longer grow a religious beard.

3.    Once an offender decides to no longer grow a religious beard, a new ID card with a clean-shaven photo will be issued and the offender may be charged a fee in accordance with AD-03.75, "Offender Identification Cards."  A new photo is not required unless it is determined the offender's appearance has changed in comparison to a photo saved in the database.

4.    Offenders will only be allowed to request to grow a religious beard once every 12 months.

III.    UPDATING OFFENDER PHOTOS

A.    Offender photos shall be updated in accordance with Unit Classification Procedures Manual Number 6.01, "Updating Offender Photographs."

B.    Offender photos shall not be older than three years; however, updated photos shall be captured and the travel/transport card shall be updated any time an offender's physical appearance has changed substantially from the most current photo on file.

IV.    REFUSAL TO SHAVE

A.    If an offender refuses to shave for the required photos, only the amount of force necessary to gain compliance with the order shall be used, unless precluded by medical orders.  The force implemented shall be in accordance with the TDCJ *Use of Force Plan*.



Correctional Institutions
Division

Signature on
File

_____
William Stephens, Director
Correctional Institutions Division



| | |
|---|---|
| **TEXAS DEPARTMENT** | **Number:** SM-06.16 (rev. 1) |
| **OF** | **Date:** February 1, 2017 |
| **CRIMINAL JUSTICE** | **Page:** 1 of 5 |
| **Correctional Institutions Division** | **Supersedes:** August 1, 2015 |

# SECURITY MEMORANDUM

**SUBJECT:**       **OFFENDER GROOMING**

**REFERENCE:**       AD-03.75, "Offender Identification Cards;" AD-04.11, "Security Precaution Designators;" TDCJ *Disciplinary Rules and Procedures for Offenders*; TDCJ *Use of Force Plan;* Unit Classification Procedures Manual Number 6.01, "Updating Offender Photographs;" Unit Classification Procedures Manual Number 6.03, "Religious Beards."

**AUTHORITY:**       *Holt v. Hobbs, 135 S. Ct. 853 (2015)*

**POLICY:**       To establish guidelines for managing offender grooming standards and to ensure proper identification of offenders at all times.

**DEFINITIONS:**

"Identification (ID) Card" is a plastic card with an offender's color photograph, name, TDCJ number and date of birth. A magnetic strip on the back or bar code on the front of the card enables machine identification of the bearer.

"Religious Beard" for the purpose of this policy, is any facial hair not altered from its natural growth pattern, including sideburns; a mustache; or any hair on the cheeks, chin, and neck.

**PROCEDURES:**

The Texas Department of Criminal Justice (TDCJ) establishes grooming standards for offenders and ensures compliance for reasons related to security, safety, and sanitation. The only exceptions are due to a medically documented issues.

I.      GROOMING STANDARDS

    A.    Male Offenders

        1.    Male offenders must be clean-shaven.  No beards, mustaches, or hair under the lip will be allowed, unless the offender is permitted to grow a religious beard.

        2.    Male offenders shall keep hair trimmed up the back of the neck and head.

        3.    Hair must be neatly cut.

        4.    Hair must be cut around the ears.

        5.    Sideburns shall not extend below the middle of the ears, unless the offender is permitted to grow a religious beard.

        6.    No block style, afro, or shag haircuts are permitted.

        7.    Fad or extreme hairstyles or haircuts are not allowed.

        8.    Mohawks, tails, or designs cut into the hair are not allowed.

    B.    Female Offenders

Female offenders shall not have extreme hairstyles.  Mohawks, tailed haircuts or shaved/partially-shaved heads are not permitted.  Female offenders may wear braids in accordance with unit policy.  Female offenders may go to the beauty shop on their unit; however, going to the beauty shop is a privilege.  Female offenders may be restricted from going to the beauty shop as the result of disciplinary action.

II.     RELIGIOUS BEARDS

    A.    Religious Beard Specifications

        1.    Religious beards shall be no more than fist length and not exceed four inches outward from the face.  This may be measured by having the offender grasp the beard with their fist.  Facial hair extending beyond the fist shall be considered out of compliance with policy and shall be trimmed.

        2.    Lines, designs, patterns, symbols cut or shaped, or any alterations from the natural hair growth are not allowed.

3. Religious beards shall not be sculpted and must remain neatly trimmed and clean.

4. Offenders who refuse to comply with the religious beard specifications outlined in this policy will be charged with offense code 24.1, Refusing to Adhere to Grooming Standards, and disciplined in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*. Additionally, the facial hair (FH) designator shall be displayed for the disciplinary case on the UCR 06 and 22 Screens.

B. Exceptions

1. Offenders with a security precaution designator for escape and/or attempted escape in accordance with AD-04.11, "Security Precaution Designators," are not allowed to grow a religious beard.

2. If an offender attempts to conceal contraband in their religious beard, the offender will no longer be eligible to grow a religious beard and will be charged with offense code 16.0, Possession of Contraband, and disciplined in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*. Additionally, the FH designator shall be displayed for the disciplinary case on the UCR 06 and 22 Screens.

C. Religious Beard Request Procedures

1. Offenders who want to grow a religious beard shall submit an Inmate Request to an Official, I-60, to the warden or designee at each unit. Offenders must have completed the intake process and be assigned to the unit by the Unit Classification Committee (UCC).

2. After receiving the I-60, the designated staff member shall process the I-60, which includes updating the UCR 07 Screen to reflect that the offender has requested to grow a beard for religious preferences.

3. The designated staff member shall provide a response to the offender on the I-60 by noting the date the I-60 was received and approved, which serves as the offender's notification.

D. Required Photos

1. The designated staff member shall ensure the appropriate photos are taken of offenders who request to grow a religious beard.

2.   Approximately 30 days after the offender is approved to grow a religious beard, the bearded offender will be scheduled to take a photo and a new offender identification (ID) card will be issued.  The designated staff member shall disseminate new ID cards issued as the result of a religious beard request.

3.   Offenders with religious beards are required to take a clean-shaven photo each year, during the month of the offender's birthday.  This photo will be captured and stored for current identification purposes only.  The offender is required to shave prior to the scheduled lay-in.  This photo shall be uploaded from the digital camera to the offender's electronic file; however, a new ID card will not be issued.  The unit may print a copy of the offender's clean shaven photo for temporary identification purposes, if needed.

E.   Change in Religious Beard Status

1.   An offender with a religious beard is required to notify the designated staff member if the offender decides to no longer grow the religious beard.

2.   The UCR 07 Screen shall be updated by the designated staff member to reflect the offender's decision to no longer grow a religious beard.

3.   Once an offender decides to no longer grow a religious beard, a new ID card with a clean-shaven photo will be issued and the offender may be charged a fee in accordance with AD-03.75, "Offender Identification Cards."  A new photo is not required unless it is determined the offender's appearance has changed in comparison to a photo saved in the database.

4.   Offenders will only be allowed to request to grow a religious beard once every 12 months.

III.   UPDATING OFFENDER PHOTOS

A.   Offender photos shall be updated in accordance with Unit Classification Procedures Manual Number 6.01, "Updating Offender Photographs."

B.   Offender photos shall not be older than three years; however, updated photos shall be captured and the travel/transport card updated any time an offender's physical appearance has changed substantially from the most current photo on file.

IV.    REFUSAL TO SHAVE

    A.    If an offender refuses to shave for the required photos, only the amount of force necessary to gain compliance with the order shall be used, unless precluded by medical orders.  The force implemented shall be in accordance with the TDCJ *Use of Force Plan.*


                                              _____
                                              Lorie Davis, Director
                                              Correctional Institutions Division



Signature on File

## AFFIDAVIT OF KAREN HALL

STATE OF TEXAS       )
              )
COUNTY OF WALKER    )

     BEFORE ME, the undersigned authority, personally appeared Karen Hall, who, being duly sworn by me, deposed as follows:

     "I am the custodian of records for the EXECUTIVE SUPPORT DEPARTMENT of the Texas Department of Criminal Justice ("TDCJ").  Attached are true and correct copies of records, which are kept by the TDCJ in the regular course of its business activity.  The entries of such records were made as a regularly conducted activity and a regular practice of the Texas Department of Criminal Justice, and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters."

AD-03.75 (rev. 3), "Offender Identification Cards"
AD-03.83 (rev. 7), "Offenders who Refuse to Comply with Grooming Standards"
AD-04.11 (rev. 5), "Security Precaution Designators"

                    _____
                      Affiant

   SWORN TO AND SUBSCRIBED before me on this the 23rd of January, 2017

Marcy L Lorenson
Notary Public, State of Texas
My Commission Expires
November 3, 2020
Notary without Bond
Notary ID 13069092-7

             _____
             NOTARY PUBLIC, STATE OF TEXAS

             MARCY L. LORENKON
                 (Printed name)

My Commission expires:
Nov. 3, 2020

**STRONG MSJ APP. 10**



| TEXAS DEPARTMENT | **NUMBER:** | AD-03.75 (rev. 3) |
|---|---|---|
| OF | **DATE:** | February 20, 2009 |
| CRIMINAL JUSTICE | **PAGE:** | 1 of 7 |
| | **SUPERSEDES:** | AD-03.75 (rev. 2) |
| | | February 11, 2005 |

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:**        OFFENDER IDENTIFICATION CARDS

**AUTHORITY:**    Texas Government Code §§494.001, 494.002(a) and 501.014(f)(8)

**APPLICABILITY:**    Correctional Institutions Division (CID) and Business and Finance Division

**POLICY:**

The Texas Department of Criminal Justice (TDCJ or Agency) shall issue and replace as necessary, identification (ID) cards to all offenders assigned to institutions managed or contracted by the Agency. Offenders are required to carry ID cards for positive identification, commissary purchases, dispensing of medication, issuance of indigent supplies, serving meals and to comply with other general security requirements.

**DEFINITIONS:**

"Activate" is the process performed on a computer terminal before the ID card is issued to the offender. This process updates the appropriate database to recognize the ID card as being issued.

"Disable" is the process performed on a computer terminal to electronically block an ID card from being used for commissary purchases or other activities.

"ID Card" is a plastic card with an offender's color photograph, name, TDCJ number and date of birth. A magnetic strip on the back or bar code on the front of the card enables machine identification of the bearer.

"ID Card File" is a database containing records of offender ID card activities.

"ID Card Section" is located at the Commissary and Trust Fund (C&TF) Department in Huntsville, which is responsible for acquiring and maintaining ID card systems. This department scans instant photographs for reissuing ID cards, re-encoding ID cards, reissuing lost or stolen ID cards, activating and disabling ID cards, providing supplies for workstations, providing assistance to users and managing the offender image database.

STRONG MSJ APP. 11

"ID Card Workstation" is a microcomputer, camera, card printer and laser printer used to process photographs of an offender to produce an ID card and mugshot.

"Mugshots" are a set of photos of an offender which includes a front and profile view of the facial features of an offender.

"Reactivate" is a process performed on a computer terminal by designated personnel to change the status of an ID card from "Disabled" or "Suspended" to "Active."

"Restrict" is a process performed on a computer terminal at the unit (normally the disciplinary office) to limit an offender's commissary privileges, usually for disciplinary reasons.

"Suspend" is a process performed on a computer terminal by the Warden's office to suspend an offender's commissary privileges, usually for disciplinary reasons.

"Temporary Identification" is an approved ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form (Attachment A) used for identification purposes until the missing ID card is found or reissued.

**PROCEDURES:**

I.      Purpose of ID Cards

Normally, within one (1) week after an offender is processed into the TDCJ, an ID card shall be issued.  The ID card shall display the offender's name, TDCJ number, date of birth and picture.  The card shall have a bar code and magnetic strip encoded with the offender's TDCJ number and shall be used for positive identification, commissary purchases, dispensing medication, issuance of indigent supplies, serving meals and to comply with other general security requirements.  Agency policy requires offenders to carry their ID card at all times. Unit administration may hold ID cards for offenders who are unable to maintain their cards due to mental impairment or level of custody.  In these cases, ID cards shall be provided to the offender for commissary or medical visits and collected for safekeeping upon completion of the transaction.

II.     Offender Responsibilities

It is the responsibility of the offender to immediately notify unit security, commissary staff or the Warden's office if their ID card is lost, stolen or damaged.  For identification purposes, an ID card may be retained by the offender upon parole, discharge or other official release. Offenders shall immediately produce identification when requested to do so by an Agency or law enforcement official.  Temporary identification as defined in Section V.D of this directive may be substituted for an ID card.

STRONG MSJ APP. 12

III.    ID Card System

A.    The ID card system (hereinafter system) is used to maintain a database of offender front and profile photographs. These photos are used to print dossier pictures, commonly known as mugshots. The ID card shall be produced with the front photograph of the offender.

B.    The system, using video and digital acquisition technology, is comprised of workstations that use the Agency's cabling network and computer for storage and retrieval of digitized photographs. Workstations are located at sites where offenders are processed into Agency facilities.

C.    Offender photographs, front and profile, are digitally captured. An ID card with a color picture is printed and electronically encoded. A black and white mugshot is also printed using a laser printer. The digital photographs stored on the Agency Mainframe can be recalled to issue or reissue an ID card or to print a mugshot. Offender ID cards are printed and reissued by the ID Card Section as required. Offenders shall sit or stand in front of a gray backdrop. Backdrops are provided to each unit for this purpose.

D.    Digital cameras may be used to capture images for upload to a microcomputer at authorized locations for employee and offender ID cards. The Byrd Unit Photo and ID Department is responsible for updating offender images to the Mainframe image database. ID cards and mugshots can be printed from the system at any time after entry.

E.    Mugshots can be printed at any authorized location with suitable microcomputer software and a laser printer connected to the Agency network.

F.    Substance Abuse Felony Punishment Facilities (SAFPFs) capture a digital image, which is uploaded to the Mainframe for local mugshot printing. Offender ID cards are centrally printed at the ID Card Section and issued by the SAFPF location.

G.    Agency policy requires releasing locations to review images of all offenders prior to release to ensure the offender's images are current. The images shall not be older than five (5) years.

H.    For additional information and detailed procedures concerning the use of offender ID cards, refer to the *C&TF Commissary Procedure Manual*, TDCJ *Offender Orientation Handbook* and/or *C&TF ID Card Manual*.

STRONG MSJ APP. 13

IV.     ID Card Issuance

Offenders shall be photographed and issued an ID card during the intake process by Classification and Records staff. Offender grooming standards as discussed in the *TDCJ Offender Orientation Handbook* and AD-03.83, "TDCJ Offenders Who Refuse to Comply with Grooming Standards" shall be enforced. Offenders shall not wear any item that hides facial features unless required by a valid medical pass. With the exception of a valid medical pass, male offenders shall be clean shaven. Offenders shall wear white TDCJ issued clothing without hats or jackets.

V.      Reporting Lost or Stolen ID Cards

A.      An offender reporting a missing ID card shall be provided an ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form to complete.

B.      Unit staff accepting the completed form shall print and sign the form and return the pink copy to the offender.

C.      Authorized unit staff shall immediately disable the ID card and complete Section II of the form. If staff is not authorized to disable the ID card, a request to disable the ID card shall be sent via Mainframe e-mail to HQTF003.

D.      The pink offender copy of the ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form shall serve as a temporary ID until the ID card is found or reissued. All rules and regulations regarding ID cards shall apply to a temporary ID.

E.      The Warden shall complete the ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form by signing Section III.

F.      Upon receipt of the Warden's signature, the white copy of the ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form shall be forwarded to the ID Card Section. Unit staff shall maintain a log to ensure receipt of a new ID card.

VI.     ID Cards Found after Reported Lost or Stolen

If an ID card is found in usable condition prior to an offender being reissued a new ID card, the offender shall request the original ID card be reactivated.

A.      The offender shall notify unit staff the ID card has been found. Unit staff shall send a request to reactivate the ID card via Mainframe e-mail to HQTF003.

B.      If the ID card is found after the ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form has been forwarded to the ID Card Section, a notification shall be sent via Mainframe e-mail to HQTF003. The e-mail shall

include the offender's name, TDCJ number and the date the ID card was found. If a new ID card is received, the old ID card shall be destroyed.

C.   If the recovered ID card is unusable, due to being demagnetized, it shall be forwarded with the ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form to the ID Card Section. The ID Card Section shall re-encode the card or replace it if the magnetic strip is damaged.

VII.   Replacement of Lost, Stolen or Damaged ID Cards

The ID Card Section shall replace lost, stolen or damaged ID cards. ID cards that are in good condition, but demagnetized, shall be re-encoded and returned to the unit and reissued to the offender.

A.   The expected life of an ID card is two (2) years. ID cards that are determined to be defective by the ID Card Section shall require replacement by the system vendor.

B.   Offenders shall be responsible for the cost of cards that are replaced within the two (2) year life cycle unless the card is defective. The replacement cost for an ID card is $5. Defective ID cards or ID cards that are to be replaced due to normal wear shall be returned to the ID Card Section with the ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form for review. If it is determined an offender responsible for the cost of replacing an ID card is indigent (i.e., an Inmate Trust Fund (ITF) account balance of less than $5), a hold shall be placed on the offender's account until such time the funds can be collected.

C.   If a current photograph of an offender is not on file, an e-mail shall be sent to the designated staff at the requesting unit advising the following:

1.   If the offender is housed at a unit with an ID card workstation, authorization to reissue the ID card at the unit shall be given. The ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue form at the ID Card Section and the unit shall be so noted; and

2.   Units without an ID card workstation shall take a digital color photograph (front and profile view) of the offender following procedures in the *C&TF ID Card Manual* and forward them to the ID Card Section. If the unit provides a profile photograph, the ID Card Section shall scan the profile photo into the system to complete a mugshot set.

D.   If there is a current and usable photograph in the system database, an ID card shall be reissued and forwarded to the current unit of assignment.

E.   Completed ITF-8, TDCJ Offender Identification Card Lost/Stolen and Reissue forms shall be filed by ID Card Section staff and retained in accordance with the Agency's *Record Retention Schedule*.

F.    Units with an ID card workstation shall not circumvent the above procedures and reissue offender ID cards locally, unless authorized by the ID Card Section.

G.    If a unit receives an ID card for an offender who has subsequently transferred to another unit, staff shall immediately return the card to the ID Card Section for appropriate disposition.

Jerry McGinty
Chief Financial Officer

STRONG MSJ APP. 16

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Offender Identification Card

### Lost/Stolen and Reissue

I.  Offender _____ TDCJ # _____ reported ID card missing/damaged
                    (Please Print)
    at _____ AM/PM, _____, on the _____ Unit.
        (Time)              (Date)

    _____        _____        _____
    Offender's Signature             Officer's Printed Name           Officer's Signature

II. Card disabled _____ AM/PM, _____, by _____.
                      (Time)              (Date)

III. Approval is given to reissue the above offender's ID card as the card has been reported:

    ☐ Lost or Stolen    ☐ Damaged or Worn                      ☐ Do Not Charge
                          (Return worn/damaged card with request)    (To be checked by Warden)

    _____        _____        _____
    Warden's Signature               Unit                             Date

White - ID Card Section
Canary – Unit File
Pink - Offender
ITF-8 (02/09)

**STRONG MSJ APP. 17**

## AFFIDAVIT OF KAREN HALL

STATE OF TEXAS                          )
                                        )
COUNTY OF WALKER                        )

BEFORE ME, the undersigned authority, personally appeared Karen Hall, who, being duly sworn by me, deposed as follows:

"I am the custodian of records for the EXECUTIVE SUPPORT DEPARTMENT of the Texas Department of Criminal Justice ("TDCJ").  Attached are true and correct copies of records, which are kept by the TDCJ in the regular course of its business activity.  The entries of such records were made as a regularly conducted activity and a regular practice of the Texas Department of Criminal Justice and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters."

AD-03.75 (rev. 3), "Offender Identification Cards"
AD-03.83 (rev. 7), "Offenders who Refuse to Comply with Grooming Standards"
AD-04.11 (rev. 5), "Security Precaution Designators"

_____
                    Affiant

SWORN TO AND SUBSCRIBED before me on this the 23rd of January, 2017

Marcy L Lorenson
Notary Public, State of Texas
My Commission Expires
November 3, 2020
Notary without Bond
Notary ID 13089092-7

_____
NOTARY PUBLIC, STATE OF TEXAS

MARCY L. LORENSON
            (Printed name)

My Commission expires:
Nov. 3, 2020

**STRONG MSJ APP. 18**



| | |
|---|---|
| **TEXAS DEPARTMENT** | **NUMBER:** AD-03.83 (rev. 7) |
| **OF** | **DATE:** June 30, 2014 |
| **CRIMINAL JUSTICE** | **PAGE:** 1 of 3 |
| | **SUPERSEDES:** AD-03.83 (rev. 6) March 9, 2010 |

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:**   OFFENDERS WHO REFUSE TO COMPLY WITH GROOMING STANDARDS

**AUTHORITY:**   Tex. Gov't Code §§ 493.004, 507.001-.006

Reference:  American Correctional Association (ACA) 4-4283

**APPLICABILITY:**  Correctional Institutions Division (CID) and Private Facility Contract Monitoring/Oversight Division (PFCMOD)

**POLICY:**

The Texas Department of Criminal Justice (TDCJ) shall establish grooming standards for offenders and ensure compliance for reasons related to security, safety, and sanitation. The only exceptions shall be due to a medically documented issue.

**PROCEDURES:**

I.   Offender Grooming Standards Non-Compliance

Offenders who refuse to shave, cut their hair, or who have extreme haircuts, which are not in compliance with the TDCJ grooming standards, listed in the TDCJ *Offender Orientation Handbook*, shall be charged with offense code 24.1, Refusing to Comply with Grooming Standards, and disciplined in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*. Offenders found guilty of refusing to comply with grooming standards shall be subject to any appropriate penalty contained therein, including cell restriction.

A.   General Population

1.   Offenders who receive cell restriction as a penalty for refusing to cut their hair, shave, or for having an extreme haircut shall be managed in accordance with AD-03.70, "Cell Restriction for General Population Offenders."  Special cell restriction shall be used for offenders who

STRONG MSJ APP. 19

continually refuse to shave, cut their hair, or who have an extreme haircut. Offenders assessed special cell restriction for refusal to comply with grooming standards shall be subject to the same activities, recreation requirements, and repeat terms as applied to offenders on special cell restriction for refusal to work.

2.  Offenders found guilty of refusal to comply with grooming standards shall not be assigned to administrative segregation solely for violations of offender grooming standards.

B.  Administrative Segregation or Death Row

Offenders in administrative segregation or death row who continually refuse to comply with grooming standards shall be disciplined through the prudent use of cell restriction, and managed as follows.

1.  Offenders found guilty of refusal to comply with grooming standards shall receive up to 15 days of cell restriction and loss of privileges, including commissary, personal property, except legal material, and recreation. In accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*, one term of cell restriction or loss of recreation may not exceed a period of 15 days for each disciplinary conviction. Cumulative terms of cell restriction or loss of recreation privileges shall not exceed 30 days when imposed on administrative segregation offenders, or 90 days when imposed on death row offenders. The cumulative limit is calculated from the date of the most recent conviction.

2.  Out-of-cell recreation shall be allowed in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders*. Offenders in administrative segregation shall be allowed to recreate for one hour every seven days when cell restriction or loss of recreation privileges is imposed as a penalty. When consecutive terms of cell restriction or loss of recreation is imposed on a death row offender, the offender shall be allowed to recreate for one hour every seven days.

C.  Prior to the expiration of the cell restriction term assessed for failure to comply with grooming standards, the offender shall be ordered to comply with the grooming standards. Failure to comply shall result in another charge of refusal to comply with grooming standards and immediate notice of a new charge. The disciplinary hearing officer (DHO) shall attempt to hear the charge before the cell restriction term ends. If the offender is found guilty, appropriate penalties may be re-imposed. This process may be repeated as necessary to achieve compliance with grooming standards.

D.  When possible, the disciplinary restrictions shall be managed in such a way that offenders on cell restriction for refusal to comply with grooming standards are

STRONG MSJ APP. 20

placed on the same schedule, and can therefore be processed on the same day.  If possible, the disciplinary hearings may be held in a location other than the hearing room, such as the administrative segregation area, so these offenders are not escorted through the general population areas of the unit.

E.     It is recommended, whenever possible, that offenders who refuse to comply with grooming standards be housed in close proximity to one another within the appropriate custody designation.

II.     Disciplinary Hearing for General Population, Administrative Segregation, and Death Row

A.     At all disciplinary hearings involving the refusal to comply with grooming standards, the DHO shall ensure there is not a medical reason for an offender's failure to comply with grooming standards.  Documentation from appropriate health care staff shall be obtained indicating that no medical condition exists which prevents the offender from complying with grooming standards.

B.     At such time an offender in disciplinary status expresses a willingness to shave or get a hair cut voluntarily, the offender shall be given the opportunity to do so. An offender's compliance with grooming standards shall be taken into consideration by the warden or designee when deciding to remove or modify the disciplinary sanctions.

III.    Official Photographs and Fingerprints

For identification purposes during intake processing, or to update the offender's identification card or offender mug shot, all offenders shall cooperate in being fingerprinted and photographed. Male offenders are required to shave their face and have their hair cut using a triple aught (000) blade for intake processing photographs. A regulation haircut and clean shaven face shall be required for photographic updates.  If an offender refuses to cooperate in this procedure, only the amount of force necessary to gain compliance with the order shall be used, unless precluded by medical orders.  The force implemented shall be in accordance with the TDCJ *Use of Force Plan*.

Brad Livingston
Executive Director

## AFFIDAVIT

**THE STATE OF TEXAS**     ꝺ
**COUNTY OF WALKER**     ꝺ

BEFORE ME, the undersigned authority, on this day personally appeared **Travis Turner**, who, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed:

My name is **Travis Turner**, I am over twenty-one years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am employed as the Chairman of Classification and Records for the Texas Department of Criminal Justice - Correctional Institutions Division, and the attached is a correct representation of the current Unit Classification Procedure #6.03 and the previous version dated August 2015 within Classification and Records of the Texas Department of Criminal Justice - Correctional Institutions Division.

In witness whereof, I have hereto set my hand this the 21st day of December, 2016.

Travis Turner.
Chairman,
Classification and Records

SWORN TO AND SUBSCRIBED BEFORE ME, by the said Travis Turner on this the 20th day of December, 2016 to certify which witness my hand and seal of office.

NOTARY PUBLIC IN AND
FOR THE STATE OF TEXAS

DONNA M. BELL
Notary Public, State of Texas
My Commission Expires
AUGUST 7, 2018

Notary without Bond

STRONG MSJ APP. 22



**Texas Department
of
Criminal Justice**

| | |
|---|---|
| Number: | 6.03 |
| Date: | December 2015 |
| Page: | 1 of 3 |
| Supersedes: | August 2015 |

## UNIT CLASSIFICATION PROCEDURE

SUBJECT:     RELIGIOUS BEARDS

AUTHORITY:   Holt v. Hobbs, 135 S. Ct. 853 (2015)

REFERENCES:  SM 06.16, Offender Grooming
Unit Classification Procedure Manual 6.01, Updating Offender Photos
AD 03.75, Offender Identification Cards
AD 03.83, Offenders Who Refuse to Comply With Grooming Standards
Intake Procedure 3.09, Updating Offender Photographs

PURPOSE:     To provide guidelines for management of religious beards to ensure proper identification
of offenders at all times.

PROCEDURES:

The Texas Department of Criminal Justice (TDCJ) determined that offenders may grow beards for religious
purposes. Designated staff will follow the below procedures for the application, documentation and maintenance
of religious beards.

I.   Initial Religious Beard Approval
A.   Designated staff will receive I-60, Inmate Request to an Official, from offender requesting
authorization to grow a religious beard.

B.   There are two criteria that must be evaluated before an offender can be approved for a religious
beard. If the offender has either of the below conditions, a code shall be placed on UC00 07
screen "DRBRD– PERMANENT DENIAL OF RELIGIOUS BEARD " The date of denial should be
entered as the Date of Occurrence and a comment must be added to state the grounds for denial.
I.e. ES SPD code dated 06/09/2015.

1.   Security Precaution Designators for escape – review the offender's UC00 07 screen for
any ES, EA or EZ codes. An offender will be denied if he has a history of escape.

2.   Disciplinary Cases for code 16.0 FH – review the offender's UC00 06 and 22 screen for
current and prior disciplinary cases. An offender will be denied if he has received a case
for concealing contraband in his religious beard.

C.   If the offender passes the above criteria, place a code on UC00 07 screen BEARD – APPROVED FOR
RELIGIOUS BEARD. The date of the approval should be entered on the screen as Date of
Occurrence. Reply to the offender on the I-60 that he is authorized to grow a religious beard and
advise him that he will receive a lay-in in 30 days to take an updated photo with a beard.

D.  Print and review Infopac IUCR0017, RELIGIOUS BEARD-New/Need Photos. Lay-in offenders who appear on the list. Those noted with Type N-New should have grown a religious beard in compliance with SM 06.16, Offender Grooming. The religious beard should be ½" or less in length and not be sculpted or altered from its natural growth pattern. If the offender has sculpted or altered the natural growth pattern of their beard, they should be given a disciplinary for code 24.1 FH. It is suggested that if an offender is given a disciplinary for code 24.1, that the first charge be informally resolved (IR) and the guidelines for the beard be reviewed with the offender.

E.  Take a front view and profile photo of the offender with a digital still camera according to specifications provided in UCP 6.01, Updating Offender Photographs.

F.  Use the FTP system to send the photos to the designated regional intake facility. The same day the photos are uploaded, fax the required photo capture log noted as "Religious Beard Photo Capture Log" (attachment A) to the respective unit listed below.

Region 1 – Holliday Unit fax # (936) 295-3293
Region 2 – Gurney Unit fax # (903) 928-1745
Region 3 – Lychner Unit fax # (281) 459-7252
Region 4 – Garza West Unit fax # (361) 362-6649
Region 5 – Middleton Unit fax # (325) 548-9033
Region 6 – Woodman Unit fax # (254) 865-1020

G.  Photo/ID staff will make a new transport card and ID card showing the beard photo and return it back to the unit for handling. Note, if the offender was received into TDCJ before July 27, 2015, the offender does not have a completed Electronic Profile, and a mugshot will be generated in lieu of a transport card.

H.  The transport card should be filed in the records office and the old transport card returned to the regional beard photo/ID contact person. If the offender has a travel card, the mugshot should be attached.

I.  The ID card should be issued to the offender. Existing cards should be destroyed or returned to Commissary & Trust.

II.  Annual Religious Beard Photos

A.  On the first working day of each month, print and review Infopac IUCR0017, RELIGIOUS BEARD-New/Need Photos. This report includes offenders who are approved for a religious beard and have a birthday within the specified month. Lay-in offenders listed as Type A-Annual on the report and take a photo of the offender with a clean shaven face. Offenders who show up for the lay-in with a beard will be directed to shave. If the offender refuses to shave, notify security.

B.  Once the clean-shaven photo has been taken, upload it to OnBase. Review attachment B for specific instructions on how to upload photos into OnBase. These photos are not to be cropped or altered before being uploaded. Make sure that the camera is set at the lowest pixels setting.

C.  This process will ensure that an up-to-date photo is available for all offenders with a religious beard.

STRONG MSJ APP. 24

D.     As with all others, offenders with a religious beard will have their 3 year photo update taken according to infopac report INDCRD01, Offender Photo Older than 3 Years. This photo will be taken with the religious beard and sent for upload through established practices.

E.     The offender will receive a new transport card with the updated photo. He will not receive a new ID card.

III.   Removal of Religious Beards

A.     If an offender approved for a religious beard gets an SPD for escape or is convicted of a disciplinary violation for code 16.0 FH, authorization to grow a religious beard is rescinded.

      1.    On the first working day of the month, designated staff shall print and review Infopac report IUCR0018 RELIGIOUS BEARD REMOVE. This report lists all offenders who received an escape SPD or a disciplinary with an FH descriptor.

      2.    The UC00 07 screen code DRBRD –PERMANENT DENIAL OF RELIGIOUS BEARD should be added to the offender's record as outlined in section I. B. 3. above.

B.     An offender can decide not to have a religious beard at any time. However, it is his responsibility to notify TDCJ that his preference for a religious beard has changed. The offender should submit an I-60 to the classification or records office stating that he no longer wishes to have a religious beard. Failure to notify TDCJ of a change of preference regarding a religious beard may result in a disciplinary violation for 24.1 FH, Refusing to Groom.

C.     The staff will lay the offender in and ensure he is clean shaven. The staff will take a front view and profile photo of the clean shaven offender.

D.     This photo will be sent via FTP to the designated regional intake facility (noted in I, F of this procedure) for processing. The required Offender Photo Capture List (attachment A) should be faxed the same date as the photos are uploaded.

E.     The offender will receive a new transport card (or mugshot) and ID card and he will be charged for associated expenses.

F.     On the Offender Photo Capture List (attachment A), a notation of "charge" should be made next to the TDCJ # for each offender that should be charged for processing a new ID card and mugshot, when the offender requests the BEARD code to be removed. Intake staff making the new ID card will forward this list to Paula Fulsom at Commissary & Trust Fund to charge the offender's account.

G.     The designated staff will update the UC07 screen with a code "RRBRD – TEMPORARY REMOVAL OF RELIGIOUS BEARD. The date the code is added should be entered as the "Date of Occurrence." This will remove the approval code and update necessary reports.

If an offender submits an I-60 requesting approval for a religious beard less than one year after the RRBRD code is recorded on UC07, he should be denied on the grounds that an offender is only allowed to change his religious preference to grow a beard once per year.

STRONG MSJ APP. 25

Attachment 6.03 A

# Offender Photo Capture List

UNIT:_____   DATE_____   CONTACT:_____

| TDCJ# | NAME | FRONT | PROFILE | ID | T-CARD |
|-------|------|-------|---------|----|--------|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

**STRONG MSJ APP. 26**

Attachment 6.03 B

## Uploading Photographs into OnBase

Users can import/upload individual photographs into OnBase. As long as the file is accessible on the workstation the user is working on, the photographs can be uploaded into OnBase.

To upload a photograph:

1. From the Home ribbon tab, select **Upload**.



2. Click **Browse** to locate the photo to upload. *(The user must know where the photo has been saved on the workstation).*



In this example, we will be uploading a photo from Pictures/Sample Pictures. Where the photo is stored on the workstation, will determine the actual file the user should select in order to upload.

3. To make a selection, the user can **Double Click** on the photo or **Highlight** the photo and **Click on Open.**



Attachment 6.03 B



The user should note that the **Upload** command at the bottom of the screen is grayed out. Once indexing is complete, this option will become available.

    4.  Index the document. While indexing, the user should assure that the "file type" reflects PDF. After completion of the indexing, the user will choose the Upload option at the bottom of the screen.



The uploaded document should then be immediately available to all OnBase users.

**STRONG MSJ APP. 28**

IN THE UNITED STATES DISTRICT COURT

|  |  |  |
|---|---|---|
| *Plaintiff,* | | § |
| | | § |
| | | § |
| | | § |
| *v.* | | § |
| | | § |
| | | § |
| | | § |
| | | § |
| | | § |
| *Defendant* | | § |
| | | § |
| | | § |

AFFIDAVIT OF KAREN HALL

THE STATE OF TEXAS          §
                           §
COUNTY OF WALKER           §

BEFORE ME, the undersigned authority, on this day personally appeared **Karen Hall**; and after being first duly sworn according to law, upon his oath, deposed and said:

"My name is Karen Hall. I am over eighteen years of age and fully competent to make this affidavit. I am personally acquainted with the facts herein, and they are all true and correct. I have been employed by the Texas Department of Criminal Justice ("TDCJ") since September 1998. I have held the position of Manager in the TDCJ's Executive Services Division since November 2007.

"I am the custodian of records of the Executive Services Department of the Texas Department of Criminal Justice (TDCJ). These records are kept in the regular course of business, and it was the regular course of business of this office for an employee or representative of our department, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original."

STRONG MSJ APP. 29

"Texas Department of Criminal Justice Approvals for Religious Beards at Male Units in CY 2015 thru February 14, 2017."

"Further affiant sayeth not."

_____ 

**KAREN HALL**
Manager IV
Executive Services
Texas Department of Criminal Justice

**SWORN TO AND SUBSCRIBED** before me, by **Karen Hall**, on this 16   day of February 2017, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC in and for the STATE OF TEXAS

Connie Jo Gongre
_____
Notary's Printed Name

8|7|18
_____
My commission expires on:

CONNIE JO GONGRE
Notary Public, State of Texas
My Commission Expires
AUGUST 7, 2018

Notary without Bond

2

## Texas Department of Criminal Justice

| Approvals for Religious Beards at Male Units in CY 2015 thru February 14, 2017 | | | | |
|---|---|---|---|---|
| | CY 2015 | CY 2016 | CY 2017 | Total |
| AH Hughes | 851 | 291 | 20 | 1,162 |
| AJ Lychner | 926 | 1,625 | 148 | 2,699 |
| B Beto | 976 | 243 | 22 | 1,241 |
| B2 Powledge | 398 | 130 | 26 | 554 |
| BA Le Blanc | 610 | 270 | 21 | 901 |
| BC Clements | 1,223 | 290 | 39 | 1,552 |
| BH Bradshaw | 1,174 | 1,630 | 224 | 3,028 |
| BL Bartlett | 348 | 740 | 127 | 1,215 |
| BM B. Moore | 207 | 38 | 7 | 252 |
| BR Bridgeport | 148 | 78 | 4 | 230 |
| BX Dominguez | 825 | 1,463 | 182 | 2,470 |
| BY Boyd | 498 | 178 | 18 | 694 |
| C1 Roach ISF | 217 | 496 | 38 | 751 |
| CL Cole | 581 | 462 | 57 | 1,100 |
| CM C. Moore | 729 | 1,083 | 138 | 1,950 |
| CN Clemens | 442 | 155 | 34 | 631 |
| CO Coffield | 1,611 | 249 | 40 | 1,900 |
| CV Cleveland | 139 | 85 | 1 | 225 |
| CY Connally | 568 | 428 | 0 | 996 |
| DA Darrington | 485 | 60 | 6 | 551 |
| DB Briscoe | 639 | 68 | 9 | 716 |
| DH Dalhart | 228 | 39 | 6 | 273 |
| DL Daniel | 583 | 150 | 23 | 756 |
| DO Diboll | 110 | 64 | 6 | 180 |
| DU Byrd | 97 | 78 | 26 | 201 |
| DW Ware | 291 | 206 | 16 | 513 |
| E Ellis | 660 | 211 | 26 | 897 |
| E2 Estelle | 738 | 369 | 36 | 1,143 |
| EA Eastham | 690 | 197 | 27 | 914 |
| EN Segovia | 486 | 150 | 29 | 665 |
| FB Formby | 568 | 644 | 54 | 1,266 |
| FE Ferguson | 570 | 270 | 47 | 887 |
| GG Goodman | 375 | 336 | 32 | 743 |
| GL Lewis | 1,036 | 288 | 32 | 1,356 |
| GR Goree | 166 | 34 | 3 | 203 |
| HD Hodge | 274 | 72 | 10 | 356 |
| HF Ney | 352 | 250 | 14 | 616 |
| HI Hightower | 417 | 119 | 12 | 548 |
| HJ Hutchins | 671 | 808 | 243 | 1,722 |
| HM Kegans | 177 | 487 | 45 | 709 |

## Texas Department of Criminal Justice

| Approvals for Religious Beards at Male Units in CY 2015 thru February 14, 2017 | | | |
|---|---|---|---|
| | CY 2015 | CY 2016 | CY 2017 | Total |
| HP West Texas Hospital | 0 | 2 | 1 | 3 |
| HV Huntsville | 430 | 126 | 23 | 579 |
| J1 Jester I | 207 | 277 | 39 | 523 |
| J2 Vance | 141 | 21 | 3 | 165 |
| J3 Jester III | 373 | 87 | 6 | 466 |
| J4 Jester IV | 48 | 11 | 0 | 59 |
| JA Allred | 1,485 | 304 | 43 | 1,832 |
| JH Hamilton | 568 | 275 | 73 | 916 |
| JM Montford | 114 | 44 | 2 | 160 |
| JN Jordan | 329 | 104 | 19 | 452 |
| JT Johnston | 363 | 754 | 99 | 1,216 |
| KN Neal | 728 | 213 | 21 | 962 |
| KY Kyle | 305 | 263 | 23 | 591 |
| LH Lynaugh | 465 | 99 | 12 | 576 |
| LN Lindsey | 491 | 572 | 90 | 1,153 |
| MI Michael | 1,025 | 218 | 49 | 1,292 |
| ML McConnell | 881 | 179 | 46 | 1,106 |
| N3 Tulia | 352 | 301 | 27 | 680 |
| N4 Cotulla | 314 | 298 | 28 | 640 |
| N5 Fort Stockton | 334 | 206 | 43 | 583 |
| N6 Duncan | 106 | 29 | 4 | 139 |
| ND Gurney | 798 | 1,463 | 227 | 2,488 |
| NE Middleton | 756 | 944 | 191 | 1,891 |
| NF Holliday | 685 | 1,153 | 151 | 1,989 |
| NH Garza West | 587 | 738 | 214 | 1,539 |
| NI Garza East | 668 | 640 | 164 | 1,472 |
| NJ Baten | 284 | 367 | 31 | 682 |
| P1 Pack | 403 | 130 | 26 | 559 |
| P2 Luther | 544 | 156 | 6 | 706 |
| R1 Ramsey | 594 | 127 | 21 | 742 |
| R2 Stringfellow | 390 | 73 | 9 | 472 |
| R3 C.T. Terrell | 381 | 111 | 7 | 499 |
| RB Robertson | 1,288 | 169 | 44 | 1,501 |
| RD Rudd | 424 | 539 | 44 | 1,007 |
| RH Roach | 691 | 156 | 39 | 886 |
| RL Lopez | 430 | 418 | 56 | 904 |
| RV Scott | 291 | 92 | 13 | 396 |
| RZ Sanchez | 605 | 721 | 88 | 1,414 |
| SB Stevenson | 493 | 92 | 14 | 599 |
| SM Smith | 557 | 111 | 11 | 679 |
| SO Glossbrenner | 248 | 565 | 2 | 815 |
| ST Stiles | 632 | 184 | 1 | 817 |

Prepared by Executive Services

February 14, 2017

STRONG MSJ APP. 32

## Texas Department of Criminal Justice

| Approvals for Religious Beards at Male Units in CY 2015 thru February 14, 2017 | CY 2015 | CY 2016 | CY 2017 | Total |
|---|---|---|---|---|
| SY Sayle | 533 | 821 | 79 | 1,433 |
| T2 Mineral Wells PPT | 3 | 2 | 0 | 5 |
| TE Torres | 683 | 111 | 5 | 799 |
| TH Havins | 334 | 202 | 19 | 555 |
| TL Polunsky | 878 | 192 | 27 | 1,097 |
| TO Telford | 878 | 202 | 38 | 1,118 |
| VS Estes | 435 | 69 | 9 | 513 |
| W3 San Angelo Work Camp | 17 | 11 | 0 | 28 |
| W6 Chasefield Wilderness | 90 | 28 | 7 | 125 |
| W9 Roach Work/Wilderness Camp | 20 | 10 | 0 | 30 |
| WI Willacy County | 523 | 446 | 76 | 1,045 |
| WL Wallace | 459 | 118 | 8 | 585 |
| WR Wheeler | 280 | 422 | 33 | 735 |
| WY Wynne | 711 | 233 | 32 | 976 |
| XM Southern ISF | 23 | 408 | 0 | 431 |
| XN Western ISF | 3 | 3 | 2 | 8 |
| Total | 48,762 | 31,444 | 4,193 | 84,399 |

Prepared by Executive Services

February 14, 2017

**STRONG MSJ APP. 33**

# BUSINESS RECORD AFFIDAVIT

STATE OF TEXAS

COUNTY OF WALKER

BEFORE ME, the undersigned authority, personally appeared Karen Hall, who being by me duly sworn, deposed as follows:

"My name is Karen Hall; I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

"I am the custodian of records of the Executive Services Department of the Texas Department of Criminal Justice (TDCJ). These records are kept in the regular course of business, and it was the regular course of business of this office for an employee or representative of our department, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

"Texas Department of Criminal Justice Offenders by Faith Preference as of November 30, 2016"

"Texas Department of Criminal Justice Offenders with a Beard Designator on the Institutional Adjustment Screen as of November 30, 2016 by Religious Preference"

Karen Hall
Executive Services
Texas Department of Criminal Justice

SWORN TO AND SUBSCRIBED before me on this the 27th day of December, 2016.

NOTARY PUBLIC in and for the State of Texas

MARCY L. LORENSON
NOTARY PUBLIC printed name

Nov 3, 2020
Commission Expiration Date

Marcy L Lorenson
Notary Public, State of Texas
My Commission Expires
November 3, 2020
Notary without Bond
Notary ID 13089092-7

**STRONG MSJ APP. 34**

# Texas Department of Criminal Justice

## Offenders With a Beard Designator on the Institutional Adjustment Screen as of November 30, 2016 by Religious Preference

12/22/2016

| Religion | Count | Religion | Count |
|---|---|---|---|
| Catholic | 518 | Hebrew Messianic | 2 |
| Roman Catholic | 9,645 | Messianic Israelite | 6 |
| Eastern Orthodox | 11 | Christian Israelite | 1 |
| Greek Orthodox | 14 | Messianic Yahwist | 3 |
| Russian Orthodox | 2 | Amish | 10 |
| Coptic Christian | 1 | Assembly Of Messianic Faith | 1 |
| Neo Puritan | 1 | Krishna Consciousness | 2 |
| Mennonite | 5 | Messianic Christian | 3 |
| Traditional Catholic | 2 | Messianic Sabbatarian | 6 |
| Irish Catholic | 2 | Qehilath Haderek Judaism | 32 |
| Orthodox | 6 | Nazarene Israel | 2 |
| Orthodox Catholic | 1 | Presbyterian Reformed | 3 |
| Reformed Baptist | 1 | Nazarene Christian | 4 |
| Baptist | 9,642 | Disciples of Christ | 82 |
| American Baptist | 142 | Episcopal | 36 |
| Free-Will Baptist | 6 | Evangelical Reformed | 2 |
| General Baptist | 2 | Evangelical Free | 5 |
| German Baptist | 1 | Protestant Church of N.A. | 131 |
| Independent Baptist | 1 | Baphomet | 1 |
| Missionary Baptist | 26 | Nations of God and Earth | 40 |
| Primitive Baptist | 2 | Wotan | 2 |
| Regular Baptist | 249 | Worldwide Church of God | 4 |
| Seventh Day Baptist | 2 | House of Yahweh | 54 |
| Southern Baptist | 90 | Christian Identity | 37 |
| Brethren | 1 | Christian Science | 9 |
| Evang United Brethren | 3 | Hebrew Identity | 26 |
| Christian | 645 | Jehovah's Witness | 554 |
| Christian Non-Denominational | 25,226 | Mormon | 166 |
| Catholic Apostolic | 285 | Reorganized Latter Day Saints | 8 |
| Christian Catholic | 207 | Seventh Day Adventist | 141 |
| Church of the Nazarene | 16 | Sons of Yahwah | 1 |
| Church of Christ | 210 | Messianic Judaism | 3 |
| Charismatic | 2 | Church of JC Christian | 1 |

STRONG MSJ APP. 35

## Texas Department of Criminal Justice
## Offenders With a Beard Designator on the Institutional Adjustment Screen
## as of November 30, 2016 by Religious Preference

12/22/2016

| Religious Preference | Count | Religious Preference | Count |
|---|---|---|---|
| Messianic Jewish (Christian) | 854 | Kingdom Identity | 1 |
| Eastern Orthodox Christian | 5 | Assembly of Yahweh | 27 |
| Messianic Hebrew Israelite | 17 | Living Church of God | 1 |
| Sabbatarian | 67 | United Church of God | 14 |
| Nazarite | 7 | Philadelphia Church of God | 4 |
| Messianic Nazarene Israelite | 2 | Yahweh's New Covenant Assembly | 5 |
| Messianic Yisraelite | 2 | Yahweh's Evangelical Assembly | 6 |
| Protestant | 11 | Yahwist Messianic Jew | 1 |
| Orthodox Christian | 13 | Natzarim | 1 |
| Evangelical Christian | 1 | Yahwehst | 8 |
| Judeo-Christian | 2 | Mashochite | 2 |
| Sabbath Keepers | 15 | Yahweh Fellowship | 1 |
| Lutheran | 116 | Celtic | 3 |
| Muslim (Islam) | 4,361 | Druid | 22 |
| Sunni Muslim | 43 | Druidry | 2 |
| Shiite Muslim | 17 | Hare Krishna Iskcon | 11 |
| Moorish Science | 106 | Humanism | 1 |
| Nation of Islam | 171 | Mason | 6 |
| Nation of Islam Farahkan | 20 | Mysticism | 4 |
| Nubian Muslim | 1 | Neo Pagan | 188 |
| Lost/Found Nation of Islam | 2 | Ausanan | 1 |
| Nubian Islamic Hebrew | 1 | Ausar Auset | 2 |
| Moslem | 5 | Rastafarian | 163 |
| The Nation of Gods and Earths | 7 | Santeria | 18 |
| Nuwaubianism | 3 | Satanism | 128 |
| Suii Moslem | 3 | Scientology | 3 |
| Moorish Moslem | 3 | Shamanism | 5 |
| Moorish American Moslem | 2 | Spiritism | 12 |
| Shia Ithna Asher Muslim | 1 | Theliena | 5 |
| Islam | 448 | Theosophy | 1 |
| Methodist | 399 | Unitarian Universalist | 4 |
| Free Methodist | 5 | Wicca | 382 |

Prepared by Executive Services

**STRONG MSJ APP. 36**

## Texas Department of Criminal Justice
## Offenders With a Beard Designator on the Institutional Adjustment Screen
## as of November 30, 2016 by Religious Preference

12/22/2016

| Religious Preference | Count | Religious Preference | Count |
|---|---|---|---|
| Christian Methodist Episcopal | 6 | Voodoo | 4 |
| Southern Methodist | 5 | Universal Life Church | 6 |
| United Methodist | 4 | Rosicrucian | 2 |
| African Methodist Episcopal | 3 | Luciferianism | 12 |
| Pentecostal | 807 | Occultism | 1 |
| Assemblies of God | 47 | Elite International | 1 |
| Church of God Apostolic | 7 | Santa Muerte | 40 |
| Church of God Tennessee | 4 | Free Mason | 2 |
| Church of God Holiness | 8 | Heathen | 1 |
| Church of God International | 1 | Church of Light | 1 |
| Church of God in Christ | 38 | Eclectic Wiccan | 3 |
| Church of the Living God | 2 | Egyptian Paganism | 2 |
| Pentecostal Church of God | 19 | New Age Pagan | 1 |
| Pentecostal Nazarene | 3 | Pastafarianism | 3 |
| Pilgrim Holiness | 1 | Pagan | 82 |
| Pentecostal Churches | 22 | God Abiding Only | 1 |
| United Pentecostal Church | 7 | Integral Yoga | 1 |
| Christian Triumph Prophetic Min COG | 1 | Non Denomination | 1 |
| Church of God The Eternal | 1 | Creatologist | 1 |
| Presbyterian | 42 | Sons Of Satan High Priest | 1 |
| Church of God | 13 | Salvation Army | 2 |
| Agnostic | 142 | Native American | 1,563 |
| Odinist Asatru | 426 | Native American Shamanism | 10 |
| Atheist | 96 | Maya | 1 |
| Diest | 1 | Unitarian | 2 |
| United Church of Christ | 1 | | |
| United Evangelical | 1 | | |
| Universalist | 1 | | |
| Full Gospel Apostolic | 1 | | |
| Vampirism | 1 | | |
| Baha'l | 27 | | |
| Buddhist | 393 | | |
| Nichiren Shoshu Buddhist | 1 | | |

STRONG MSJ APP. 37

12/22/2016

**Texas Department of Criminal Justice**

**Offenders With a Beard Designator on the Institutional Adjustment Screen as of November 30, 2016 by Religious Preference**

| | |
|---|---|
| Zen Buddhist | 10 |
| Indian Philosophy | 1 |
| Siddha Yoga ï¿½ Wicca | 1 |
| Sikhism | 2 |
| Hinduism | 45 |
| Jewish | 552 |
| Shinto | 1 |
| African Hebrew Israelite | 11 |
| Taoism | 20 |
| Hebrew | 4 |
| Hebrew Israelite | 69 |
| Orthodox Jew | 67 |
| Yogi | 7 |
| Shavite | 1 |
| Kabbalah | 7 |
| Reformed Jewish | 3 |
| Black Hebrew Israelite | 1 |
| Refused to Answer | 8 |
| None | 3,833 |
| Unknown | 40 |
| Other | 85 |
| N/A | 3,074 |
| Total | 67,807 |

Prepared by Executive Services

**STRONG MSJ APP. 38**

## Texas Department of Criminal Justice
### Offenders by Faith Preference as of November 30, 2016

| Religious Preference: | Count: |
|---|---|
| A00 Catholic | 1812 |
| A01 Roman Catholic | 25989 |
| A02 Eastern Orthodox | 35 |
| A03 Greek Orthodox | 31 |
| A04 Russian Orthodox | 4 |
| A05 Coptic Christian | 4 |
| A06 Neo Puritan | 1 |
| A07 Mennonia | 10 |
| A08 Anglican Church | 3 |
| A10 Sovereign | 4 |
| A11 Traditional Catholic | 21 |
| A12 Irish Catholic | 3 |
| A13 Orthodox | 8 |
| A15 Reformed Baptist | 5 |
| A16 Apostolic | 1 |
| A17 Bible Believer | 1 |
| B00 Baptist | 20627 |
| B01 American Baptist | 286 |
| B02 FreeWill Baptist | 1 |
| B03 General Baptist | 5 |
| B04 German Baptist | |
| B05 Independent Baptist | 1 |
| B06 Missionary Baptist | 106 |
| B07 Missionary Baptist | 2 |
| B08 Primitive Baptist | |
| B09 Regular Baptist | 824 |
| B10 Seventh Day Baptist | 6 |
| B11 Southern Baptist | 216 |
| B31 Evang United Brethren | 4 |
| C00 Christian | 2318 |
| C01 Christian Non-Denominational | 50999 |
| C02 Catholic Apostolic | 641 |
| C03 Christian Catholic | |
| C04 Christian Mass Alliance | 592 |
| C05 Puritan | |
| C06 Church of the Nazarene | 44 |
| C08 Church of Christ | 685 |
| C09 Congregational | |
| C10 Charismatic | |
| C11 Messianic Jewish /Christian | 7 |
| C12 Eastern Orthodox Christian | 9 |
| C14 Sudd Yoga Christian | |
| C15 Messianic - Hebrew Israelite | 26 |
| C17 Sabbatarian | 185 |
| C18 Nazarite | 11 |
| C19 Messianic Nazarene Israelite | 4 |
| C20 Reform Sabbatarian | 1 |

| Religious Preference: | Count: |
|---|---|
| C21 Messianic Yisraelic | 2 |
| C22 Protestant | 26 |
| C24 Orthodox Christian | 23 |
| C25 Evangelical Christian | 4 |
| C26 Judeo-Christian | 3 |
| C27 Sabbath Keepers | 35 |
| C28 Hebrew Messianic | 5 |
| C29 Messianic Israelite | 14 |
| C30 Christian Israelite | 1 |
| C31 Messianic Yahweh | 5 |
| C33 Cristiano | 6 |
| C34 Amish | 9 |
| C35 Assembly Of Messianic Faith | 1 |
| C36 Scaredname Messianic | 2 |
| C37 Krsna Consciousness | 7 |
| C38 Messianic Christian | 17 |
| C39 Messianic Sabbatarian | 7 |
| C40 Messianic Believer | 5 |
| C41 GeHYah Hisdevik Judaism | 1 |
| C44 Nazarene Israel | 38 |
| C45 Presbyterian Reformed | 1 |
| C46 Nazarene Christian | 9 |
| C47 Christian Non-Roman Catholic | 3 |
| C16 Christian Non-Roman Catholic | 3 |
| C59 Particular Redemption Baptist | 2 |
| C60 Direct Particular Redemption Baptist | 1 |
| D01 Disciples of Christ | 335 |
| D02 True Worshiper | |
| E00 Episcopal | 95 |
| E02 Evangelical Reformed | 9 |
| E03 Evangelical Free | 26 |
| E04 Protestant Church of N.A. | 319 |
| E06 Episcomel | 1 |
| G01 Nations of God and Earth | 64 |
| G02 Druid | |
| G03 Bugabh | |
| G04 Kingson | 5 |
| G06 The Way | 1 |
| G08 Rapual Sharman | 1 |
| H00 Worldwide Church of God | 15 |
| H01 House of Yahweh | |
| H02 Nehemion Thirteen Society | 108 |
| H03 Christian Identity | 113 |
| H04 Christian Science | 29 |
| H05 Hebrew Identity | 45 |
| H06 Jehovahs Witness | 2074 |

| Religious Preference: | Count: |
|---|---|
| H07 Mormon | 391 |
| H08 Metroclasn Church | 3 |
| H09 Reorganized Latter Day Saints | 28 |
| H10 Seventh Day Adventist | 374 |
| H11 Sons Of Yahweh | 2 |
| H12 Messianic Judaism | 4 |
| H14 Church of JC Christian | 19 |
| H15 Kingdom Identity | 1 |
| H17 Assembly of Yahweh | 48 |
| H18 Living Church of God | 10 |
| H19 United Church of God | 39 |
| H20 Christian Secularist | 1 |
| H21 Philadelpha Church of God | |
| H22 Yahweh's New Covenant Assembly | 7 |
| H23 Yahweh's Evangelical Assembly | 211 |
| H24 Yahwist Messianic Jew | 1 |
| H27 Yahwehist | 17 |
| H28 Millette | 1 |
| H29 Mashianche | 1 |
| I35 Sabbatarian | 2 |
| L01 Lutheran | 319 |
| L02 Evangelical Lutheran | 1 |
| L03 LMS Synod Lutheran | 7 |
| L04 Nation of Islam | |
| M00 Muslim (Islam) | 6907 |
| M01 Sunni Muslim | 641 |
| M02 Shiite Muslim | 17 |
| M03 Moorish Science | 168 |
| M04 Nation of Islam | 277 |
| M05 Nation of Islam Farahkan | 46 |
| M06 Nubah Muslim | |
| M07 Lost/Found Nation of Islam | 5 |
| M08 Nubah Islamic Hebrew | 2 |
| M09 Moslem | |
| M10 The Nation of Gods and Earths | 14 |
| M11 Nuvvooanism | 3 |
| M12 Sufi Moslem | 5 |
| M13 Moorish Moslem | 5 |
| M14 Moorish American Moslem | 3 |
| M15 Shia Ithna Ashan Muslim | 2 |
| M16 Nubanity | |
| M17 Muslim | 760 |
| N00 Methodist | 99 |
| N01 Free Methodist | 13 |
| N02 Christian Methodist Episcopal | 1 |
| N03 Southern Methodist | |
| N04 United Methodist | 22 |

Prepared by Executive Services

12/22/2016

STRONG MSJ APP. 39

**Texas Department of Criminal Justice**
**Offenders by Faith Preference as of November 30, 2016**

| Religious Preference: | Count: |
|---|---|
| N07 African Methodist Episcopal | 11 |
| N08 African Methodist Episcopal Zion | 1 |
| P00 Pentecostal | 2044 |
| P01 Assemblies of God | 145 |
| P02 Church of God Indiana | 18 |
| P03 Church of God Apostolic | 18 |
| P04 Church of God Tennessee | 18 |
| P05 Church of God Holiness | 56 |
| P06 Church of God International | 5 |
| P07 Church of God in Christ | 102 |
| P08 Church of the Living God | 5 |
| P10 Pentecostal Church of God | 55 |
| P11 Pentecostal Nazarene | 14 |
| P12 Plain Holiness | 3 |
| P13 Pentecostal Churches | 61 |
| P14 United Pentecostal Church | 37 |
| P15 Christian Triumph Prophetic Min COG | 1 |
| P17 Church of God The Eternal | 1 |
| P18 Apostolic Ministers Fellowship | 1 |
| P31 Gnosticism | 2 |
| P50 Presbyterian | 117 |
| P53 United Presbyterian | 1 |
| P54 Church of God | 1 |
| P56 Orthodox Presbyterian | 25 |
| Q01 Quaker Society of Friends | 4 |
| R01 Agnostic | 181 |
| R02 Odinist Asatru | 703 |
| R03 Atheist | 158 |
| R04 Norse | 2 |
| R05 Diest | 2 |
| R06 Celtic | 7 |
| R07 Druid | 411 |
| R08 Druidry | 1 |
| R09 Folk angr | 2 |
| R11 Hare Krishna Iskcon | 16 |
| R12 Humanism | 1 |
| R15 Mason | 6 |
| R16 Mysticism | 11 |
| R17 Neo-Pagan | 403 |
| R18 Ausanian | 1 |
| R19 Osho | 1 |
| R20 Ausar Auset | 4 |
| R21 Rastafarian | 216 |
| R22 Santeria | 38 |
| R23 Satanism | 28 |
| R24 Scientology | 6 |

| Religious Preference: | Count: |
|---|---|
| R25 Shamanism | 7 |
| R26 Spiritism | 27 |
| R27 Thelema | 14 |
| R28 Theosophy | 2 |
| R31 Unitarian Universalist | 14 |
| R33 Wicca | 954 |
| R34 Voodoo | 10 |
| R35 Universal Life Church | 10 |
| R36 Zoroastrianism | 1 |
| R37 Rosicrucian | 4 |
| R38 Evolution? | 1 |
| R39 Luciferianism | 26 |
| R41 Occultism | 10 |
| R44 Brotherhood of Light | 1 |
| R48 Esoteric | 2 |
| R49 Santa Muerte | 84 |
| R50 Hermeticism | 1 |
| R51 Free Mason | 10 |
| R52 Necromancy | 2 |
| R53 Manicheism | 1 |
| R54 Heathen | 1 |
| R55 Church of Light | 1 |
| R56 Eclectic Wiccan | 7 |
| R57 Egyptian Paganism | 3 |
| R58 New Age Pagan | 1 |
| R59 Diannic | 1 |
| R64 Holy Creature Master | 1 |
| R65 Satanic Theriuac Pagan | 1 |
| R66 United Centers For Spiritual Living | 1 |
| R68 Pastafarianism | 3 |
| R70 Pagan | 147 |
| R72 Heathenism Asatru | 1 |
| R74 God Abiding Only | 1 |
| H75 Integral Yoga | 1 |
| R76 Non Denomination | 2 |
| P77 Creatology | 1 |
| R78 Mt Zion | 1 |
| R81 Sons Of Solar High Priest | 1 |
| S01 Salvation Army | 5 |
| S03 Star Of David | 1 |
| T00 Native American | 4698 |
| T01 Native American Shamanism | 22 |
| T02 Maya | 1 |
| L00 Unitarian | 10 |
| U01 United Church of Christ | 1 |
| U02 United Evangelical | 2 |

| Religious Preference: | Count: |
|---|---|
| U03 Universalist | 2 |
| U04 Full Gospel Apostolic | 5 |
| V01 Vamaism | 5 |
| W00 Bahai | 65 |
| W01 Buddhist | 1121 |
| W02 Nichiren Shoshu Buddhist | 4 |
| W03 Zen Buddhist | 19 |
| W04 Tibetan Buddhism | 1 |
| W05 Indian Philosophy | 1 |
| W06 Sedha Yoga – Wicca | 5 |
| W07 Sikhism | 4 |
| W08 Hinduism | 96 |
| W09 Jainism | 1 |
| W10 Jewish | 1130 |
| W11 Shinto | 1 |
| W12 African Hebrew Israelite | 18 |
| W13 Taoism | 45 |
| W14 Hebrew | 10 |
| W15 Hebrew Sraulte | 104 |
| W17 Orthodox Jew | 185 |
| W18 Shugendo Buddhism | 1 |
| W19 Orthodox Hebrew | 1 |
| V23 Yogi | 1 |
| W21 Pure Land Buddism | 1 |
| W23 Shavite | 1 |
| W23 Kazbalah | 1 |
| W25 Individualism | 1 |
| W26 Reformed Jewish | 1 |
| W27 Pure Enlighten For Deceptions Of Ibraham | 1 |
| W41 Nichiren Shu Buddhist | 1 |
| W42 Refuge Of The Stars | 1 |
| W43 Black Hebrew Israelite | 3 |
| W45 Seth an Tantric Layavoga | 1 |
| Z00 Refused to Answer | 19 |
| Z01 None | 8175 |
| Z02 Unknown | 921 |
| Z03 Other | 1391 |
| Unspecified | 2705 |
| | |
| **Total:** | **147445** |

Prepared by Executive Services

## SELF-AUTHENTICATING BUSINESS RECORDS AFFIDAVIT:

## AFFIDAVIT OF VANCE DRUM

"My name is Vance Drum and I am an employee of the TDCJ, a governmental agency. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the following is true and correct. I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated herein.

"I am the custodian of records for the Rehabilitation Programs Division/Chaplaincy Department of the Texas Department of Criminal Justice ("TDCJ"). **This request is for the Muslim population of offenders in TDCJ custody.** These are records which are kept by the TDCJ in the regular course of its business activity. The entries of such records were made as a regularly conducted activity and a regular practice of the TDCJ, and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters."

Executed in Walker County, State of Texas, on the 10th day of April, 2017.

Vance L. Drum
Manager I - Chaplaincy Department
Rehabilitation Programs Division
Texas Department of Criminal Justice

As of 2/28/17

| Unit | Muslim |
|------|-------:|
| Allred | 426 |
| Bartlett | 25 |
| Baten | 9 |
| Beto | 197 |
| Boyd | 41 |
| Bradshaw | 71 |
| Bridgeport | 13 |
| Bridgeport PPT | 0 |
| Briscoe | 49 |
| Byrd | 36 |
| Chasefield Wilderness | 5 |
| Clemens | 90 |
| Clements | 361 |
| Cleveland | 27 |
| Coffield | 361 |
| Cole | 30 |
| Connally | 258 |
| Cotulla | 7 |
| Crain | 48 |
| Dalhart | 22 |
| Daniel | 49 |
| Darrington | 123 |
| Diboll | 15 |
| Dominguez | 49 |
| Duncan | 8 |
| East Texas Treatment Facility | 12 |
| Eastham | 207 |
| Ellis | 158 |
| Estelle | 261 |
| Estes | 40 |
| Ferguson | 238 |
| Formby | 21 |
| Fort Stockton | 28 |
| Garza East | 63 |
| Garza West | 63 |
| Gist | 61 |
| Glossbrenner | 10 |
| Goodman | 18 |
| Goree | 17 |
| Gurney | 38 |
| Halbert | 4 |
| Hamilton | 43 |
| Havins | 18 |
| Henley | 6 |

| | |
|---|---|
| Hightower | 57 |
| Hilltop | 8 |
| Hobby | 149 |
| Hodge | 36 |
| Holliday | 59 |
| Hospital Galveston | 16 |
| Hughes | 282 |
| Huntsville | 60 |
| Hutchins | 82 |
| Jester I | 7 |
| Jester III | 48 |
| Jester IV | 29 |
| Johnston | 16 |
| Jordan | 38 |
| Kyle | 23 |
| Le Blanc | 43 |
| Lewis | 259 |
| Lindsey | 26 |
| Lockhart | 3 |
| Lockhart PPT | 4 |
| Lopez | 21 |
| Luther | 47 |
| Lychner | 97 |
| Lynaugh | 69 |
| Marlin | 8 |
| McConnell | 234 |
| Michael | 273 |
| Middleton | 47 |
| Montford | 43 |
| Moore, B. | 10 |
| Moore, C. | 17 |
| Mountain View | 43 |
| Murray | 83 |
| Neal | 59 |
| Ney | 25 |
| Pack | 37 |
| Plane | 11 |
| Polunsky | 280 |
| Powledge | 33 |
| Ramsey | 99 |
| Roach | 76 |
| Roach Work/Wilderness Camp | 0 |
| Robertson | 302 |
| Rudd | 14 |
| San Angelo Work Camp | 0 |
| San Saba | 2 |
| Sanchez | 30 |

STRONG MSJ APP. 43

| | |
|---|---:|
| Santa Maria Baby Bonding | 0 |
| Sayle | 7 |
| Scott | 61 |
| Segovia | 37 |
| Skyview | 25 |
| Smith | 94 |
| Stevenson | 40 |
| Stiles | 251 |
| Stringfellow | 56 |
| Telford | 406 |
| Terrell | 37 |
| Torres | 48 |
| Travis County | 31 |
| Tulia | 19 |
| Vance | 22 |
| Wallace | 45 |
| Ware | 14 |
| West Texas Hospital | 10 |
| Wheeler | 3 |
| Willacy County | 25 |
| Woodman | 1 |
| Wynne | 183 |
| Young | 3 |
| **Total** | **8,247** |

STRONG MSJ APP. 44

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| David Rasheed ALI, | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Cause No. 9:09-CV-52 |
| | § | |
| Rick THALER, | § | |
| Defendant | § | |

### AFFIDAVIT OF WILLIAM L. STEPHENS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF WALKER | § |

**BEFORE ME**, the undersigned authority, on this day personally appeared William L. Stephens; and after being first duly sworn according to law, upon his oath, deposed and said:

"My name is William L. Stephens. I am over eighteen years of age, fully competent to make this affidavit, and personally acquainted with the facts herein. I have been employed by the Texas Department of Criminal Justice ("TDCJ") since June of 1981 (then the Texas Department of Corrections). I have held the positions of Correctional Officer, Sergeant, Lieutenant, Captain, Major, Assistant Warden, Senior Warden and Regional Director. I am currently employed as the Director of TDCJ's Correctional Institutions Division, a position I have held since June 1, 2013. I am responsible for the management of approximately 138,000 adult felony offenders in 95 state operated prison units and state jail facilities across Texas.

"I previously held the position of Deputy Director for TDCJ's Correctional Institutions Division, Prison & Jail Operations, a position I held from September 2009 to May 31, 2013. I supervised six Regional Directors who have the responsibility of managing institutional prisons and state jails throughout the state of Texas. I was also responsible for the oversight of security systems, which provides technical assistance and operational support to TDCJ-CID administration and correctional facilities in several areas, including but not limited to: staffing, budget, and security review. I have personal knowledge of the following based on my experiences in my current position, as well as my past positions.

### I.   Introduction

"Offenders incarcerated in TDCJ are required to obey grooming standards that are described in the Offender Orientation Handbook, printed November 2004, on page 10. Offenders who refuse to comply with TDCJ grooming standards will be subject to disciplinary action. For male offenders, the relevant grooming standards require:

1

STRONG MSJ APP. 45

A. Personal Cleanliness and Grooming

3. Male offenders must be clean-shaven. No beards, mustaches or hair under the lip will be allowed.

4. Male offenders must keep their hair trimmed up the back of their neck and head. Hair must be neatly cut. Hair must be cut around the ears. Sideburns will not extend below the middle of the ears. No block style, afro, natural or shag haircuts will be permitted. No fad or extreme hairstyles/haircuts allowed. No Mohawks, tails, or designs cut into the hair allowed.

"Thus, male offenders are required to be clean-shaven. However, an offender with a medical condition, which allows for a clipper shave pass, may receive a medical exemption. The clipper shave pass is not an exception to the clean shaven grooming policy. Basically, the offender does not have to shave with a razor, but must clipper shave their face with a triple aught blade that gives them the appearance of a clean shave. Offenders are not allowed to maintain a quarter-inch beard.

"TDCJ management has learned by studying other systems that enforcement of quarter-inch beards can have a significant impact on agency operations and that maintaining a quarter-inch beard policy would not be feasible. If the clean shaven policy is not available, beards of any length would have to be allowed. By allowing any length of beard, there is an increase in security and safety concerns. Weapons and contraband can easily be hidden within the long facial hair. Searches of offenders become more difficult and time consuming for the correctional officers that have to place their hands within the beard to search for contraband. The identification of offenders becomes more problematic as they move through the units and upon committing a crime within prison or escape due to significant changes in their appearance.

"Enforcement of a beard length limit would be difficult because other than using a ruler to physically measure the offender's beard, there is not a way to ensure compliance. Using a ruler to measure an offender's beard presents two main issues. First, there are no landmarks that can be used to regulate length of facial hair as there are for head hair such as the ear lobes, forehead, or nape of the neck. Second, measuring the length of an offender's beard with a ruler creates a safety risk to correctional officers. Correctional officers are trained to always keep an arm's length distance between themselves and offenders. Beard searches or beard measuring would require an officer to stand within the strike zone, which could lead to a significant increase in offender assaults on officers. Further, a search through an offender's beard is even more personal and intimate search than the standard strip searches of daily prison life. It would involve correctional officers placing their hands on the offender's face, something that would be perceived as significantly more intrusive by offenders and result in significant rise in incidents between offenders and correctional officers.

2

STRONG MSJ APP. 46

## II. Impact of Beards on Search Times and Unit Activities
### a. Effect of Beards on Pat or Strip Search Times

"The Michael Unit, where offender Ali is housed, is a 2250 bed prototype unit with four similarly situated housing buildings. The average offender occupancy of each of those buildings is 432 offenders. Typically, general population offenders are pat searched at minimum, four times a day. Currently, an average pat search of one offender takes approximately seven seconds. Should an officer be required to search an offender's beard, it would take an additional three seconds to complete a pat search and the total time for an average pat search would be ten seconds per offender. Searching beards during four pat searches a day would add an additional 86.4 minutes or 1.44 hours of correctional officer time per building to the existing search procedure. For all four general population buildings on a 2250 prototype unit, searching beards during four pat searches a day would add 5.76 hours of correctional officer time to the existing search protocol each day.

"These same considerations apply to offenders in Administrative Segregation or in the G5 custody level. In administrative segregation, a strip search is required prior to exiting the cell, the recreation areas, and shower. Therefore, these offenders are subject to a minimum of four strip searches a day. Currently an average strip search of one offender takes at least thirty seconds. Should an officer be required to search an offender's beard, it would take an additional three seconds to complete a strip search and the total time for an average strip search would be 33 seconds per offender. As of May 31, 2013 there were 457 Administrative Segregation offenders and 85 G5 offenders at the Michael Unit. Searching the beards of Administrative Segregation offenders four times a day would add an additional 91.4 minutes or 1.52 hours of correctional officer time to the existing search protocol each day. Searching the beards of 85 G5 offenders four times a day would add an additional 17 minutes or .28 hours of correctional officer time to the existing search protocol each day.

### b. Effect of Increased Search Times on Other Unit Activities

"Two approaches could be utilized in the furtherance of daily activities. The first approach would be to allow additional time to complete the search process while still utilizing the staff historically used for search purposes. However, this would impact the unit's building schedule and ability to complete other unit functions. The second approach would divert staff away from other functions within the unit in an effort to complete searches within the currently allotted time in an effort to adhere to the unit's schedule. However, the second approach would delay from other unit missions and goals being accomplished in a timely manner.

"In either approach, the impact will be evident in other turnouts being slowed or delayed. These turnouts could be, but are not limited to, work programs, education / vocation, chaplaincy, medical, food service, laundry, Industry, commissary, community service, and maintenance. The additional search times would also have a direct impact on the serving of meals during mass turnouts and could delay one of our most crucial responsibilities, taking of the unit count. Many unit building schedules have the occurrence of meals either just before or after recreation periods. Each unit's administration would essentially have to triage the unit's daily activities and work towards completing what the unit administration deems to be the most important and/or

3

STRONG MSJ APP. 47

essential daily activities.

### c. Offender Refusal to Comply with a Search of His Beard

"In the event an offender refuses to be searched in the turnout or turn-in process, operations in that area would cease until the offender complied with the search. Additional correctional staff would be diverted from other positions in order to assist in the isolation and control of the offender. If a correctional officer saw something in an offender's beard, he could search the offender's beard, with the offender's approval.

"However, if the offender refuses to allow the correctional officer to search his beard, the correctional officer will have to initiate the Incident Command System (ICS) protocol, radio his supervisor, request video camera equipment, allow the Sergeant to take command of the search, and then conduct the search. During the ICS, all activity in that area would cease, as well as in areas of responding staff. Continued non-compliance would cause the Major Use of Force continuum to be followed and could result in force applied to the offender to allow the search of the offender.

"The use of force on an offender can vary in time from minutes to hours dependent on how involved or to what extent the force is utilized and how long it takes the offender to become compliant. After force is concluded, documentation must be completed by participants, witnesses, medical staff and supervisors. The documentation gathered becomes a use of force packet which is then reviewed by clerical staff, the unit administration, Region Headquarters staff, and Administrative Review and Risk Management staff.

"Each use of force incident is unique, which makes it difficult to estimate the amount of time required to complete the incident, documentation and investigation. From the time devoted to the use of force, through the reviews of all completed documentation is approximately two hours. The reallocation of staff for a use of force always has a significant impact on unit operations and daily activities. Other daily activities would have to be canceled or postponed, contingent upon the return of correctional officers and supervisors needed to complete unit operations.

### III. Offender Transfers and Offender Identification
#### a. Offender Transfers

"The additional pressure on correctional staff would arise particularly on preparing offenders for transit. TDCJ transported an average of 2,264 offenders per day in 2012. When an offender leaves a prison to go to another facility it is a high risk proposition, and would be slowed because correctional officers would need to do more detailed searches of the offenders.

#### b. Identification of Offenders in Prison

"The mission of the TDCJ's Correctional Institutions Division is to provide safe and appropriate confinement, supervision, rehabilitation and reintegration of adult felons, and to effectively manage or administer correctional facilities based on constitutional and statutory

4

standards.  In the institutional setting, TDCJ-CID's primary responsibility is to maintain custody and control over the offenders.  This is in keeping with the greater issue of public safety and welfare.  As part of our public trust, we must operate safe and secure facilities in as fiscally sound a manner as possible.

"A beard is inconsistent with public safety, prison security, management, and staffing.  If offenders were allowed to grow facial hair at their discretion, they could quickly change their appearance by shaving their facial hair.  Even a short beard may mask significant identifying marks, such as scars, tattoos or birthmarks.  Offenders could increase their ability to avoid identification after they committed crimes within the prison if they could change their appearance rapidly.  Even shaving off a quarter-inch beard can significantly change a person's appearance enough to make it difficult to identify him.

"An important security measure regarding offenders is the ready identification of each offender at all times.  Some large prison units have an offender population of about 4,000.  Every day, those offenders are subject to a count eight times, in order to ensure that all offenders are accounted for.  Additionally, most offenders are traveling several times daily through different parts of a unit for activities such as showers, work assignments, school, meals, medical appointments or routine medical treatment, law library visits, religious services or study sessions, recreation (including gymnasiums, outdoor recreation yards or dayrooms), commissary visits, or visitation (including regular or contact visitation).

"In this environment of constant offender movement, maintaining order—ensuring offenders are not out of place or engaging in assaultive conduct or contraband trafficking—requires security officers to check offenders' identification cards.  Furthermore, many officers are rotated throughout the unit, so they are unable to become familiar with offenders in one area.  In the average 2250 man unit, one officer has to supervise 144 offenders in a housing area.  Since 2002, Offender Ali has transferred 45 times and in the past three years has had six different cell assignments.  Given the rapid and constant movement and transfer of offenders through TDCJ, it is of paramount importance that correctional officers are able to immediately identify the offenders based on their appearance from their photo on the identification card.  A slight change in appearance can result in identity errors that can contribute to significant security breeches.  Therefore, requiring a uniform grooming policy makes it much more difficult for offenders to change their appearance and hinder the identification process.

"Multiple photographs and identification cards do not address the identification needs of TDCJ as described in the above paragraph.  Identification photos are taken every five years; however, if before five years an offender has a change of appearance a new photo will be taken.  Taking multiple photos of one offender who has grown a beard or changes his beard from one extreme style to another would tax the already strained resources.  Furthermore, changing appearances frequently would burden and impede offender identification, which is essential to the safety and security of the institution.  Currently, the offender fee to replace an identification card is $5.00.  Offenders contributing financially to have their photos taken would not be feasible as approximately half the TDCJ population is indigent.

5

STRONG MSJ APP. 49

### c. Identification of Offenders - Escape

"When an offender has escaped, immediate identification is crucial. The offender's photograph is released to the media as soon as possible. When offender Carlos Kidd escaped in November 2005 while he was in compliance with TDCJ offender grooming standards, release of his photograph to the media led to his identification by a store employee the following day. If that offender had worn an extreme hair style or beard in prison and cut his hair or shaved his beard when he escaped, his appearance would not have corresponded to the photographs released to the media and he might have escaped identification.

"Even if the photograph on the ID is recent, if an offender has a beard and is able to shave it as soon as he escapes, the difference of appearance can defeat identification. I have attached photographs taken at the Intake phase when an offender is brought to TDCJ. Head hair is cut to be in compliance with grooming standards and any facial hair is shaved. As seen in the photographs, it is difficult to identify the offender who has been shaved even after studying the photograph. If an officer or citizen sees the offender after his escape, that individual may not recognize the offender from a photograph showing a full beard or hair. Immediate identification of an offender must not require study in a prison situation.

## IV. Effect on Unit Operations if Only Muslim Offenders Were Permitted to Wear Beards
### a. Time required to Verify a Beard Pass List

"If only Muslim offenders were permitted an exemption from the clean-shaven policy, TDCJ would have to implement a Beard Pass List which identified those offenders who were determined to qualify for the religious exemption. On a daily basis, staff would have to verify which offenders are permitted to wear a beard in order to differentiate between offenders who were granted a religious exemption to wear a beard and those offenders who were not granted an exemption and therefore were out of compliance with the grooming policy. This would require daily communication between chaplaincy, classification, and security staff members. The listing of offenders permitted to wear a beard would also have to be updated every day as new offenders are transferred onto a unit, paroled, or released. The identification of those offenders permitted to wear a beard would present a substantial burden to correctional officers.

### b. Negative Impact on Safe Operations

"Further, allowing an exemption for only one group of offenders, but not others, would have a negative impact on the safe operation of the prison. TDCJ must be careful not to give privileges to a given offender or group of offenders when not necessary, because this is viewed as "special treatment" by offenders, and causes additional security concerns. Having an exemption to the clean shaven policy could be viewed by offenders as a privilege.

"Any time there is a privilege granted to some offenders but not all, there is the possibility of resentment between offenders. In this instance, there would be resentment between those offenders allowed to grow facial hair and those offenders who were not allowed to do so.

STRONG MSJ APP. 50

Resentment among offenders is a serious safety concern in a prison environment.  If Muslim offenders were granted a beard exemption, they could become the target of retaliation from other offenders.

## V.  Enforcement of a Beard Pass List or Beard Length Limit: Increased Disciplinary Cases

"It is also foreseeable that changing the grooming policy to permit offenders to grow beards would result in increased disciplinary cases against offenders. If only Muslim offenders were permitted to grow beards, there would be disciplinary cases arising from offenders of other faith groups attempting to grow a beard.  If all offenders were permitted to grow a beard, but a length limit was put in place, then it is expected that there would be disciplinary cases as a result of offenders having a beard that is too long. In both scenarios, officers would constantly have to enforce the grooming policy by sending offenders to the barber shop to have their beard trimmed or shaved.  Officers would also be faced with enforcing the policy via disciplinary action against offenders that refuse to comply with the grooming policy.

"An increase in disciplinary cases will place further burdens on the correctional officers and impose further costs upon the agency.   An average offender disciplinary case takes approximately three staff hours to complete from start to finish and involves several staff members.  Below is a brief chart of the steps taken to process a disciplinary case, the staff member responsible for those steps, and the time involved.

| Task | Staff Member Usually Assigned | Minutes |
| --- | --- | --- |
| Offense report written | Correctional Officer | 10 |
| Offense report approved by supervisor | Lieutenant | 5 |
| Case investigated by a CO or above | Sergeant | 15 |
| Charging officer interviewed by investigator | Sergeant | 5 |
| Preliminary investigation approved by supervisor | Lieutenant | 5 |
| Case reviewed and approved for processing | Disciplinary clerk | 5 |
| Case numbered and disciplinary history attached | Disciplinary clerk | 5 |
| Case graded by grading official | Major | 5 |
| Grade entered, case typed, DI00 40 screens attached | Disciplinary clerk | 15 |
| Counsel Substitute supervisor reviews case and assigns to staff | Counsel Substitute | 5 |
| Counsel substitute serves offender with a major disciplinary case | Counsel substitute | 15 |
| Counsel substitute investigates case, interviews witnesses | Counsel substitute | 20 |

7

STRONG MSJ APP. 51

| Task | Staff Member Usually Assigned | Minutes |
|---|---|---|
| DI00 records updated | Counsel substitute | 5 |
| Case scheduled for major court, updated history attached | Disciplinary clerk | 5 |
| Case heard by disciplinary hearing officer | Captain | 15 |
| Counsel substitute is present at the hearing | Counsel substitute | 15 |
| Accusing officer testifies at the hearing | Correctional officer | 10 |
| Disposition entered, records printed | Disciplinary Clerk | 5 |
| Warden approves and reviews case | Warden | 5 |
|  | **TOTAL:** | **170** |

Any increase in disciplinary cases as a result of a change to the clean-shaven policy would result in a significant cost of the already limited time and resources of the Agency.

### VI. Comparison to Other Prison Systems
#### a. Introduction

"In addition to my experience in prison management, I studied other prison systems similar in size and population. I personally visited California, Florida, and the Federal Bureau of Prisons in Beaumont, Texas. Florida has the same "clean shaven policy" for the same reasons TDCJ has for the policy.

#### b. California

"I spoke with California prison officials who indicated that there are problems with allowing facial hair in their prison systems. In 2006 California changed their grooming policy to allow offenders to grow half-inch beards. In 2009 I had the opportunity to tour the California Department of Corrections and Rehabilitation (CDCR). While touring the units, I observed that the grooming policy was rarely or if at all enforced. California prison officials stated that the grooming policy was rarely followed due to the fact that the restriction on length was operationally impossible to enforce. In 2011 pursuant to a settlement agreement, California changed their grooming policy to allow offenders to have any length of facial hair. On February 13, 2012, I contacted CDCR regarding the changes of policy in the past years. Among other reasons for the change, correctional officers not enforcing/maintaining the half-inch beard length. CDCR's experience was that a clean shaven policy is enforceable while a half-inch beard policy is unenforceable. While a "no standard" policy requires no enforcement, it results in problems with identification of offenders and contraband hidden in their beards.

#### c. Federal System

"After touring the United States Penitentiary (USP) in Beaumont, Texas, which allows the offenders to grow any length of facial hair, it was apparent that there are significant differences between Texas and the Federal prison institutions. For example, the USP has

8

implemented the case manager system, where a correctional counselor is assigned to either a general or specialized unit, and is usually assigned, along with one case manager, a specific caseload. The correctional counselor plays a key role in maintaining and enhancing the security of the unit and institution by his/her extensive contacts with the inmates. The correctional counselor must develop a general knowledge of inmates assigned to his/her unit or area of responsibility and a detailed knowledge of inmates assigned to specific caseloads. TDCJ does not have a similar position that assists the officers in monitoring offender behavior within the housing building.

"Furthermore, the USP has three similarly situated general housing units and one special housing unit. An example of one of the general housing units is Building 1. As of February 2012, Building 1 has 512 offender beds with three correctional officers and one rover on each watch. There is one officer to every 128 offenders. In addition, the USP has 35 unit management positions located in the housing buildings, which consist of 3 unit managers, 12 case managers, 14 correctional counselors, and 6 unit secretaries; these positions are spread throughout each of the four housing buildings. Therefore, on average each building has 8.75 additional staff members. Thus, in one building, there is one staff member for every 40.16 offenders. In comparison, TDCJ Michael unit, a "2250 bed prototype" unit, has a much higher offender to staff ratio. At the Michael unit there are four similarly situated housing buildings with an average of 432 offenders, three correctional officers, three rovers, one picket desk officer, and one sergeant per building. Therefore, there is only one staff member for every 54 offenders. To accomplish the same staff to offender ratio at the four housing buildings at the Michael Unit with correctional officers, TDCJ would have to hire two additional correctional officers per building at an average annual salary of $34,600, costing TDCJ approximately $276,800 per shift at this unit. The cost would be significantly increased if a comparable ratio was applied to all shifts and all other facilities in the system.

"Due to the federal grooming policy allowing for any length of facial hair, the USP has had contraband issues with offenders braiding drugs and handcuff keys into their beards; however, the federal officials agreed that if they required their offenders to maintain a certain length of facial hair it would be impossible to enforce mainly due to the increase in costs and the infeasibility of additional offender movement into the barber shops.

## VII.   Conclusion

"Based upon my experience and expertise, it is my opinion that allowing quarter-inch beards would jeopardize the effective functioning of the TDCJ system, particularly in respect to the institutional safety and security as well as public safety.

"Further Affiant sayeth not."

9

_____

William L. Stephens
Director, Correctional Institutions Division
Texas Department of Criminal Justice

**SWORN TO AND SUBSCRIBED BEFORE ME** by the said _William Stephens_ on this the _10_ day of _July_, 2013, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC in and for the
STATE of TEXAS

_____
Notary's Printed Name

STEPHANIE HIGHTOWER
Notary Public, State of Texas
My Commission Expires
AUGUST 4, 2014

Notary without Bond

10

**STRONG MSJ APP. 54**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **TABARI STRONG, #1689849,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:16-CV-00131** |
| | § | |
| **BRAD LIVINGSTON   ET AL.,** | § | |
| **Defendants** | § | |

### AFFIDAVIT OF TONY O'HARE

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF WALKER | § |

BEFORE ME, the undersigned authority, on this day personally appeared **Tony O'Hare**; and after being first duly sworn according to law, upon his oath, deposed and said:

"My name is Tony O'Hare, and I am over eighteen years of age, of sound mind, capable of making this affidavit, and I have personal knowledge of the facts herein stated. I have been employed by the Texas Department of Criminal Justice ("TDCJ") since May 1987. During my time with the TDCJ I have held the positions of Correctional Officer, Sergeant, Lieutenant, Captain, Major, Assistant Warden, and Senior Warden. I am currently employed as Director of Region I, a position I have held since September 1, 2016.

"It is my understanding that offender Tabari Strong (1689849), plaintiff in the above-styled case, claims that his religious rights have been violated by not being allowed to sculpt his beard and by requiring him to shave his beard once a year for an identification photograph. I have been asked to address certain aspects of these allegations and do so as follows:

"The mission of the TDCJ Correctional Institutions Division (CID) is to provide safe and appropriate confinement, supervision, rehabilitation, and reintegration to adult felons, and to effectively manage or administer correctional facilities based on constitutional and statutory standards. In the institutional setting, TDCJ CID's primary responsibility is to maintain custody and control over the offenders. This is in keeping with the greater interest of public safety and welfare. As part of our public trust, we must operate safe and secure facilities in as fiscally sound a manner as possible. Prison is inherently a tightly controlled environment, as control is vital to the safety and security of unit staff, offenders, and the general public.

**STRONG MSJ APP. 55**

**The Importance of Identification**

"Within the TDCJ, offenders are required to obey grooming standards that are described in the Offender Orientation Handbook. Grooming standards exist to promote good hygiene and healthy prison populations, and to reduce issues associated with security threat groups or gangs inside the prisons. Offenders who refuse to comply with the grooming standards are subject to disciplinary action.

"All offenders are required to be clean-shaven at all times, with the exception of those who have been approved for a four-inch religious beard or a half-inch clipper shave medical exemption. Offenders with religious beards are required to shave once annually during the month of their birth so that the TDCJ may obtain an up-to-date clean-shaven photograph for identification purposes. After the photograph is obtained, the offender may regrow the religious beard. Identification photographs for offenders without religious beards are taken once every three years, or whenever the offender's physical appearance has changed substantially from the most recent photo on file.

"Permitting offenders to maintain a four-inch religious beard without an annual shave and photograph requirement is inconsistent with public safety, prison security, and prudent prison management. Bearded offenders can rapidly alter their appearance by shaving or trimming their beards. In order to quickly and accurately identify offenders who have significantly changed their appearance by shaving, updated photographs of the offenders with a clean-shaven face are imperative. It is vital to prison security to be able to immediately identify offenders to prevent offenders from evading identification after committing crimes within the prison, to ensure that offenders are not out of place—which is often tied to contraband trafficking or assaultive behavior— and to enable an accurate count and detect escape.

"Offenders are highly creative in seeking ways to alter their appearance to avoid detection, such as changing from t-shirt and shorts into the standard offender outfit after committing a crime within the prison, or soaking their standard attire in various to change the color and camouflage themselves while attempting escape. It is not unreasonable to predict that offenders will soon employ similar strategies with their beards; that is, committing a crime in one area of the prison, quickly shaving or altering their beard to evade immediate detection, and hoping to be in another part of the prison by the time the crime is discovered.

"Most offenders travel several times daily through different parts of a unit for activities such as showers, work assignments, school, meals, medical appointments or routine medical treatment, law library visits, religious services or study sessions, recreation (including gymnasiums, outdoor recreation yards or dayrooms), commissary visits, or visitation (including regular or contract visitation). In this environment of constant offender movement, maintaining order—ensuring offenders are not out of place or engaging in assaultive conduct or contraband

Page 2

STRONG MSJ APP. 56

trafficking—requires security officers to check offenders' identification cards. In this environment of constant movement, security officers must check offender's ID cards to maintain order and ensure that offenders are not out of place, trafficking contraband, or engaging in assaultive behavior.

"Furthermore, many officers are rotated throughout the unit, so they are unable to become familiar with offenders in one area. In the average 2,250-man unit, one officer has to supervise 144 offenders in a housing area. Given the rapid and constant movement and transfer of offenders throughout the TDCJ, it is of paramount importance that correctional officers are able to immediately identify the offenders based on the photo on the identification card or by otherwise accessing a recent, clean-shaven photograph.

"In addition, offenders are subject to a count eight times every day, each of which requires identifying the offender. Any offender whose identity is in question is required to produce his ID card during the count. All units are required to conduct one bed book count per day, which requires that the offender get up, come to the door of his cell or bunk, and produce his ID card. The officer then identifies the offender and checks him off of a bed roster with the offender's name, ID number, and housing assignment. Count ensures that all offenders are accounted for and no one has escaped or is otherwise out of place.

"The TDCJ requires offenders with religious beards to shave annually during the month of their birth in order that a current clean-shaven photo be taken. This practice ensures that the TDCJ has an up-to-date photo of the offender for identification purposes within the unit, during transfer, or upon escape. Without this requirement, the TDCJ would have no way of knowing how an offender's face changes under his beard. Even a short beard could mask significant identifying marks, such as moles, scars, growths, facial discoloration, or facial disfigurement that may have developed or changed in a year's time, resulting in a drastically different appearance when clean-shaven. An offender could also lose teeth, or tattoo the skin under the beard during the year, which likewise could significantly alter the offender's appearance without the beard.

"A four-inch beard can also mask the changes brought about by gaining or losing weight. Due to the rules and regulations of the Health Insurance Portability and Accountability Act (HIPAA), TDCJ correctional staff do not have access to an offender's medical record, which would indicate the changing weight of the offender. As previously mentioned, most correctional staff within a unit are rotated and do not work in the same areas on a daily basis, so their ability to determine whether a particular offender's weight has fluctuated is limited. If a bearded offender who has gained or lost weight also lacks a current identification photograph, it can be very difficult to positively identify the offender. The same is true for the changes wrought by aging. An aging offender may look very different from his clean-shaven intake photograph, and so clean-shaven photos must be updated. Offender Strong has a particularly thick, dense beard,

Page 3

which very effectively obscures the lower portion of his face and would mask any of the changes described above.

"The annual shave and photograph requirement helps the TDCJ maintain an accurate and contemporary identifying photograph of the offender and thus to meet the agency's primary responsibility of maintaining safe custody and control of the offenders. This is true within the prison unit, and is magnified greatly should an offender succeed in escaping TDCJ custody.

"Within the past year at McConnell Unit, where Offender Strong is currently assigned, an offender with an approved religious beard designation attempted to escape from TDCJ custody. Documentation was intercepted by the TDCJ showing that Offender Joseph Mack (#1654400) was being assisted in his attempted escape by sources both inside and outside of the McConnell Unit. The scheme included placement of a getaway car near the unit where an accomplice would be waiting along with an assault rifle and alternate clothing. The documentation also states that Offender Mack was to bring a new razor to immediately shave his beard in an effort to further disguise his appearance. Based on the intelligence gathered by the TDCJ, prison officials were able to intervene and prevent the escape, but this incident highlights the very real threat to the general public.

"Though all offenders' ID cards are compared to their faces every day, the facial features of clean-shaven offenders may be visually inspected by correctional officers during bed book count or any other time an offender is directed to produce his ID card. Offenders' ID cards are also reviewed by the Unit Classification Committee (UCC) every six to twelve months to consider if any changes need to be made to the offender's custody and classification level. If a correctional officer or the UCC determines that an offender's ID card is no longer a current or accurate depiction of the offender's appearance, that offender will be directed to take an updated photograph. This unit practice is intended to encourage quick and accurate identification of offenders, and serves to limit the amount of change that may occur to an offender's appearance before it is captured in an updated photograph. Facial changes of offenders with four-inch religious beards—particularly those with dense beards like Offender Strong's—could not be detected by the UCC or a correctional officer, however. Therefore it is prudent for the TDCJ to update the clean-shaven photographs of offenders with religious beards more often than would otherwise be necessary.

"Offenders who are approved to wear a religious beard are not permitted to sculpt, trim, or otherwise alter the natural growth of those beards, including changing the shape of the line along their cheeks, jaws, or neck. If offenders were allowed to alter the natural line of their beards, an offender could rapidly change his appearance while still maintaining the religious beard. This too could severely disrupt the ability of TDCJ staff to quickly and accurately identify offenders, and is therefore inconsistent with prison security, management, and staffing, in addition to public safety.

Page 4

STRONG MSJ APP. 58

"If offenders with religious beards were permitted to shape, sculpt, design, or trim their beards, they could endlessly alter their appearance by sculpting their facial hair. To maintain an accurate image of each offender, the TDCJ would have to keep up with each bearded offender's whims of how they want to wear their beards and take an identification photo of an offender every time he altered the natural line of his beard. Taking multiple photos of offenders who alter the shape or appearance of their beard would tax already strained resources. Currently, the offender fee to replace an identification card is $5.00. Requiring offenders to bear the cost of replacing or updating identification cards is not feasible, however, because approximately half of the offender population is indigent. In the first 18 months of the religious beard policy, from August 2015 through February 2017, more than 84,000 requests for religious beards were approved by the TDCJ. If each of those offenders had changed his sculpting preference just three times, it would equate to roughly one and a quarter million dollars at the $5.00 ID replacement rate.

"Moreover, TDCJ staff would experience additional pressure during offender transit if offenders were permitted to sculpt their beards. TDCJ transports over 2,000 offenders every weekday—offenders are not transported on the weekends. The table below indicates the number of offenders the TDCJ transported in the past four years.

| YEAR | OFFENDERS TRANSPORTED | DAILY AVERAGE |
|------|-----------------------|---------------|
| 2013 | 553,516 | 2,120 |
| 2014 | 577,752 | 2,213 |
| 2015 | 592,027 | 2,268 |
| 2016 | 581,048 | 2,226 |

"Transportation of offenders to different facilities is a high risk proposition which calls for repeated and definite identification of each offender. Extra time would be required to carry out each transfer if offenders were permitted to alter their appearance on a whim by sculpting their religious beards. With newly-sculpted religious beards making ID cards and photographs inaccurate, transfers would require even more time and care to be certain that the correct offenders came and went from the correct facilities.

**Security Threat Groups: Potential Problems**

"Within the population of offenders held by the TDCJ, security threat groups and prison gangs must be managed carefully. Security threat groups are groups with a well-organized structure who routinely use violence, fear, intimidation, and sex to further the group's prohibited activities, and who pose a threat to the physical safety and security of staff, offenders, or the public as determined by the TDCJ CID Director. Their members are highly loyal to their group. Gangs include groups of offenders who have some organized structure and are involved in prohibited activities within TDCJ facilities that frequently disrupt normal operations but have not

STRONG MSJ APP. 59

progressed to the point of being a constant threat to the physical safety and security of staff, offenders, or the public. The TDCJ currently recognizes twelve security threat groups and sixty-nine other prison gangs in custody.

"Security threat groups are responsible for the introduction of drugs, weapons, cell phones, and other contraband into prisons. Their members manipulate more vulnerable staff and offenders in order to introduce meth, cocaine, K2 (synthetic marijuana), tobacco and other drugs onto the units. These activities take a tremendous toll on the offender population as well as institutional safety and security. The TDCJ is combatting this threat constantly, system-wide.

"The TDCJ strives daily to reduce the ability or opportunity for members of prison gangs and security threat groups—and those coerced into running errands on their behalf— from identifying themselves as members of the group and communicating with each other while in custody. Offenders are not permitted to possess or trade items with gang symbols, and any items with gang-related identifiers or symbols are considered contraband and are confiscated accordingly. Offenders are likewise not permitted to wear unique hairstyles that they could use to designate themselves as members of a gang or security threat group.

"In the halls of most, if not all, of the units in my Region, I have witnessed gang-affiliated offenders with a variety of gang signs cut into their hair or beards. Commonly used signs include the offender's home telephone area code, which represents a particular gang, or sports team logos. For example, "H-town" or the facsimile of the Houston Astros baseball logo—a star with an associated H— represents the Tango Blast clique. I understand that the recent growth in the use of these signs in offender hair and beards is the result of the TDCJ's awareness of the previously-utilized tattoos and their meanings. Management problems have arisen in general population dayrooms due to offenders sporting these marks in attempts to control or intimidate other offenders. The marks are badges of honor and membership in the gangs, and delineate gang "turf" within the prison population.

"The TDCJ has a strong security interest in preventing offenders from identifying themselves as members of a security threat group or gang. Preventing offenders from altering the natural growth of their religious beards or shaving designs into their hair eliminates the opportunity for offenders to establish an identifying hairstyle or design to designate themselves as members of a particular group. If offenders who are permitted religious beards are also allowed to alter the natural line along their cheeks, jaws, or necks, they could designate themselves as members of these groups with something as simple as wearing the cheek line of the beard low on the face, shaving a curved line along cheek or jaw, or trimming the neck line to a certain area.

"Because offenders have demonstrated interest in using any form of communication, including graffiti, hand signs, clothing, artwork, and written communications as a means of

Page 6

STRONG MSJ APP. 60

exhibiting security threat group affiliation or conducting gang activity, TDCJ must also be vigilant of the potential for communication available to offenders who are permitted to grow facial hair. Allowing offenders who wear religious beards to sculpt the line along their cheeks, jaws, or necks could not only give those offenders the opportunity to identify themselves as members of a security threat group or engage in gang-related communications with other offenders, but it could also subject the offenders with beards to coercion or extortion by gang members who could force them into conveying information via the way they sculpt their beards.

**TDCJ's Disciplinary System & Offender Strong**

"Offenders are convicted felons and are sent to prison because they have violated the law. Unfortunately, many offenders continue in this type of behavior in the prison setting. Offenders who break prison rules or regulations are punished through the Disciplinary Process. Rule violations are normally memorialized in an offense report, written by a TDCJ security officer, and are later graded as a minor or major offense. The offender is notified of the charges against him and is given the opportunity to attend a disciplinary hearing to determine whether or not the offender is guilty of the reported offense. If guilty, the punishment is determined and assessed. Punishment of rule and regulation violations is progressive and will normally proceed as described in the Offender Orientation Handbook. Punishment may include counseling and reprimand, loss of privileges, solitary confinement, being placed in a lower time-earning class, or loss of good time. Offenders may also utilize the disciplinary appeals process.

"Since being received by the TDCJ in February 2011, Offender Strong has earned sixty-one disciplinary convictions, all of which are described below.

| Offense Date | Disciplinary No. | Description of Offense | Offense Code |
|---|---|---|---|
| 12/03/2015 | 20160104061 | Riot | 8 |
| 07/28/2015 | 20150339679 | Threatening to Inflict Harm on an Officer | 4 |
| 07/16/2015 | 20150327684 | Refusing to Accept a Housing Assignment | 24.2 |
| 06/11/2015 | 20150296416 | Assaulting Officer w/o Weapon, Non-Serious Injury | 3.3 |
| 05/20/2015 | 20150271194 | Fighting an Offender without a Weapon, Non-Serious Injury | 21 |
| 04/26/2015 | 20150241953 | Out of Place | 27 |
| 04/13/2015 | 20150230180 | Refusing or Failing to Obey Orders | 24 |
| 04/13/2015 | 20150230180 | Out of Place | 27 |
| 04/11/2015 | 20150230185 | Out of Place | 27 |
| 02/23/2015 | 20150181498 | Use of Indecent or Vulgar Language or Gestures | 42 |
| 02/21/2015 | 20150181479 | Attempting to Establish an Inappropriate Relationship with Staff | 30.1 |
| 01/19/2015 | 20150142329 | Refusing to Comply with Grooming Standards | 24.1 |
| 01/18/2015 | 20150142368 | Refusing or Failing to Obey Orders | 24 |

Page 7

| Date | Number | Offense | Code |
|---|---|---|---|
| 01/18/2015 | 20150142368 | Out of Place | 27 |
| 01/05/2015 | 20150131755 | Creating a Disturbance | 23 |
| 01/05/2015 | 20150131755 | Refusing or Failing to Obey Orders | 24 |
| 08/05/2014 | 20140351397 | Refusing or Failing to Obey Orders | 24 |
| 05/16/2014 | 20140266996 | Use of Indecent or Vulgar Language or Gestures | 42 |
| 04/23/2014 | 20140241650 | Possession of Contraband | 16 |
| 04/19/2014 | 20140236472 | Out of Place | 27 |
| 04/13/2014 | 20140229320 | Refusing or Failing to Obey Orders | 24 |
| 03/28/2014 | 20140216462 | Out of Place | 27 |
| 03/28/2014 | 20140216462 | Failing or Refusing to Respond to a Staff Member's Question(s) | 32 |
| 03/20/2014 | 20140203835 | Out of Place | 27 |
| 02/24/2014 | 20140180155 | Refusing or Failing to Obey Orders | 24 |
| 02/24/2014 | 20140180155 | Out of Place | 27 |
| 02/23/2014 | 20140178959 | Out of Place | 27 |
| 02/08/2014 | 20140161221 | Out of Place | 27 |
| 09/24/2013 | 20140026471 | Use of Indecent or Vulgar Language or Gestures | 42 |
| 02/21/2013 | 20130170187 | Refusing or Failing to Obey Orders | 24 |
| 09/21/2012 | 20130023358 | Refusing or Failing to Obey Orders | 24 |
| 08/06/2012 | 20120336164 | Refusing or Failing to Obey Orders | 24 |
| 08/02/2012 | 20120335456 | Refusing or Failing to Obey Orders | 24 |
| 07/26/2012 | 20120325113 | Assaulting an Officer without a Weapon, Non-Serious Injury | 3.3 |
| 07/03/2012 | 20120301665 | Refusing or Failing to Obey Orders | 24 |
| 04/11/2012 | 20120220351 | Refusing to Accept a Housing Assignment | 24.2 |
| 03/04/2012 | 20120182327 | Creating a Disturbance | 23 |
| 03/04/2012 | 20120182327 | Refusing or Failing to Obey Orders | 24 |
| 03/03/2012 | 20120182334 | Refusing to Comply with Grooming Standards | 24.1 |
| 02/19/2012 | 20120169384 | Refusing or Failing to Obey Orders | 24 |
| 02/18/2012 | 20120169299 | Refusing or Failing to Obey Orders | 24 |
| 12/08/2011 | 20120099783 | Refusing to Comply with Grooming Standards | 24.1 |
| 12/04/2011 | 20120096488 | Refusing or Failing to Obey Orders | 24 |
| 12/04/2011 | 20120096488 | Refusing to Comply with Grooming Standards | 24.1 |
| 12/02/2011 | 20120096027 | Refusing to Comply with Grooming Standards | 24.1 |
| 11/30/2011 | 20120092147 | Refusing to Comply with Grooming Standards | 24.1 |
| 11/23/2011 | 20120088100 | Refusing or Failing to Obey Orders | 24 |
| 11/23/2011 | 20120088100 | Refusing to Comply with Grooming Standards | 24.1 |
| 11/18/2011 | 20120082918 | Refusing to Comply with Grooming Standards | 24.1 |
| 11/15/2011 | 20120079557 | Refusing to Comply with Grooming Standards | 24.1 |
| 11/09/2011 | 20120074410 | Refusing to Comply with Grooming Standards | 24.1 |
| 11/08/2011 | 20120072778 | Refusing to Comply with Grooming Standards | 24.1 |
| 10/21/2011 | 20120052905 | Refusing to Comply with Grooming Standards | 24.1 |

STRONG MSJ APP. 62

| | | | |
|---|---|---|---:|
| *10/20/2011* | 20120051535 | Refusing to Comply with Grooming Standards | 24.1 |
| *10/12/2011* | 20120042311 | Refusing to Comply with Grooming Standards | 24.1 |
| *10/05/2011* | 20120036309 | Refusing to Comply with Grooming Standards | 24.1 |
| *10/05/2011* | 20120036309 | Lying to a Staff Member | 33 |
| *06/26/2011* | 20110309564 | Out of Place | 27 |
| *06/13/2011* | 20110296023 | Refusing or Failing to Obey Orders | 24 |
| *05/20/2011* | 20110268344 | Use of Indecent or Vulgar Language or Gestures | 42 |
| *05/19/2011* | 20110268144 | Refusing or Failing to Obey Orders | 24 |

"Offender Strong's disciplinary history, including numerous counts of refusing to obey orders, refusing to comply with grooming standards, creating disturbances, being out of place, threatening and assaulting officers, fighting with another offender, and participating in a riot, indicates that he poses a significant threat to the safe and orderly operation of a prison unit.

"Offenders will be disciplined for refusing to comply with orders, failure to comply with grooming standards, and for refusing to accept a housing assignment. The security risks associated with offenders who refuse to obey orders are obvious; an offender who fails to recognize a correctional officer's authority threatens the safe and orderly operation of the unit and presents dangers ranging from minor schedule disruptions to much larger prison disturbances. However, failure to obey an order also runs counter to one of the TDCJ's most important duties, which is the rehabilitation of offenders, including working towards following rules and leading an orderly life. Offenders incarcerated in the TDCJ have all been convicted of a felony offense and by the very nature of that conviction have been found to have broken one of society's rules. Often, these offenders have a long history of failure to follow the rules. At the TDCJ, we try to teach offenders that a significant part of becoming a productive member of society is learning to follow the rules. Requiring offenders to get out of bed a certain time, attend work or go to school, and obey legitimate orders given by correctional officers are not only imperative to the safe and orderly operation of the unit, but also part of the rehabilitative process.

"Refusing to accept a housing assignment and creating a disturbance are also punishable offenses. As with obeying orders, it cuts against the rehabilitative goal of teaching offenders to follow the rules, and interferes with the orderly operation of the prison. The housing needs of hundreds or thousands—more than 2,700 at the McConnell Unit—are carefully managed. Each offender must be found a bed suitable for his security level and medical needs, such as a lower bunk restriction, to maintain safe and secure operations. The offender population of each unit changes daily as offenders are transferred between units, transported to and from medical treatment, and as new offenders arrive and others are paroled or released. When an offender refuses to accept a housing assignment, that balance is thrown off and operations are interrupted.

Page 9

Likewise, creating a disturbance by its very nature interferes with the safe, efficient operation of a prison unit.

"Failure to comply with grooming standards shows a similar disregard for the rules and for the authority of TDCJ correctional officers and will be disciplined. As discussed above, offenders who sculpt their beards interfere with the ability of correctional officers—or offenders who witness crimes in prison—to identify the offender, and allow offenders to communicate gang affiliations and messages. Offenders who grow beards without a religious exemption, or who grow beards longer than four inches may also be attempting to use their beard to hide contraband in their beards, such a needles, handcuff keys, or drugs.

"Offenders are punished for being out of place because it is imperative to the safety and orderly operation of the unit that offender remain in or travel to areas of the prison to which they are authorized. An offender may be disciplined for being out of place when discovered in a cell or wing to which he is not assigned, when he is in an area of the unit where he is not expected, or when he fails to appear at designated areas at specific times, such as going to the kitchen instead of a medical appointment. Offenders pose a serious security risk to themselves, other offenders, and unit staff when they travel to unauthorized areas of the prison. Being out of place presents more than just the hassle of tracking down an offender for count; it presents the opportunity for offenders to engage in very serious crimes such physical assaults of unit staff or other offenders, security threat group or gang activity, stealing, or gambling. It is also more difficult for correctional officers and other witnesses to positively identify offenders who commit crimes while out of place due to the very nature of them being in a part of the prison where they are not recognized and are not expected.

Among Offender Strong's more serious offenses are his disciplinaries for rioting and assaulting an offender. These activities are in direct opposition to TDCJ's mission to maintain safe, secure facilities. Offender Strong participated in a riot involving twelve offenders, creating a danger of injury to persons and damage to property. A response team had to be deployed as a result, interfering with the unit operations. All offender movement throughout the unit was brought to a halt, disrupting the activities of the entire offender population and staff. He also assaulted another offender in TDCJ custody on a separate occasion.

"Offenders in TDCJ custody are subject to discipline for threats against TDCJ staff members as well. In the past, Offender Strong has threatened to harm a correctional officer, and did in fact assault two correctional officers. Threats to and assaults upon TDCJ staff are arguably the most serious disciplinary offenses an offender can commit, showing a disregard for not only the authority of officers and rules of the prison system, but also for the rules of society at large. Offender Strong is currently incarcerated for life, without the possibility of parole, for the commission of a capital crime involving the violent killing of multiple persons.

## TDCJ Custody Levels & Offender Strong

"Every offender in the TDCJ is assigned a custody designation which indicates where and with whom the offender may live, how much supervision he needs, and to which jobs he may be assigned. Custody level is determined by several factors including an offender's current institutional behavior, his current offense, and his sentence length. While not a punishment per se, an adverse disciplinary ruling may negatively affect an offender's custody designation. Offenders who habitually violate the rules may be placed in a more restrictive custody. More restrictive custody entails a more controlled environment and more direct supervision with less opportunity for disruptive behavior and disciplinaries. Offenders who comply with the rules, including those who rehabilitate after an adverse disciplinary history, may be assigned a less restrictive custody level.

"The custody level with the least amount of supervision is G1 custody, which refers to offenders who may live in dorms outside the security fence and may work outside the security fence with periodic unarmed supervision. All offender trusties are classified with G1 custody. Offenders with G2 custody must live in dorms or cells inside the security fence and they may work outside the security fence, but only under direct, armed supervision. G3 custody level refers to offenders who may live in dorms or cells inside the main building of the unit. They are ineligible to live in dorms outside the main building, inside the security fence. They may work outside the security fence only under direct, armed supervision. Offenders assigned to G4 custody must live in a cell, with few exceptions, and may work outside the security fence under direct, armed supervision. G5 custody level refers to offenders who have exhibited assaultive or aggressive behavior; those offenders must live in cells and they may not work outside the security fence without direct, armed supervision. Finally, administrative segregation refers to offenders who must be separated from staff and other offenders because they are dangerous or are in danger from other offenders. These offenders generally only leave their cells only for showers and limited recreation.

"Offender Strong was received into TDCJ custody as a G3 custody level offender, but has only been classified at that level for roughly 46% of his time in TDCJ custody through May 2017. He has spent 32% of his time at custody level G4, and is currently at that level. He has spent 21% of his time in G5 custody, from December 2015 through March 2017. Offender Strong's custody status is subject to change should he be convicted of a major disciplinary infraction. He has never earned G1 custody, or even G2 custody, and has never been classified as a trusty inmate. He is considered a high-risk offender.

"Further affiant sayeth not."

_(signature)_

**Tony O'Hare**
**Director II**
Region I Director's Office
Texas Department of Criminal Justice

SWORN TO AND SUBSCRIBED before me by Tony O'Hare on this **22** day of May, 2017, to certify which witness my hand and seal of office.

**LINDSAY
LEWIS**
Notary Public, State of Texas
My Commission Expires
5-29-2019

**Notary Without Bond**

_(signature)_

Notary Public In and For State of Texas

Lindsay Lewis

Notary's Printed Name

**STRONG MSJ APP. 66**

# Texas Department of Criminal Justice

## STEP 2   OFFENDER GRIEVANCE FORM

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2015152233 |
| Date Received: | JUL 06 2015 |
| Date Due: | JUL 20 2015 |
| Grievance Code: | 400 |
| Investigator ID #: | 12245 |
| Extension Date: | |
| Date Retd to Offender: | |

Offender Name: Tabari Strong   TDCJ # 1689849

Unit: MC4   Housing Assignment: 8-J-28T

Unit where incident occurred: MCA Admin Status

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Warden C. Furr   When? July 2nd 2015

What was their response? No reasons exist to warrant overturn Case.

What action was taken? Failure to Provide Equal Protection under the 1st, 4th, 5th, 6th, 8th Amend of US Const.

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

Due to the Bies Views of TDCJ's McConnell Administrative offender Strong is asking that no Immunity be Granted to any and all officials (11th Amendment of US Constitution) of TDCJ due to their involvement of a conspiracy to cover criminal act acts of its Administration and Subordinates. Excessive Punishment was Given by Cpt/DHo Saxton when he refused to Give the 14days of Credit to offender's 45 days of restriction. Offender was or housed 14days in Solitary of which the DHO refused to Give offender any Credit for. The Punishment was allso excessive due to the Nature that DHO was leaneant towards offender Mendoza who was involved in the same Case, Equal Protection! Offender is requesting that offender Mendoza's disciplinary records be reviewed to show a Racial Discrimination. Also offender suffered an broken Sholulder while Cpt Saxon was on duty and refused to Provide any Medical Assistance for such injury. Offender Mendoza was the aggressor in said Cause of fight and received a lighten restriction then that of offender Strong. Offender Strong has suffered the loss of over $100.00 within the month of May and June Due to an Administration's Plot on offender Like him as well as an illegal search and Sieziure of his Property. Offender has suffered the Mental anguish of having rashes on his body or Skin due to the Neglect of not showering and not being provided his Hygiene that was in said Property that was lost, damage or stolen by TDCJ's McConnell Unit Officers. Warden Furr has committed an act of collaboration with an on-Going retaliator Harrassment against offender Strong due to him & freely expressing his 1st Amendment Right of Speech through Grievances, I-60 or other legal forms as well as his Religious Faith of Islam. Cpt Perez has made an Pack with Cpt Saxon and all other TDCJ McConnell unit Staff to Forge any and all disciplinaries against Strong to remove him from General Population. This act of Conspireing took effect on

I-127 Front (Revised 11-2010)   **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**   (OVER)

or about January 2015. Since then offender Strong has been given multiple discip linaries all coming on the Card and Shift that CH Leser works. The act of conspricy is when a "Meeting of the minds" takes Place which involves three or more Peo- Ple, therefor No Qualified Immunity under the 11th Amendment can be Provided to any and all TDCJ officals who are involved with said matter. offender is requesting to have Case either over turned or a reduction in said restrictions, as well as for a rehearing with a Non bais OHO who is not of Latino decent. offender is requesting that all evidence be reviewed. Due to offender being the Defense in said fight he should have had the least restrictive means of restriction Provided to him, yet and Bias and void OHO chose to Discriminate in order to carry out an ongoing Plot

**Action Requested to resolve your Complaint.** For all relief Sought to be Granted !!

**Offender Signature:** _____  **Date:** 7-7-15

**Grievance Response:** Review of Disciplinary Case #20150271194 has been completed. There was sufficient evidence presented to sustain the charge and the finding of guilt. Records indicate that the hearing was conducted per policy and there were no due process or procedural errors noted. The punishment was within Agency guidelines for this offense. No further action warranted by this office.

**Signature Authority:** **B. BARNETT** _B Barnett_  **Date:** 8-7-15

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:** *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance # _____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:** _____

**OFFICE USE ONLY**

Initial Submission    UGI Initials: _____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

**2nd Submission**    UGI Initials: _____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

**3rd Submission**    UGI Initials: _____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

I-127 Back (Revised 11-2010)

Appendix F

**Departamento de Justicia Criminal de Texas**

## PASO 1

**FORMULARIO DE QUEJAS**

8J-28T

**OFFICE USE ONLY**
Para Uso De La Oficina Solamente

Grievance #: 2015152233

Date Received: 06.03.15

Date Due: 07.03.15

Grievance Code: 400

Investigator ID #: 1950

Extension Date:

Date Returned to Offender JUL 07 2015

Nombre: Tabari Strong     TDCJ # 1689849

Unidad: ML(4)     Celda Asignada: H-8H9-Cell 12

Unidad donde ocurrió el incidente: Disciplinary Hearing ML(4)

Es obligatorio que trate de resolver su problema con un empleado antes de presentar su queja formalmente. La única excepción es cuando apela los resultados de un caso disciplinario.

Con quién habló (nombre y rango)? Capt. Saxton     Cuándo? June 2nd /2015

Cuál fue su respuesta? Found Guilty of Code 21.0 (Disciplinary 20150271194) 45/45 45/30 restrictions

Qué medidas fueron tomadas? Malicious Prosecution (Failure to Protect 5th, 6th, 8th and 14th Amendments)

Escriba su queja en el espacio de abajo. Por favor, incluya quién, qué, cuándo, donde y el # de caso disciplinario si se requiere.

Appealing Disciplinary #201502 71194 on the Grounds of Due Process and Failure to Protect offender Strong's life (5th, 6th, 8th and 14th Amendments of U.S. Const.) and Maliciously Prosecuting Offender Strong due to him Freely Expression himself through either Grievances against TDCJ McConnell Unit officials and as well Reviously. Offender Strong has filed multiple Complaints of which to State that Sgt. Fernandez staged an attack on offender Strong by having offender ███████ attack him. On the date of May 18th and 19th 2015 Sgt. Fernandez had a 20 to 30 minute Conversation with offender ████ of which resulted in offender Strong be-house or moved to 8 building. Offender ████ told offender Strong that Sgt. Fernandez and McConnell Unit Administration (ie Officers) were "out to Get him" (mean in G Strong). ██████ told offender Strong and offender ████ at I-bed 25 Bottom this on May 19th 2015. The reasons ███████ informed Strong was that Sgt Fernandez under the Guidance of Capt Perez and others wanted offender Strong "out the way" or moved to G-4 custody level or even Segregation by planting illegal contraband in his property (such as Drugs, Knife etc...). Offender ████████ told offender Strong that Sgt Fernandez and others TDCJ officials wanted to Get the-ir hands on offender Strong's property to destroy it as well as Plant illegal contraband in it. This was done on May 20th 2015 when offender ████ assaulted offender Strong at B-side turnout. Offender Strong was merely protecting himself from harm and by doing so was Mal-iscously Prosecuting by TDCJ officials who are suppose to Provide Protection against said ev-ents. Offender Strong was taken to 11 building 'AH Cell 12 without Property for over 6 days of which he was denied Showers (5 days); denied all other hygiene such as toothpaste and tooth-brush as well as legal material inorder to keep from writting any outside videos. Offender was al-

I-127S Frente (Revisión 9-2007)     **FIRME AL REVERSO DE ESTA FORMA**     (Continua al reverso)

Appendix F

So denied any Medical treatment after officers of 11 building broke offenders Strong collick bone while he was in hand restraints. Officer Sanchez and other unknown officer worker 11 building while taking restraints off offender snapped his shoulder bone of which Capt Saldin refused Medical treatment of until May 21st, 2015 at or around 5:45 when SGT Salinas took offender to Infirmay. Offender Strong's Property was dismantled and over $61.00 of Property i.e Commissary was stolen as well as he spent 13 Plus days in Solitary confinement under cruel and unsual Punishment of not being Showered (9 days), No Hygiene Products (6 days), No legal Material i.e Stamps paper etc... (6 days), denied Medical treatments (6 days) and maliciously Prosecuted with out equal Protection and Due process of the Law. Failure to Protect all in retaliation of Strong. exercising his Freedom of Expression.

**Acción que usted solicita para resolver su problema.**

To have all evidence of time lase video of May 18th, 19th, and 20th, 2015 held for legal action of a law suite, Time lase video of 7 building multiuse rm on May 18 2015 and of 7 building Recreation area shall be be saved even though no audio may be heard the Fact that SGT Fernandez and offender Mendoza can be seen having a conferece is what is needed. To have case over-turn due to offender Protecting himself, and to have all Propety Stolen returned ASAP Now!!

Firma del Ofensor: _____  Fecha: June 2nd, 2015

**Decisión Administrativa:**

Disciplinary Case 20150271194 has been reviewed and there were no procedural errors noted. The Disciplinary Hearing Officer determined that there was sufficient evidence to support the guilty verdict. The punishment imposed was within the established guidelines. No reasons exist to warrant overturning this case. No further action is warranted.

Firma de la Autoridad _____  **Warden C. Furr**  Fecha: **JUL 0 1 2015**

Si usted no esta satisfecho con la respuestra del Paso I, (I-127), usted puede enviar el Paso 2 (I-128) al investigador de Quejas de la unidad dentro de 15 días de la fecha de la respuesta del Paso I. Escriba la razon de su apelación en la forma del Paso 2.

**Su Queja fue regresada por las siguientes razones:**
*Presente su queja cuando haya corregido su error en el formulario.*

☐ 1. El límite establecido de 15 días para presentar su queja ha terminado.

☐ 2. Presentó mas de una queja en el periodo establecido de 7 días.*

☐ 3. La forma original no fue presentada. *

☐ 4. La queja tiene páginas excesivas o inapropiadas. *.

☐ 5. No hay documentación que indique que usted trato de resolver su queja informalmente

☐ 6. No indicó que remedio solicita para resolver su problema.*

☐ 7. Contiene lenguaje vulgar, indecente o amenazador fisicamente. *

☐ 8. Su problema no se puede solucionar presentando esta queja. *

☐ 9. Ya presentó esta queja anteriormente, queja # _____

☐ 10. No se puede leer, no se entiende. *

☐ 11. No es apropiado. *

UGI Signature: _____

| OFFICE USE ONLY |
| --- |
| Para Uso De La Oficina Solamente |

Initial Submission _____ UGI Initials:_____

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

2nd Submission _____ UGI Initials:_____

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

3rd Submission _____ UGI Initials:_____

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

Appendix F

**STRONG MSJ APP. 70**

# TEXAS
# DEPARTMENT OF CRIMINAL JUSTICE

OFFENDER GRIEVANCE PROGRAM

# NOTICE

All documentation that follows this sheet is <u>restricted and confidential</u> and is not to be released without the authorization of the administrator of offender grievances.

# RESTRICTED AND CONFIDENTIAL

OG-006 (11/1/02)

# GRIEVANCE INVESTIGATION WORKSHEET

Restricted & Confidential

| | STEP 1 X |
|---|---|
| GRIEVANCE OFFICE USE ONLY | STEP 2 |

Unit: **ML**   Investigator ID: **I-1950**   Date Initiated: **06/03/15**   Date Completed: _____   Date Due: **07/03/15**

Offender Name: **Strong, Tabari**   TDCJ No: **1689849**   Grievance No: **2015152233**

| Issue Code:<br>**400** | EMERGENCY<br>YES ()<br>NO () | ADA ( )<br>Disciplinary ( )<br>Medical ( ) | Property ( )<br>Religion ( )<br>OPI Investigation ( ) | Use of Force (UOF) ( )<br>Harassment or Retaliation * ( )<br>PREA ( ) |
|---|---|---|---|---|

*Harassment or Retaliation of Use of the Grievance Procedure, Access to courts, or other Legal Activity

Note: *Offenders are not allowed to review the grievance investigation worksheet at any time. For claims of sexual abuse, sexual assault, criminal acts by staff, Excessive or Unreported UOF, the investigation must be conducted by the Office of Inspector General (OIG) and the OIG Fact Sheet Completed.*

Summary of Issue: *(include date, time and location):*  Disciplinary 20150271194   Hrng: 06/02/15  MA 21.0

Requested Remedy: To have all evidence of time lapse video of May 18-20 held for legal actions of a law suite, time lapse of 7 bldg multi-purpose room on May 18 and of 7-bldg recreation area shall be saved even though no audio may be heard the fact that Sgt. Fernandez and O/f Mendoza can be seen having a conference is what is needed. To have case overturned due to o/f protecting himself and to have all property stolen returned ASAP now.

The following is to be completed and signed by the Investigating Official. Attach statements/support documentation, if applicable.

Summary of Fact Finding Activity:   Disciplinary Worksheet

Case reviewed no errors

Suggested Response to Offender:

Disciplinary Case 20150271194 has been reviewed and there were no procedural errors noted. The Disciplinary Hearing Officer determined that there was sufficient evidence to support the guilty verdict. The punishment imposed was within the established guidelines. No reasons exist to warrant overturning this case. No further action is warranted.

OUTCOME CODE: **D**   RESOLUTION CODE: ___2.01___ *(Grievance Office Use Only)*

Investigating Official completes the section below.

Printed Name: J. Garcia   Signature: _____

Title: Investigator III   Date: 07/01/15

This grievance is being processed in an effort to resolve a problem through the established procedures identified in BP-03.77 and AD-03.82. It is expressly prohibited to subject the grievant, other offenders, or staff to any form of reprisal for the use of these procedures.

OG-01 Rev. 05/2014

# Disciplinary Worksheet and Document Checklist
*This form **must** be used in combination with the OG-01 Grievance Worksheet*

Offender Name: Strong, Tabari    TDCJ #: 1089849    Grievance #: 2015152233

Disciplinary Case #: 20150271194    ☑ MAJOR    ☐ MINOR

| | | | |
|---|---|---|---|
| ☑ I-47 MA | ☑ I-210 (Front and back) | ☑ CS 09 | ☐ Outpatient Mental Health Services |
| ☐ I-47 MI | ☐ I-217 | ☑ CS 10-11 A and B | Disciplinary Case Review |
| | ☐ CS 12 | ☐ CS 14 (if applicable) | |

Offender Plea:    ☐ Guilty    ☐ Not Guilty    ☐ None

| | | |
|---|---|---|
| Was the disciplinary tape reviewed? | ☐ Yes ☑ No ☐ N/A (Minor) | Disciplinary Tape #_____ |
| Was the offender served with notice of charges within 30days of the date of discovery of offense? | ☑ Yes ☐ No | |
| If no to the above, was an extension approved/attached? | ☐ Yes ☐ No | N/A |
| Did the offender receive 24-hour notice prior to the hearing? | ☑ Yes ☐ No | |
| Did the offender waive the 24-hour notice? | ☑ Yes ☑ No | |
| Was hearing held within 20 days after notice service? | ☑ Yes ☐ No | |
| If no, to the above, was an extension approved/attached? | ☑ Yes ☐ No | |
| Was an Interpreter requested/required at the hearing? | ☐ Yes ☑ No | English primary language |
| Was offender present at the hearing? | ☑ Yes ☐ No | |
| Did the CS/offender make a statement at the hearing? | ☑ Yes ☐ No | |
| Did the CS/staff/offender statement refute the charge? | ☑ Yes ☐ No | |
| Was the charging officer requested at the hearing? | ☑ Yes ☐ No | |
| Was charging officer present at the hearing? | ☑ Yes ☐ No | |
| Were offender/staff witnesses requested? | ☑ Yes ☐ No | |
| Were offender/staff witnesses present? | ☐ Yes ☑ No | |
| Was the offender allowed to submit documentary evidence at the hearing? | ☑ Yes ☐ No | |
| If so, did the evidence refute the charge? | ☐ Yes ☑ No | |
| Were witness statements, lab reports (drug related cases), medical records if appropriate, presented as evidence? | ☐ Yes ☑ No | |
| Did either staff or offender testimonies refute the charge? | ☑ Yes ☐ No | |
| Does a preponderance of the evidence presented justify the finding of guilt or innocence, and any disciplinary sanctions imposed? | ☑ Yes ☐ No | |
| Was the punishment consistent with the guidelines established in the Disciplinary Rules and Procedure? | ☑ Yes ☐ No | |

Notes: No errors noted

Completed By:    Signature: _O. Garcia_    Date: 07/01/15
     Printed Name: _O. Garcia_    Title: Inv. II

TDCJ DISCIPLINARY REPORT AND HEARING RECORD
CASE: 20150271194 TDCJNO:01689849 NAME: STRONG,TABARI SHARRIEFF  REA: 1.0
UNIT:ML  HSNG: 11AH  12  JOB: PRE-HEARING DETENTION  IQ: 108
CLSS: L3  CUST: G3  PRIMARY LANGUAGE: ENGLISH  MHMR RESTRICTIONS: NONE
GRDE: MA / MA  OFF.DATE: 05/20/15  12:15 PM  LOCATION: ML MISCELLANEOUS
TYPE: ID

### OFFENSE DESCRIPTION
ON THE DATE AND TIME LISTED ABOVE, AND AT ML B TURN OUT, OFFENDER: STRONG,
TABARI SHARRIEFF, TDCJ-ID NO. 01689849, DID ENGAGE IN A FIGHT WITHOUT A WEAPON
WITH OFFENDER ▮▮▮▮▮ TDCJ # ▮▮▮ BY STRIKING OFFENDER IN THE FACE
WITH A CLOSED FIST. MOREOVER THE FIGHT DID NOT RESULT IN ANY INJURIES.

MAY 26 2015

CHARGING OFFICER: GARCIA, C LT  SHIFT/CARD: 1 A
TIME/DATE NOTIFIED: 102▮  5/20  OFFENDER NOTIFICATION (IF APPLICABLE INTERPRETER)
BY: (PRINT)
YOU WILL APPEAR BEFORE HEARING OFFICER 24 HOURS OR MORE AFTER RECEIPT OF THIS
NOTICE. DO YOU WANT TO ATTEND THE HEARING? YES NO IF NO, HOW DO YOU
PLEAD? GUILTY  NOT GUILTY
OFFENDER NOTIFICATION SIGNATURE:  DATE: 5-26-15
BY SIGNING BELOW, YOU GIVE UP YOUR RIGHT TO 24 HOUR NOTICE AND AUTHORIZE THE
HEARING OFFICER TO PROCEED WITH THE HEARING.
OFFENDER WAIVER SIGNATURE:  DATE:

### HEARING INFORMATION
HEARING DATE: 6/2/15 TIME: 1345 pm UNIT ML FOLDER 6(A) FILE 56 DSFILE 24 521B
COUNSEL SUBSTITUTE AT HEARING:  Cano  FOLDER  FILE  DSFILE
EXPLAIN BELOW BY NUMBER: (1)IF COUNSEL SUBSTITUTE WAS NOT PRESENT DURING PART
HEARING,(2)IF ACCUSED OFFENDER WAS CONFINED IN PRE-HEARING DETENTION MORE THAN
72 HOURS PRIOR TO HEARING, (3) IF ACCUSED WAS EXCLUDED FROM ANY PART OF THE
EVIDENCE STAGE, (4) IF ANY WITNESSES OR (5) DOCUMENTATION WAS EXCLUDED FROM
HEARING (6) IF OFFENDER WAS DENIED CONFRONTATION AND/OR CROSS-EXAMINATION OF A
WITNESS AT THE HEARING (7)IF THE HEARING WAS NOT HELD WITHIN SEVEN DAYS, EXCLUDING
WEEK ENDS AND HOLIDAYS, FROM THE OFFENSE DATE AND, (8) IF INTERPRETER USED:
(SIGNATURE) ___ Eyewitness hard for C = OROSMA investiga
Day sgt Fernandez due to medicine and not present is objected
OFFENDER STATEMENT: I was defending my self

OFFENSE CODES:
OFFENDER PLEA: (G, (NG) NONE) | No |  |  |  |  |
FINDINGS: (G) NG, DS) | G |  |  |  |  |
REDUCED TO MINOR(PRIOR TO DOCKET) __ (DOCKET) __ (HEARING) __ BY:(INITIAL) ___
IF GUILTY, EVIDENCE PRESENTED, CONSIDERED, AND REASON(S) FOR DETERMINATION OF
GUILT: A)ADMISSION OF GUILT, B)OFFICER'S REPORT, C)WITNESS TESTIMONY, D)OTHER.
EXPLAIN IN DETAIL: Officers report, Officers statement, No camera videos or doc

### PUNISHMENT
LOSS OF PRIV(DAYS) ___  REPRIMAND........... ___  SOLITARY(DAYS)....... 13
*RECREATION(DAYS) 45  EXTRA DUTY(HOURS)...... ___  REMAIN LINE 3........ remain
*COMMISSARY(DAYS) 45  CONT.VISIT SUSP.THRU 7/2/15  REDUC.CLASS FROM __ TO __
*PROPERTY(DAYS).. ___  CELL RESTR(DAYS)....... ___  GOOD TIME LOST(DAYS). 90 days
* OTS(DAYS).. 45  SPECIAL CELL RESTR(DAYS). ___  DAMAGES/FORFEIT.$ ___
SPECIFIC FACTUAL REASON(S) FOR PARTICULAR PUNISHMENT IMPOSED: ___
To promote positive change in offender behavior

CREDIT FOR PRE-HEARING DETENTION TIME? YES(DAYS) 4 6 8 NO / NA
DATE PLACED IN PRE-HEARING DETENTION: 5/20/15 HEARING LENGTH No 10.5 (MINUTES)
OFFENDER SIGNATURE FOR RECEIPT OF FINAL REPORT:
(print) Saxton Capt  Yun AW
HEARING OFFICER (PRINT)  WARDEN  REVIEWER SIGNATURE
(FORM I-47MA)CONTACT COUNSEL SUBSTITUTE IF YOU DO NOT UNDERSTAND THIS FORM.
(REV. 04-10) COMUNIQUESE CON SU CONSEJERO SUSTITUTO SI NO ENTIENDE ESTA FORMA

STRONG MSJ APP. 74

2015027119¢

**Informal Resolution App?**
Accusing Officer  Y N
Supervisor  Y N

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**

**OFFENSE REPORT**

MAY 2 2 2015

Case No.
Interpreter Required?  Y N
MHMR Rest?  Y N
PHD  Y N

(1) TDCJ- No: 1689849  (2) Offender: Strong, Tabari  (3) Unit: ML
(Last Name, First)

(4) Housing Assign: 11PHD12  (5) Job Assignment: 1/8 Med Sq 01

(6) Offense Level, Code Title: Lvel 2 21.0 fighting an offender without a weapon non serious minor

OFFENSE DESCRIPTION: On 5/20/15 at 12:15 AM PM and at B turn out
(7) date  (8) time  (9) Enter Specific Location

Offender Strong, Tabari  TDCJ No. 1689849
did engage in a fight without a weapon with
Offender [redacted] tdcj# [redacted] by striking
Offender in the face with a closed fist. Moreover
the fight did not result in any injuries.

(10) Additional Information:
On the Offender os date and time listed above Offender
Strong, Tabari tdc# 1689849 engaged in a fight with
Offender [redacted] tdcj# [redacted] by striking
Offender repeatedly in the face with a closed fist.
Offender identified by tdcj State issued i.d. card & by
sight.

(Continue on an additional sheet if necessary)

(11) Witnesses: NONE

(12) Accusing Officer/Employee:  Printed Name/Rank Lt. Garcia

(13) Signature: [signature]  (14) Shift/Card 18GP  (15) Date 5/20/15  (16) Time 1759

(17) Approving Supervisor's Printed Name: Kinkler  (18) Date 5/2/15

(19) Grading Official (Print) M. Ashabel  (20) Rank Major  (21) Date 5/22/15

(22) Grade: (Circle One) IR  UP  MI  MA  (23) Justification to override Informal Resolution: _____

I-210 (Rev. 04/12)

STRONG MSJ APP. 75

07/22/2015  12:32   3613589295                    MCCONNELL UNIT                          PAGE  02/07

## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## PRELIMINARY INVESTIGATION REPORT

This report is to be completed on each Offense Report for review by the grading official. The purpose of this report is to obtain any other pertinent information about the incident prior to grading the Offense Report. The Preliminary Investigation should not be completed by the charging officer or a person involved in the incident.

Offender: _Strong, Tabari_                                 TDCJ No. _1689849_

Date & Time Investigation started: _52t5/1619_

1.   **ELEMENTS OF CHARGE.**   Does the offense description support the elements of each charge (the things that had to be done in order to commit an offense). If "no," have charging officer add needed information.

    Offense Code _24_ : Yes [X] No [ ]  ·  Offense Code _____ : Yes [ ]  No [ ]
    Offense Code _____ : Yes [ ] No [ ]  ·  Offense Code _____ : Yes [ ]  No [ ]

2.   **ADDITIONAL INFORMATION.**   Has the charging officer included supporting information or evidence to supplement the standardized pleading such as items listed below? (Write "Yes", "No", or "NA" [not applicable] by each item).

    _NO_ a.     listing other witnesses to the incident,
    _NO_ b.     documentary evidence, e.g., photographs of contraband, etc.
    _YES_ c.    additional information about the offense.

3.   **ACCUSED OFFENDER STATES THAT:**  (Printed and signed interpreter's name if applicable):
_You saw what he did to me?"_

4.   **ACCUSING OFFICER** states that _Offender did assault another offender without a weapon_

5.   **WITNESS STATEMENTS** (List employee or offender name and attach statements to report)
_NONE_

6.   **DOCUMENTATION.**   Documents reviewed (lay-ins, appointments, medical records, etc)
    [ ] lay-ins, [ ] Roster, [ ] Medical Records, [ ] Picture, [ ] Other  (List & attach to report)
_NONE_

_K. Zamora_                          _Sgt_                          _52t5/1620_
Name of Investigating Officer (Print)        Rank            Date & Time Investigation Completed

7.  **INFORMAL RESOLUTION** was not appropriate or not possible because:
_Due to the nature of the offense._

_Gonzale_          _[signature]_          _Lt_          _5/4/15_
Approving Supervisor's Printed Name              Rank                  Date

Back side of I-210 (Rev. 4/12)

STRONG MSJ APP. 76

07/22/2015 12:32 3613589295     MCCONNELL UNIT     PAGE 05/07

CSDSP040                T.D.C.J.              2015/05/26

ML - ML11     SERVIC INVESTIGATION WORK SHEET       08:21:10

CASE#: 20150271194, TDCJ # 01689849, NAME: STRONG, TABARI SHARRIEFF ,

CURRENT UNIT: ML,   HOUSING: 11AH   12   CLASS: L3,   CUSTODY: G3,   TYPE: ,

OFFENSE DATE: 052015, TIME: 12 : 15 PM, LOCATION: ML MIS MISCELLANEOUS ,

CHARGING OFFICER: GARCIA, C LT              SHIFT/CARD: 1/A,

OFFENSE CODES: A) 21 . 0,    B)   . ,   C)   . ,   D) . ,

DESCRIPTORS:    A) FT ,    B)     ,   C)     ,   D)    ,

PLEA:          A)   NS ,    B)      ,   C) _____ ,   D) _____

CLERK RCVD: 052615, SERVICE LAPSE DATE: 061915 ,     SERVICE DATE: 5-26-15

CS ASSIGNED: DDBJ 2015                 SERVICE TIME: 1102 10am

COUNSEL SUBSTITUTE HAS BEEN APPOINTED BECAUSE:

(A) ACCUSED IN ANY FORM OF         E. ACCUSED HAS REQUESTED COUNSEL
      SEGREGATION                   SUBSTITUTE

(B) EA BELOW 5.0, IQ BELOW 73      F. ACCUSED HAS REQUESTED WITNESS WHO

C. LITERACY IS QUESTIONABLE         CAN NOT ATTEND THE HEARING

D. ACCUSED HAS DIFFICULTY UNDER-    (G.) COMPLEXITY OF CASE WARRANTS COUNSEL
      STANDING ENGLISH                   SUBSTITUTE

A. OFFICER'S REPORT CLEARLY DESCRIBES THE INCIDENT IN QUESTION:   YES ✓ NO___

B. CHARGES LISTED WERE REVIEWED WITH REFERENCE TO TDCJ DISCIPLINARY
                              RULES AND PROCEDURES:   YES ✓ NO___

C. OFFENSE DESCRIPTION IN REPORT SUBSTANTIATES EACH OF THE
                      ALLEGED OFFENSES WERE VIOLATED:   YES ✓ NO___

IF NO, EXPLAIN: _____

1. THE ACCUSED WAS INFORMED OF THE FOLLOWING RIGHTS:        YES   NO

A. TO CALL AND QUESTION WITNESSES:                   ✓

B. TO PRESENT DOCUMENTARY EVIDENCE:                 ✓

C. TO BE REPRESENTED BY COUNSEL SUBSTITUTE          ✓

D. TO CALL AND QUESTION THE CHARGING OFFICER AT THE HEARING   ✓

E. THE ACCUSED STATES HE/SHE UNDERSTANDS REPORT, CHARGES AND RIGHTS   ✓

F. THE ACCUSED STATES HE/SHE WISHES TO ATTEND HIS/HER HEARING    ✓

2. THE ACCUSED REASONS AND/OR DEFENSE:

_Sgt Servadu / basically told him_

_to come out and talk to the   they_

_had conversation. Sgt told him Move_

A. REQUESTED WITNESSES: _None_

B. REQUESTED DOCUMENTARY EVIDENCE: _Print Tape & Video is stupid_

                          ████████   I do B #   ████████

CS-10.11A                        REVISED 10/02

STRONG MSJ APP. 77

07/22/2015   12:32   3613589295              MCCONNELL UNIT                    PAGE  06/07

CSD8P040                          T.D.C.J.                      2015/05/26
ML - ML11            SERVICE INVESTIGATION WORK SHEET            08:21:10

CASE#: 20150271194,   TDCJ # 01689849,   NAME: STRONG,TABARI SHARRIEFF

3. THE ACCUSED REASONS AND/OR DEFENSES HAVE BEEN LOGICALLY AND
   SYSTEMATICALLY INVESTIGATED AS FOLLOWS:
   A. 5-26-15 REVIEWED CASE
   B. 5-26-15 INTERVIEWED ACCUSED
   C. NAME OF INTERPRETER USED: None

   d. Viewed video 10-1-15 at 230pm.

   6-1-15, CONCLUDE INVESTIGATION IDD   Was Classd in Person 9:00am

4. ON 5-27-15 THE ACCUSED OFFENDER PRESENTED NON-FRIVOLOUS EVIDENCE,
   THE CHARGING OFFICER/STAFF WITNESS WAS PRESENTED WITH A SUMMARY OF
   THE ACCUSED STATEMENT. ADDITIONAL STATEMENT IS AS FOLLOWS:
   Iwas feeding B-Side Wing. It started a Commotion
   and I told him I'm hurt and I said I had
   Other officer reindes. Lt was there around an annoed they
   were fighting. Lt say be to otsman. Officer said they
   other Both were fighting partily four Gardered
   him to stop and Let it and they ops up. Gardered
   to Back up and do he complied

5. LIST THE PORTIONS OF THE INVESTIGATION THAT APPEAR TO SUPPORT THE CHARGES
   MADE AGAINST THE ACCUSED:

   AO Report and Statement and Time lapse video

6. LIST THE PORTIONS OF THE INVESTIGATION THAT APPEAR TO SUPPORT THE
   ACCUSED REASONS, AND/OR DEFENSES:

   A Statement and A Further Statement #1420037

COUNSEL SUBSTITUTE PRINTED NAME: B Wyatt D.   TITLE: CO
COUNSEL SUBSTITUTE SIGNATURE: B Wyatt D        DATE: 6-1-15
CS-10.11B                                      REVISED 08/2005

07/22/2015  12:32    3613589295              MCCONNELL UNIT                    PAGE  03/07

**Texas Department of Criminal Justice**

## Inter-Office Communications

To ___DHO_____     Date ___6-1-15_____

From ___D Bryant, CSI_____     Subject ___Strong, T. #1489846___
                                              20150271194

Viewed Video on Behalf a offender Strong on
6-1-15. Δ and offender ▓▓▓▓▓▓▓ are Coming
back from Chow (8 chowhall) they come
down Sidewalk toward B-turnout as they
approach metal gate at Supply ▓▓▓▓▓▓▓▓
who is in front of Δ turns and both
square off, Δ Kicks at ▓▓▓▓▓▓ (Can't tell
if he makes Contact or not) at that time
Both officers start fighting, Stricking each
other in head and body area with Closed
fists they fall to ground, Δ on Bottom
and they Continue to fight on the ground
until and officer comes from around
Corner and the offenders get up and
Stop fight. Both offenders were equal
participants in fight. -

Time taken 15 minutes).

                    D Bryant CSI

-SO-4

STRONG MSJ APP. 79

07/22/2015  12:32  3613589295  MCCONNELL UNIT  PAGE 07/07

CSDGP040  T. D. C. J.  2015/05/26
ML - ML 11  HEARING WORK SHEET  08:21:10

CASE#: 20150271194, TDCJ # 01689849, NAME: STRONG,TABARI SHARRIEFF
CURRENT UNIT: ML, HOUSING: 11AH 12 , CLASS: L3, CUSTODY: G3, TYPE: ;
OFFENSE DATE: 052015, TIME: 12 : 15 PM, LOCATION: ML MIS MISCELLANEOUS ,
CHARGING OFFICER: GARCIA, C LT  SHIFT/CARD: 1/A;
OFFENSE CODES: A) 21 , B) , C) , D) ;
DESCRIPTORS: A) FT NO , B) / , C) / , D) /
PLEA: A) , B) / , C) / , D) /
FINDING: A) None , B) / , C) / , D) /
DHO: Wixon , CS:  SERVICE DATE 5-20-15
HEARING DATE/TIME 05/26 / 1:00PM  RECEIVE 24 HRS YES NO ✓, SERVICE TIME: 1152 AM

A. ACCUSED OFFENDER'S STATEMENT AT HEARING: Basically I was defending
myself.

B. CHARGING OFFICER'S STATEMENT: I'll speaking Garcia, C. Lt
_____ (illegible handwriting)

C. CROSS EXAMINATION/QUESTIONS: (illegible handwriting)

D. HEARING NOTES: No damage done no DHO at A given
opportunity to discuss case prior to hearing

WITNESSES: (illegible) at hearing out Fernandez (denied )
DOCUMENTARY EVIDENCE: (illegible)
E. OBJECTIONS? YES X NO IF YES, EXPLAIN: Denial of wit Fernandez
(illegible)

F. SUMMATION/MITIGATION: (illegible) no Code L3 but 180 days.
credit for time served in phd if applicable
(illegible)
OFFENDER STRONG, TABARI SH WOULD YOU LIKE TO SAY ANYTHING ELSE? YES ___ , NO X ,

CS CHECK LIST:  YES NO N/A  YES NO N/A
OFFENDER PRESENT  ✓  NON-FRIVOLOUS EVIDENCE  ✓
CS-14  ✓  CROSS EXAMINATIONS  ✓
INTERPRETER USED  ✓  CREDIT (PHD)  ✓  13days
  MODIFICATION  oschange  ✓
INTERPRETER'S NAME ____ N/a  APPEALABLE  ✓
SANCTIONS ASSESSED:  DRUG TEST DISCLAIMER READ  ✓
LOSS OF PRIV. US, REPRIMAND  SOLITARY  X
RECREATION US, EXTRA DUTY  REMAIN L 3  X
COMMISSARY US, CONT. VISIT THRU 07/24/15  REDUC CLASS FROM ___ TO ___
PROPERTY  CELL REST  GOOD TIME LOSS 90
OTS US, SPECIAL CELL  DAMAGES $
CS-12  REVISED 05/2014

STRONG MSJ APP. 80

07/22/2015 12:32 3613589295 MCCONNELL UNIT PAGE 04/07

## Texas Department of Criminal Justice
## INSTITUTIONAL DIVISION

## Inter – Office Communications

To: DISCIPLINARY HEARING OFFICER     Date: 5 dc - 5-22-15

From: Bryant D    CS1    Subject: WITNESS STATEMENT

RE: Strong T. #1698 44

TIME: 836 am     CASE#: 2015057194

OFFICER: ███████    RANK:    SHIFT/CARD ASSGN:

INMATE/OFFENDER: ███████    TDCJ# ████ HOUSING ASSIGN:

**STATEMENT OF FACTS BY WITNESS:**

Strong was just coming from Chow I was talking with ███████ waiting to go do ███████ Nav up on Strons and ask him "what up Nav", Strong Back'd up ████████ Started swing in a him Strons never threw a punch.

X ████████████████████████

```
CSD 028/CDSP04          TEXAS DEPARTMENT OF CRIMINAL JUSTICE         2015-05-26
DBR9379 /ML11              OFFENDER DISCIPLINARY SYSTEM                07.28.10
                          OFFENDER CASE GRADING REPORT
TDCJ: 01689849 NME: STRONG,TABARI SHARRIEFF      UNIT: ML GOODTME: 0000 03 15
CLASS: L3  DSP CUST: G3 TYPE: ID PRJ REL DTE: 5555-01-01  WORKTIME: 0000 09 24
RESTRICTIONS: COMMISSARY: 06/05/15  RECREATION: 07/22/15


*********************************************************************
REPORT REFLECTS OFFENDER AND CASE INFORMATION AS OF:  2015-05-26    07.28.10
*********************************************************************

CONVICTIONS FOR LAST 180 DAYS
OFF    HEAR  CASE       CODE DESCRIPTOR LV GRD REP/SOL/CLAS/TIME/XD/CR/PR/CV

042615 050115 20150241953 27.0 UP        2 MI G                         015
041115 041915 20150230185 27.0 UP        2 MI G                         010
041315 050715 20150230180 24.0           2 MR G                         030
                          27.0 UP
022315 030415 20150181498 42.0           3 MI G  X
022115 030415 20150181479 30.1           2 MA G       R-L3  00030       045
011815 012115 20150142368 24.0           2 MI G                         030
                          27.0 UP
011915 012215 20150142329 24.1           3 MA G       R-L3  00015       030
010515 011415 20150131755 23.0           2 MI G                         030
                          24.0

END OF CONVICTIONS FOR LAST 180 DAYS


*********************************************************************

PENDING CASES FOR LAST 180 DAYS

OFF         CASE       CODE DESCRIPTOR LV GRADE   NOTES

011815      20150142353 24.0            2 UP UNPROSECUTED
                        27.0 UP         2
021315      20150172808 24.1            3 IR INFORMALLY RESOLVED
051015      20150258604 24.0            2 UP UNPROSECUTED
                        27.0 UP         2
052015      20150271194 21.0 FT         2    COMPUTER RECOMMENDED GRADE: MA

END OF PENDING CASES
```

STRONG MSJ APP. 82

STRONG MSJ APP. 83

**Texas Department of Criminal Justice**
## INSTITUTIONAL DIVISION

### INTER-OFFICE COMMUNICATIONS

TO _All Concerned_                          DATE _5/29/15_
**WILLIAM G. MCCONNELL UNIT**

FROM _N. SAENZ CSIII_                          **TIME EXTENSION**
**DISCIPLINARY DEPARTMENT**

The Disciplinary Hearing Officer is requesting a time extension on the
Following disciplinary case, for a period of _10_ days:

OFFENDER NAME: _Strong, T._

TDCJ-ID NO: _1689849_

OFFENSE NO: _21.0_

CASE NO: _20150271194_

____ Reason for the extension:

____ To complete the investigation

____ Unavailability of Counsel Substitute

____ Unavailability of Disciplinary Captain

____ Accused offender is transferred

_✓_ Unavailability of Witness/Charging Officer

____ Other (specify)

_✓_ Approved

____ Disapproved

_C. _____ 5-29-15_

**WARDEN'S SIGNATURE**

STRONG MSJ APP. 84

**Kelly Marmon**

| | |
|---|---|
| **From:** | Kelly Marmon |
| **Sent:** | Wednesday, July 22, 2015 2:12 PM |
| **To:** | Robert Kane |
| **Subject:** | medical records |

Bob,

I need to know if you have any medical records for the following offender from 5/20/15 - 5/30-15.  If so could you please send me a copy.

Offender: Strong, Tabari
TDCJ# 1689849
Unit: ML

Thank you for your help.
Kelly Marmon / CGO
936-437-4895
936-437-4876 (fax)

1

STRONG MSJ APP. 85

**Correctional Managed Care**
**NURSING PROTOCOL FOR**
**MUSCULOSKELETAL SYMPTOMS**

Patient Name: STRONG, TABARI S   TDCJ#: 1689849   Date: 05/21/2015 06:03   Facility: MCCONNELL (ML)

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| SCR INITIATED? | x | YES | Date Received: 5/20/2015 |
|---|---|---|---|
| | | NO | |

NP – MUSCULOSKELETAL SYMPTOMS
**SUBJECTIVE DATA:**
    Chief Complaint(s): Was in  a fight yesterday (5/20/2015) around noon at B- turnout.  I thought it was nothing at first and after they took me to 11 building my left shoulder popped and now I can't lift it or even move it._____

    Significant Medical History (Describe):__ No chronic care._____

Quantitative Pain Scale:   Place an "X" below

| 0 | 1 | 2 | 3 | x | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Qualitative Description of Pain**

| Location: left shoulder. | Onset: 05/20/2015 |
|---|---|
| Duration: about 18 hours now. | |
| Aggravating Factors: movement. | |
| Alleviating Factors: unknown | |

| Pain Character: | | Dull | | Sharp | x | Throbbing | Other: |
|---|---|---|---|---|---|---|---|
| Frequency: | x | Constant | | Intermittent | | Other: | |
| Radiating: | x | No | | Yes | | Location: | |

History of: fight 5/20/2015 around noon.

| x | Recent  Trauma | | Surgery | | Strenuous Activity |
|---|---|---|---|---|---|

History of Similar Problem?

| x | No |
|---|---|
| | Yes, How treated?: |

History of arthritis:

| x | No |
|---|---|
| | Yes |

**OBJECTIVE DATA:**
    Joints:

HSN-17 (9-14)
3 of 7

STRONG MSJ APP. 86

**Correctional Managed Care**
**NURSING PROTOCOL FOR**
**MUSCULOSKELETAL SYMPTOMS**

**Patient Name:** STRONG, TABARI S   **TDCJ#:** 1689849   **Date:** 05/21/2015 06:03   **Facility:** MCCONNELL (ML)

| x | Normal | | Stiffness | | Redness | | Heat | | Swelling |
|---|--------|---|-----------|---|---------|---|------|---|----------|

Affected Area Range of Motion:

Right Upper Extremity

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Left Upper Extremity

| | Full | x | Limited | | Absent |
|---|------|---|---------|---|--------|

Right Lower Extremity

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Left Lower Extremity

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Neck:

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Back:

Able to bend forward

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Able to bend backward

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Left Lateral Flexion

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Right Lateral Flexion

| x | Full | | Limited | | Absent |
|---|------|---|---------|---|--------|

Movement:

| | Normal | x | Guarded |
|---|--------|---|---------|

Gait:

| x | Normal | | Limp | | Guarded |
|---|--------|---|------|---|---------|

Posture:

| | Normal | x | Erect | | Tilts Right | | Tilts Left |
|---|--------|---|-------|---|-------------|---|------------|
| | Sits Easily | | | Sits with Difficulty | | Guarded | |

Peripheral pulses:

Present

| | RUE | x | LUE | x | RLE | x | LLE |
|---|-----|---|-----|---|-----|---|-----|

Absent

| | RUE | | LUE | | RLE | | LLE |
|---|-----|---|-----|---|-----|---|-----|

STRONG MSJ APP. 87

**Correctional Managed Care**
**NURSING PROTOCOL FOR**
**MUSCULOSKELETAL SYMPTOMS**

**Patient Name:** STRONG, TABARI S  **TDCJ#:** 1689849  **Date:** 05/21/2015 06:03  **Facility:** MCCONNELL (ML)

Peripheral edema:

Present

|   | RUE |   | LUE |   | RLE |   | LLE |
|---|-----|---|-----|---|-----|---|-----|
|   |     |   |     |   |     |   |     |

Absent

|   | RUE |   | LUE |   | RLE |   | LLE |
|---|-----|---|-----|---|-----|---|-----|
| x | RUE | x | LUE | x | RLE | x | LLE |

Pain is present in the lower back and/or flank area.

|   | Yes – Perform a urine dipstick and notify provider of abnormal findings |
|---|---|
| x | No – skip to next section |

| Dipstick Urine Results: |   |
|---|---|
| Color |   |
| Glucose |   |
| Bilirubin |   |
| Ketone |   |
| Specific Gravity |   |
| Blood |   |
| Ph |   |
| Protein |   |
| Urobilinogen |   |
| Nitrites |   |
| Leukocytes |   |

Comments: Patient limited movement to left shoulder. _____

**NURSING ACTION:** If protocol completed by LVN, consultation completed with:
(enter name)

| RN: J. Chapa, RN |   | Provider: |
|---|---|---|

**TREATMENT PLAN:**

Recheck V/S if they fall outside the above stated parameters and report to provider. _____**N/A**

| TIME | TEMP | PULSE | RESP | B/P | OTHER (O2 Sat, Cardiac Monitor, Glucose, etc.) |
|------|------|-------|------|-----|------------------------------------------------|
|      |      |       |      |     |                                                |
|      |      |       |      |     |                                                |

V.O. order:

Date:_____    Time:_____

HSN-17 (9-14)
5 of 7

STRONG MSJ APP. 88

**Correctional Managed Care**
**NURSING PROTOCOL FOR**
**MUSCULOSKELETAL SYMPTOMS**

**Patient Name:** STRONG, TABARI S  **TDCJ#:** 1689849  **Date:** 05/21/2015 06:03  **Facility:** MCCONNELL (ML)
V.O. order read back to provider to verify accuracy.

| Yes | | No | | N/A |
|-----|--|----|--|-----|

Medication Administration

| Time | Medication/Solution | Dose/Rate | Site Route | Gauge | Amount Infused |
|------|---------------------|-----------|------------|-------|----------------|
|      |                     |           |            |       |                |
|      |                     |           |            |       |                |
|      |                     |           |            |       |                |

| | If injury occurred within the past 24hrs, apply cold pack to affected area |
|--|-----------------------------------------------------------------------------|
| | Instruct patient that moist heat (warm water) used during shower can reduce discomfort. |

| | Acetaminophen 325 mg – take 2 tablets by mouth tid for 3 days. KOP |
|--|-------------------------------------------------------------------|
| | **Teaching:** High dosage or chronic use can cause liver disease. Avoid caffeine. Push fluids. |

**For joint pain:** Sling was applied to left shoulder and arm secured to waist with ace wrap for stabilization.

| | No ace wraps. |
|--|----------------|
| | Crutches (if indicated) for 3 days. |
| | Cell Pass (if indicated) for up to 72 hours and schedule for provider appointment. |

**PATIENT EDUCATION:**

Patient's Learning Preferences

| x | Verbal | | Visual | | Other |
|---|--------|--|--------|--|-------|
| Comment: | | | | | |

Ability to Learn:

| | Impaired | x | Non-impaired · |
|--|----------|---|----------------|
| Comment: | | | |

Readiness to Learn:

| x | Cooperative | | Uncooperative |
|---|-------------|--|---------------|

- Elevate extremity above heart as much as possible.
- Limit physical activity or sports.

**Final Disposition**

Disposition:

HSN-17 (9-14)
6 of 7

STRONG MSJ APP. 89

**Correctional Managed Care**
**NURSING PROTOCOL FOR**
**MUSCULOSKELETAL SYMPTOMS**

**Patient Name:** STRONG, TABARI S   **TDCJ#:** 1689849   **Date:** 05/21/2015 06:03   **Facility:** MCCONNELL (ML)

|   | Release to Security |
|---|---|
| x | Refer to provider for same day appointment |
|   | Other: |
|   | Issue pass to return to clinic for appointment the next day (operational hrs) |
|   | Refer to provider for ATC #9 |
|   | Email sent to appropriate staff for appointment within 10 days of sick call request |
|   | Resubmit sick call request or notify nurse if symptoms not resolved |

Condition on Discharge:

|   | Improved | x | Stable |
|---|---|---|---|

Procedures Ordered:

| Date Time | Description | Diagnosis | Comments | Special Instructions |
|---|---|---|---|---|
| 5/21/2015 06:12AM | #NURSING LEVEL 2 COMPLETE VISIT (F) | np - musculoskeletal symptoms | | |

Electronically Signed by PFANNSTIEL, DONNA S. L.V.N. on 05/21/2015.
Electronically Signed by CHAPA, JOSE A. R.N. on 05/21/2015.
##And No Others##

STRONG MSJ APP. 90

# CORRECTIONAL MANAGED CARE
## CLINIC NOTES

**Patient Name:** STRONG, TABARI S   **TDCJ#:** 1689849   **Date:** 05/21/2015 13:29   **Facility:** MCCONNELL (ML)

**Age:** 40 year   **Race:** B   **Sex:** male

**Most recent vitals from 5/21/2015:** BP: 138 / 92 (Sitting) ; Wt: 208 Lbs.; Height: 70 In.; Pulse: 92 (Sitting) ; Resp: 20 / min; Temp: 99.3 (Oral) BMI: 30

**DOI:** 2/3/2011

*CURRENT PEAK FLOWS:* PF 1: ;  PF 2:  ;  PF 3:
*PRIOR PEAK FLOWS:* PF1 : ; PF 2: ; PF 3:

**Allergies:** FISH PRODUCT DERIVATIVES, PORK/PORCINE PRODUCT DERIVATIVES

| Patient Language: ENGLISH   Name of interpreter, if required: |
|---|

Current Medications:

| **TOLNAFTATE 1% CREAM 15GM** <br> 1 APPLICS TOPICALLY TWICE DAILY <br> for 90 Days KOP | ORDERING FACILITY: MCCONNELL (ML) <br> ORDERING PROVIDER: CORBETT, SUSANNA S | LAST DATE GIVEN KOP: 04/15/2015 06:06:30PM <br> REFILLS: 0 / 0 <br> <br> EXPIRATION DATE: 7/07/2015 03:13:00PM |
|---|---|---|

**Today's Problem:**    In fight in cell.  Hit up against door and hear something pop.
5/21/2015
**S:** Painful.  Got in fight.  Peer contacted the CO and he was upset.

**O:**    Visible protrusion of clavicular head on lateral edge of left shoulder

**A:**    separation of left A-C joint-probably third degree

**Plan is as follows:**
Procedures Ordered:
Will check labs as NSAIDS are ordered.
Procedures Ordered:

| Date Time | Description | Diagnosis | Comments | Special Instructions |
|---|---|---|---|---|
| 5/21/2015 01:36PM | *COMP METABOLIC PANEL (CMP) PSYLABPHEPSZDBHVCNBFAHEPES LDHPESLDCKD LEV2ELCR | shoulder pain | | |
| 5/21/2015 01:36PM | *THYROID STIMULATING HORMONE [TSH]CNBFPSYLDMCDBPDBLELEV2T HPRHA | shoulder pain | | |
| 5/21/2015 01:36PM | *URINALYSIS W/DIP MICRO EXAM ON POS [UA CHEM] HVCNDBBPBFPSYLESLDCKDELCRH EMUR | shoulder pain | | |
| 5/21/2015 01:36PM | LIPID PANEL CNDBBFHVPSYLDMCDNBPCKD | shoulder pain | | |
| 5/21/2015 01:36PM | PROVIDER4-EMERGENCY OFFICE VISIT (F) | shoulder pain | | |

| Date Time | Description | Diagnosis | Comments | Special Instructions |
|---|---|---|---|---|
| 5/21/2015 01:32PM | *CBC W/DIFF BABYDMCD PSYLBPSZDBHVCNESLDAHEPHPCK | shoulder pain | | |

1 of 2

## CORRECTIONAL MANAGED CARE
## CLINIC NOTES

**Patient Name:** STRONG, TABARI S **TDCJ#:** 1689849 **Date:** 05/21/2015 13:29 **Facility:** MCCONNELL
(ML)
DELCRRHAHEMURLEV2

Started Meds:
IBUPROFEN 800MG TABLET 19252290 05/21/2015 13:31
1 TABS ORAL BID KOP
FINAL EXP. DATE: 8/19/2015 01:31:00PM REFILLS: 2 DURATION: 30 Days

Please continue to wear sling x 4 months.
Will refer to Ortho.

Please give patient zipper front shirt with pass x 4 months.

Electronically Signed by CORBETT, SUSANNA S. PA-C on 05/21/2015.
Electronically Signed by CHAPA, JOSE A. R.N. on 05/21/2015.
##And No Others##

2 of 2

STRONG MSJ APP. 92

Correctional Managed Care
**RADIOLOGY REPORT**

Date Transcribed:  05/21/2015 14:09

Patient Name: STRONG, TABARI S   TDCJ#: 1689849   Date: 05/21/2015 14:09   Age: 40 year   Race: B
Sex: male DOB: ████████
Patient's Facility: MCCONNELL (ML)   Typist Name:  LANE, NINA G.

# Department of Radiology

The University of Texas Medical Branch Hospitals
Galveston, TX 77555
Phone: (409) 747-7000
Fax: (409) 747-2850
PATIENT: Strong, Tabari
DATE OF BIRTH: ████████
DATE OF EXAM: 5/21/2015 1:04:00 PM
PATIENT #: 1689849
EXAM ID #: 7117987
REFERRING PHYSICIAN:
SUSANNA S CORBETT
30014 S. EMILY DR
MCCONNEL UNIT
BEEVILLE, TX 78102
OFFICIAL COPY
SHOULDER, 2 VIEWS-LEFT SIDE
HISTORY: LEFT SHOULDER INJURY 05/20/15 S/P ALTERCATION
COMPARISON: None.
FINDINGS:
Marked elevation of the clavicle is seen with separation of the
acromioclavicular joint. (Grade 3). No acute fracture or dislocation is
seen. The visualized portion of the lungs are clear.
Orthopedic consultation is recommended.
Personally interpreted by:
FERNANDO CESANI, MD /signed by/ FERNANDO CESANI, MD
Department of Radiology
The University of Texas Medical Branch
Last edited on: 5/21/2015 2:03:00 PM
Finalized on: 5/21/2015 2:03:00 PM

Electronically Signed by CORBETT, SUSANNA S. PA-C on 05/21/2015.
##And No Others##

1 of 1

**STRONG MSJ APP. 93**

## CORRECTIONAL MANAGED CARE
### ADDENDUM NOTE

**NAME:** **STRONG, TABARI S**    **TDCJ #:** 1689849    **DATE/TIME:**    05/21/2015 13:38
**FACILITY:** **MCCONNELL (ML)**
Have contacted UR for probable third degree separation of left AC joint.   Xray result should be available tomorrow.
Wet read of xray shows separation of left AC joint.
Spoke with UR.   Ortho Shoulder meets only on Mondays and this coming Monday, 5/25, is Memorial Day.
Have spoken with Lori.   She will contact Ortho Service who meets next 5/28 to see if they are able to see this patient.

     Lori has contacted Ortho and patient will be scheduled to be seen for the 6/1/15 Ortho Shoulder Clinic at HG.

Please be sure to arrange transportation.   Thanks.

Electronically Signed by CORBETT, SUSANNA S. PA-C on 05/21/2015.
Electronically Signed by CHAPA, JOSE A. R.N. on 05/21/2015.
##And No Others##

## CORRECTIONAL MANAGED CARE
## CLINIC NOTES - NURSING

**Patient Name:** STRONG, TABARI S  **TDCJ#:** 1689849  **Date:** 05/21/2015 14:18  **Facility:** MCCONNELL (ML)

**Age:** 40 year  **Race:** B  **Sex:** male

**Most recent vitals from 5/21/2015:** BP: 138 / 92 (Sitting) ; Wt: 208 Lbs.; Height: 70 In.; Pulse: 92 (Sitting) ; Resp: 20 / min; Temp: 99.3 (Oral)  BMI: 30

**DOI:** 2/3/2011

**Allergies:**  FISH PRODUCT DERIVATIVES, PORK/PORCINE PRODUCT DERIVATIVES

| Patient Language:  ENGLISH   Name of Interpreter, if required: |
|---|

**Current Medications:**

| | | |
|---|---|---|
| **IBUPROFEN 800MG TABLET**<br>1 TABS ORAL TWICE DAILY for 30 Days KOP | ORDERING FACILITY: MCCONNELL (ML)<br>ORDERING PROVIDER: CORBETT, SUSANNA S | LAST DATE GIVEN KOP:<br>REFILLS: 0 / 2<br><br>EXPIRATION DATE: 8/19/2015 01:31:00PM |
| **TOLNAFTATE 1% CREAM 15GM**<br>1 APPLICS TOPICALLY TWICE DAILY for 90 Days KOP | ORDERING FACILITY: MCCONNELL (ML)<br>ORDERING PROVIDER: CORBETT, SUSANNA S | LAST DATE GIVEN KOP: 04/15/2015 06:06:30PM<br>REFILLS: 0 / 0<br><br>EXPIRATION DATE: 7/07/2015 03:13:00PM |

| **SCR INITIATED?** | YES | Date Received: |
|---|---|---|
| | NO | |

| | | |
|---|---|---|
| | Vital signs within normal limits | |
| | Provider notified – vital signs outside of normal parameters as follows: | |
| | Blood pressure less than 90/60 or greater than 180/110 | |
| | Pulse less than 50/min or greater than 110/min | |
| | Temperature greater than 101°F (oral) | |
| | Respirations greater than 22/min | |

**Today's Problem:**

S:

O:

**Plan is as follows:  Pt issued pass for front zippered shirt and arm sling x 4 months.**

1 of 2

STRONG MSJ APP. 95

**CORRECTIONAL MANAGED CARE**
**CLINIC NOTES - NURSING**

**Patient Name:** STRONG, TABARI S **TDCJ#:** 1689849 **Date:** 05/21/2015 14:18 **Facility:** MCCONNELL (ML)

Electronically Signed by CHAPA, JOSE A. R.N. on 05/21/2015.
##And No Others##

Procedures Ordered:

| Date Time | Description | Diagnosis | Comments | Special Instructions |
|---|---|---|---|---|
| 5/21/2015 02:19PM | #NURSING LEVEL 1 COMPLETE VISIT (F) | np - musculoskeletal symptoms | | |

2 of 2

STRONG MSJ APP. 96

MCCONNELL (ML)

Patient Name: STRONG, TABARI S
MRN: 1689849

====================================================================
SPECIALTY CLINIC APPT.
Entered On: 05/28/2015 23:32:55
Entered By: SAMUEL, GEORGY A. R.N.

pt signed refusal for HG OShoulder appointment because "Do not want to get go through DA unit."  pt instructed
regarding adverse reactions due to refusal of chain refusal.  pt signed refusal.

STRONG MSJ APP. 97

```
(B) tdc01b65 - PASSPORT                    Wednesday, August 05, 2015, 10:32:15 AM

CSGRV008          TEXAS DEPARTMENT OF CRIMINAL JUSTICE          2015/08/05
MK00074 /1B65     OFFENDER GRIEVANCE CASE TRACKING SYSTEM       10:32:12
GRV NO.: 2015152233   UPDATE GRIEVANCE RECORD - STEP TWO
  TDCJID: 01689849   SID: 08481639   NAME: STRONG,TABARI SHARRIEFF
  DOB: ███████████   RACE: B   CURR TYPE: ID   CURR UOA: ML   REFERRALS:  0
  TYPE: ID  UNIT: ML  CLASS: L3  HSNG: 11AH    CELL:      BED:
  INCDNT: 06 02 2015                    CUSTODY: GP LEVEL 3
  EMRGNCY: N   S2 EMRGNCY CKLIST: __ __ __     EMP REL REFERRAL: __ __ ____
  RECD AT UNIT: 07 06 2015   STEP 2 RECD: 07 20 2015   RESUBMITTED: __ __ ____
PRBLM                                      DATEDUE: 08 05 2015
 400                                  DATEDUE W/EXT: 09 04 2015
 ___                                    STEP 2 EXT: 08 05 2015
 ___                                         INVST: I2245
 ___    SCREENED: _____ ____    RETD S2 #: __ __ __ __    ASGND: 07 20 2015
 ___    REDUNDANT GRV#: _____                  RETD: 07 30 2015
        UOF REPORT#: __            SENTSIGN: 07 30 2015
        DISCP CASE #: 20150271194                RETDSIGN: __ __ ____
COMMENT:   STAFF: N   SUBJECT: CODE 21.0 MA            CLOSED: __ __ ____
  APPEAL.                                        OUTCOME: _
  _____   RESOLUTION: _____

ENTER OPTION: ___   GRV NO.: _____   TDCJID: _____   SID: _____
STEP TWO UPDATE SUCCESSFUL
F1=HLP F2=OPT F3=PREV F4=NEW F5=RESUBMT F6=UPD        -        F11=DEL F12=MENU
```

STRONG MSJ APP. 98

| Step 1 | | Grievance # | Offender Name | TDCJ # | Unit |
|--------|---|-------------|---------------|--------|------|
| Step 2 | X | 2015152233 | Strong, Tabari | 1689849 | ML |

*(Check which box applies (Step 1 or Step 2)*



Texas Department of Criminal Justice
**NOTICE OF EXTENSION**
Offender Grievance Office

In accordance with the procedures outlined in BP-03.77, "Offender Grievances," and AD-03.82, "Management of Offender Grievances,", you are hereby notified that additional time is necessary to complete the investigation of your:

**Step 1 Grievance:** *(check the applicable box)*

☐ An additional 30 days is needed for appropriate response to your disciplinary appeal.

☐ An additional 40 days is needed for appropriate response to your grievance.

**Step 2 Grievance:** *(check the applicable box)*

☒ An additional 30 days is needed for appropriate response to your **disciplinary** appeal.

☐ An additional 35 days is needed for appropriate response to your Step 2 grievance

☐ An additional 35 days is needed for appropriate response to your **medical multiple issue** grievance.

☐ An additional 45 days is needed for appropriate response to your **medical Step 2** grievance.

S. Gonzalez, Adm. Asst. IV.
Name and Title

August 5, 2015
Date

**Original – Send to the Offender**
Copy – Attach to the Grievance

Appendix M

STRONG MSJ APP. 99

## GRIEVANCE INVESTIGATION WORKSHEET

Restricted & Confidential

| | STEP 1 | |
|---|---|---|
| **GRIEVANCE OFFICE USE ONLY** | STEP 2 | XX |

| Unit: CGO | INV ID: I2245 | GR #: 2015152233 | Date Initiated: 07/30/15 | Date Completed: 07/30/2015 |
|---|---|---|---|---|
| Offender Name: Strong, Tabari | | TDCJ No: 1689849 | Housing: | |

| Issue Code: 400 | EMERGENCY<br>YES ☐<br>NO ☒ | ADA<br>**Disciplinary** ☒<br>Medical ☐ | Property ☐<br>Religion ☐<br>OPI Investigation ☐ | Use of Force (UOF) ☐<br>Harassment or Retaliation* ☐<br>PREA ☐ |
|---|---|---|---|---|

*Harassment or Retaliation of Use of the Grievance Procedure, Access to Courts, or other Legal Activity*

**Summary of Issue:** *(Include date, time and location):*  Disciplinary Case # 20150271194  21.0 – Fighting an Offender

Without a Weapon.  Offender was in a fight with Offender ███████ with a closed fist.

Offender states he was defending himself.  No due process and failure to protect offender Strong.

**Requested Remedy:**  overturn

The following is to be completed and signed by the Investigating Official. Attach statements/supporting documentation, if applicable.

## Summary of Fact Finding Activity:

1.) Reviewed Step 1 & 2.

2.) Verified UCR06 & reviewed case.

3.) Elements of the charge were met.

4.) Punishment was within agency guidelines.

5.) No due process or procedural errors were noted.

6.) Reviewed medical records that I requested from medical

## Suggested Response to Offender:

A review of Disciplinary Case #20150271194 has been completed. There was sufficient evidence presented to sustain the charge and the finding of guilt. Records indicate that the hearing was conducted per policy and there were no due process or procedural errors noted. The punishment was within Agency guidelines for this offense. No further action warranted by this office.

**OUTCOME CODE:** D  **RESOLUTION CODE:** 2.01  *(Grievance Office Use Only)*

Investigating official completes the section below:

| Printed Name: K.Marmon | Signature: *K. Marmon* |
|---|---|
| Title: Adm. Asst. IV | Date: 07/30/2015 |

This grievance being processed in an effort to resolve a problem through the established procedures identified in BP-03.77 and AD-03.82. It is expressly prohibited to subject the grievant, other offenders, or staff to any form of reprisal for the use of these procedures.

OG-01 Rev. 05/2014

| Step 1 | | Grievance # | | | Offender Name | TDCJ # | Unit |
|--------|---|-------------|---|---|---------------|--------|------|
| Step 2 | X | 2015152233 | | | Strong, Tabari | 1689849 | ML |

*(Check which box applies (Step 1 or Step 2)*



Texas Department of Criminal Justice
**NOTICE OF EXTENSION**
Offender Grievance Office

In accordance with the procedures outlined in BP-03.77, "Offender Grievances," and AD-03.82, "Management of Offender Grievances," you are hereby notified that additional time is necessary to complete the investigation of your:

**Step 1 Grievance:** *(check the applicable box)*

☐ An additional 30 days is needed for appropriate response to your disciplinary appeal.

☐ An additional 40 days is needed for appropriate response to your grievance.

**Step 2 Grievance:** *(check the applicable box)*

☒ An additional 30 days is needed for appropriate response to your **disciplinary** appeal.

☐ An additional 35 days is needed for appropriate response to your Step 2 grievance

☐ An additional 35 days is needed for appropriate response to your **medical multiple issue** grievance.

☐ An additional 45 days is needed for appropriate response to your **medical Step 2** grievance.

S. Gonzalez, Adm. Asst. IV.                    August 5, 2015
Name and Title                                        Date

**Original – Send to the Offender**
Copy – Attach to the Grievance

Appendix M

**STRONG MSJ APP. 101**



**Texas Department of Criminal Justice**

# STEP 2

**OFFENDER GRIEVANCE FORM**

| OFFICE USE ONLY | |
| --- | --- |
| Grievance #: | 2015158924 |
| Date Received: | SEP 08 2015 |
| Date Due: | SEP 14 2015  10.13 |
| Grievance Code: | 812 |
| Investigator ID #: | D9 |
| Extension Date: | |
| Date Retd to Offender: | |

Offender Name: Tabari Strong          TDCJ # 1689849

Unit: MI(4)          Housing Assignment: 8 K 64 B

Unit where incident occurred: MI(4) Administration Blue Building

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Warden C Furr          When? Sept. 4th, 2015

What was their response? No evidence to Substantiate Your Claim of Harassment or Policy Violations.

What action was taken? Conspiracy to Collaborate in Criminal Acts 42 U.S.C 1985(3) and 1986

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

Inmate Grievance System § 501.008 (Tx Penal Code) & 42 U.S.C Section 1997e. According to these Rules TDCJ was to provide offender Some written reports that stated an true investigation was Conducted by the Department as well as, TDCJ McConnell Unit Grievance Coordinator was to investigate or Call All witnesses that offender Named in said compliant which was not Done. Offender's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and offender ▓▓▓▓▓▓▓▓▓▓ was NEVER called for Questioning on Said Compliant as well as, offender Strong #1689849 was never called to Give an accurate account on what took Place during said time. This is Conspiracy according to 42 U.S.C. 1995(3) and 1986 of which clearly states " one that interfers with an investigation on Criminal Acts as well as refuse to report All FACTS" has committed and Collaborated in a Criminal act or Conspiracy. offender Strong request that his disciplinary records be reviewed which will Show in the months from April 2015 up until this present Date Sept 7th 2015 that officer Karona, Sgt Villireal were in at the least three and most 5 reports. Also offender Request that all Grievances of this Past year of 2015 be reviewed to Show Multiple Compliants were filed on this officer as well as I-60's were sent in to Capts, Wardens and Majors about said harassment. Sgt Villareal is the same Sgt who illegally Confined offender Strong in 11 building June 8th 2015 (on or about) as well Forged disciplinaries and Destroyed offender's Property (over $41.00) refer to Grievances filed in the month of June! Officer Karona is the same offficer who operated or Breach Duties and had stabed offender Strong in the Dayroom of I-Pod 2 section one morning for Necessities of which offender received a three Part disciplinary for being " out of Place & Creating a disturbance and disobeying a Direct order (refer to Disciplinaries in the month of April 2015). This

---

I-127 Front (Revised 11-2010)          **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**          (OVER)

Not only Probes harassment but Criminal activity which offender Strongly request that no Immunity be Gratly Granted to any and all TDCJ officials who will be Named in Further Legal Action."

Action Requested to resolve your Complaint. All Relief to Be Granted

Offender Signature: _____   Date: 9/7/15

Grievance Response:

An investigation has been conducted into your complaint. You were appropriately advised at Step 1. Please refer to that response. No conclusive evidence of staff misconduct or policy violations could be substantiated.   No further action warranted by this office.

Signature Authority: _____   **K. Ward**   SEP 2 1 2015   Date: _____

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (1-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

Returned because:        *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance #_____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. * *

UGI Printed Name/Signature: _____

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

| OFFICE USE ONLY | |
| --- | --- |
| Initial Submission | UGI Initials:_____ |
| Grievance #: | _____ |
| Screening Criteria Used: | _____ |
| Date Recd from Offender: | _____ |
| Date Returned to Offender: | _____ |
| 2nd Submission | UGI Initials:_____ |
| Grievance #: | _____ |
| Screening Criteria Used: | _____ |
| Date Recd from Offender: | _____ |
| Date Returned to Offender: | _____ |
| 3rd Submission | UGI Initials:_____ |
| Grievance #: | _____ |
| Screening Criteria Used: | _____ |
| Date Recd from Offender: | _____ |
| Date Returned to Offender: | _____ |

Appendix F

STRONG MSJ APP. 103

**Texas Department of C** ........ **tice**

# STEP 1

**OFFENDER GRIEVANCE FORM**

HSO-7
1689441

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2015159424 |
| Date Received: | June 15, 2015 |
| Date Due: | July 15, 2015 |
| Grievance Code: | 874 |
| Investigator ID #: | 960 |
| Extension Date: | 9-3-15 |
| Date Retd to Offender: | SEP 0 4 2015 |

**Offender Name:** Tabari Strong

**Unit:** Mc(4)    **Housing Assignment:** I-B HA#-12

**Unit where incident occurred:** Mc(4) (2) Sec (8k)(64B) 7building

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Officer Dumaru Kat ....... and Sgt Villareal When? May 10th, 2015 12:13 Am

What was their response? Refused to allow me 1 hour of day room and shower by harassment

What action was taken? Violation of AD 03.70, 8th, 14th Amendment of U.S. Constitution.

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

All time Last Video shall be reviewed; All witnesses that was signed Grievance or all idavit shall be called and interviewed; All violation shall be posted on all TDCJ officals I-15 file who are listed here in compliant. This Grievance complies with all TDCJ Compliant Rules Policies and Procedures, See Report in Texas State Auditor Board No 09-004 September 2008; in so doing all interview shall be recorded and a thorough investigation shall be conducted on why Officer Dumaru KARAMA and Sgt. JUSTINVILLA-REAL conspired to harass offender Strong by forging a false Disciplinary action against him. On the date of May 10th, 2015 at or around 12:13 Am officer Karama can be seen coming into I-pod (2) Section where offender Strong is housed and asking him about joining his "Brotherhood" at which when offender declined or rejected after Officer told offender he could no longer be in the day room. Officer Karama then call Sgt Villareal to enhance the harassment. When Sgt. Villareal got there at 1st he didn't overstand because he asked officer what is the problem at 12:10 Am. Sgt asked this twice until officer came down stairs and told Sgt Villareal "I'm not letting him take a shower." Officer and Sgt argued for about a minute on subject then officer gave Sgt a look and Sgt then went along with the Game and told offender that he would be written a disciplinary. According to AD 03.70 an offender that has served over 30 days of restriction (which offender Strong has) is allowed a hour of day room on weekends as well as his shower. Instead of recognizing said AD Sgt. Villareal and Officer Karama chose to collaborate and conspire on offender for reasons of Freedom of Speech. This cruel act of Malicious Prosecution has deprived offender of his 8th and 14th Amend Rights which is to take a shower as well as out of the cell exercise and equal protection from being deprived and slandered through false disciplinaries. When officer Karama came back into I-Pod at rush time (1:00am) He then told offender, I'll

I-127 Front (Revised 11-2010)    **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**    (OVER)

Appendix F

STRONG MSJ APP. 104

Show him the Power of my "Brother hood". After an hour passed Sgt Villareal came to offender's
cell and asked why was he (offender Strong) "messing" with People. He Sgt Villareal then told
offender he was charged with out of Place and disobering a direct order. Sgt refused to take
my statement of which I asked for time his video to be reviewed and PD OS 70 to be read into the
record as my defense. Officer Harana and Sgt Villareal was acting under the Color of State law in that
their own personal capacity while conspiring to maliciously Prosecut offender Strong. The
8th, 14th and 1st Amendments were violated by TDCI McConnell Unit Officers in said complaint
and Shall be filed on officer I-15 scent. Witnesses to said event. Witness Shall be
interviewed and all interviews Shall be recorded.        MAY 05 2015
         1) Fredrick White 1358194 I-31B        2) Derrick White 1422637 I-25B

Action Requested to resolve your Complaint.
To have all time & LSB video reviewed : to have Compliant filed on all officers mention in compliant with
Violation Posted on I-15 GN, to have all witness interview and all records of interview recorded

Offender Signature: _____        Date: 5/12/15

Grievance Response:


Your complaint has been noted. Investigation reveals that there is no evidence to substantiate your
allegation of harassment or of staff violating policy. No further action is warranted.




Signature Authority: _____        **Warden C. Furr** Date:        SEP 0 3 2015

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response.
State the reason for appeal on the Step 2 Form.

Returned because:        *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant. Refer to grievance #
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

UGI Printed Name/Signature _____

Application of the screening criteria for this grievance is not expected to adversely
affect the offender's health.

Medical Signature Authority _____

I-127 Back (Revised 11-2010)

<table>
<tr><td colspan="2">OFFICE USE ONLY</td></tr>
<tr><td>Initial Submission</td><td>UGI Initials:</td></tr>
<tr><td>Grievance #:</td><td>2015143</td></tr>
<tr><td>Screening Criteria Used:</td><td></td></tr>
<tr><td>Date Recd from Offender:</td><td>MAY 1 5 2015</td></tr>
<tr><td>Date Returned to Offender:</td><td>MAY 1 5 2015</td></tr>
<tr><td>2nd Submission</td><td>UGI Initials:</td></tr>
<tr><td>Grievance #:</td><td>2015143</td></tr>
<tr><td>Screening Criteria Used:</td><td></td></tr>
<tr><td>Date Recd from Offender:</td><td>MAY 2 8 2015</td></tr>
<tr><td>Date Returned to Offender:</td><td>MAY 2 8 2015</td></tr>
<tr><td>3rd Submission</td><td>UGI Initials:</td></tr>
<tr><td>Grievance #:</td><td>2015148<br>#38414</td></tr>
<tr><td>Screening Criteria Used:</td><td></td></tr>
<tr><td>Date Recd from Offender:</td><td>JUN 0 9 2015</td></tr>
<tr><td>Date Returned to Offender:</td><td>JUN 0 9 2015</td></tr>
</table>

Appendix F

**Texas Department of Criminal Justice**

**STEP 2 OFFENDER GRIEVANCE FORM**

**OFFICE USE ONLY**

Grievance #: 2015116277I

Date Received: AUG 10 2015

Date Due: 9.8

Grievance Code: 200

Investigator ID #: 2147

Extension Date: 10-13

Date Retd to Offender: _____

Offender Name: Tabari Strong     TDCJ # 1109849

Unit: MC(4)     Housing Assignment: 11-SD-17

Unit where incident occurred: MC(4) Administration

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Warden Furr     When? 8-3-15

What was their response? Housing was in Compliance with Policy and procedures

What action was taken? Neglect of Medical needs of housing Cruel and Unusual Punishment

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

Request for all Immunity of the 11th Amendment to be forbidden due to the Neglect of Medical Needs of Housing. On the date of May 21st. 2015 (on or about) offender Strong was seen by medical and had x-rays taken which showed that his Left Shoulder was Indeed Broken or ACL Joint of the Coller Bone Seperated, this was also the same date that a front Zipper Pass and Handcuff Pass was issued to offender Strong by a Nurse Cobett at or around 10:00am, May 21st 2015; therefore; there was enough Proof within TDCJ's own Medical file of McConnell Unit to show the needs of a Bottom Bunk Pass as well as to Show either the Courtroom of TDCJ's McConnell Unit Neglected Offender's Medical Needs or that the Medical Department Neglected the medical needs of offender Strong's? — Either was Malicious Neglect in one owns Personal Capacity while acting under the Color of State law is not Qualified Immunity under the 11th Amendment of the United States Constitution. As the Statement Goes "Ignorance is No Excuse for Law!." So both are at fault. This harm Made it difficult for offender to adjust to the Pain in Shoulder as well as enhanced it to the Point the medication was of no use due to the fact offender had to Pull and Push off of the already Broken bone and cause more damaged then already Present. Offender was forced to accept housing due to threats of being Given a Major Disciplinary and was refused to seek a higher ranking authority because of such.

---

I-127 Front (Revised 11-2010)     YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM     (OVER)

Appendix F

STRONG MSJ APP. 106

**Action Requested to resolve your Complaint.** for all relief to be Granted requested

**Offender Signature:**                                         Date: 8/3/ 15

**Grievance Response:**

Your complaint has been noted and properly addressed in Step One. Staff was following all
policy and procedures as outlined in the TDCJ policy handbook at the time of the original
complaint. Investigation reveals that on August 18, 2015, your medical restrictions were changed
and you have been assigned to a lower bunk. No further action warranted.

**Signature Authority:** _____ P. Chapa, Assistant Region IV Director   Date: 10-12-15

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response.
State the reason for appeal on the Step 2 Form.

**Returned because:**     *Resubmit this form when the corrections are made.

- [ ] 1. Grievable time period has expired.
- [ ] 2. Submission in excess of 1 every 7 days. *
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant, Refer to grievance #_____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely
Affect the offender's health.**

**Medical Signature Authority:**_____

I-127 Back (Revised 11-2010)

| OFFICE USE ONLY | |
| --- | --- |
| Initial Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2nd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

Appendix F

STRONG MSJ APP. 107

Emergency Grievance



**Texas Department of Criminal Justice**

# STEP 1

### OFFENDER GRIEVANCE FORM

1150-17

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2015102771 |
| Date Received: | 06-22-15 |
| Date Due: | 08-01-15 |
| Grievance Code: | 200 |
| Investigator ID #: | 22226 |
| Extension Date: | |
| Date Retd to Offender: | AUG 03 2015 |

Offender Name: Tabari Strong    TDCJ # 1688849

Unit: ML(4)    Housing Assignment: 7-I-56T #150-7

Unit where incident occurred: ML(4) Count Room/11 building RHD cell12

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Chain officer Rodriguez and Jane Doe? / Count Room  When? June 5th, 2015

What was their response? That I had to Move to I-55 pod ob receive a Major Case for refusing housing!

What action was taken? Due to Medical conditions, placed offender Life/well being in danger

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

This Grievance shall be filed on Chain officer(s) Rodriguez and Jane Doe?'s I-15 file for forcing an offender to be housed, Medically inadequately. This compliant shall be filed on the Count Room Attendant's I-15 for endangering the life and well being of offender Strong by having him Climb unto a top bunk with a broken shoulder of which can be confirmed by McConnell Unit's Medical Department. On the date of June 5th, 2015 officer Rodriguez informed offender Strong (while offender was in shower), that he was moving to I-Pod, 55cell, top bunk. Offender Strong informed officer Rodriguez of his left Shoulder being Broken. Officer Rodriguez told offender he had to move or a disciplinary of refusing housing will be Given to him. Later on about 11:00AM another un-known Female officer (Jane Doe?), came and told offender Strong to Move, while doing so he offender Strong, again informed officer Jane Doe of his shoulder injury; She then Said "Yeah officer Rodriguez told me you would be Given me those problems, that's why he didnt want to deal with you and they sent me. They told me to tell you to Move or receive a Major-Case for not doing so?!") So I only moved because I cannot afford another Major case and I know officer Rodriguez will falsify disciplinaries (refer to disciplinary # 2015013175S of which officer lied about the details of what happened) as well as I felt that I would lose all a-round because McConnell Administration will maliciously Prosecute me regardless of the situation! offender Strong's life has been compromised due to his left Shoulder being broken. offender has had to repeatitly use his broken shoulder and further damage it while doing so. The cruel and malisious act of neglect by neglect on officer Rodriguez, Count Room and Unknown Fe-male officer Jane Doe has violated all Medical ADministrative Codes as well as has viol-ated offender's Equal Protection Clause of which, even though all TDCJ McConnell Unit officials have Immunity under the 11th Amendment this does not apply, due to the facts they knew the facts and harm that was to occure to offender's life/well being. Officer are only

---

I-127 Front (Revised 11-2010)    **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**    (OVER)

EMERGANCY Grievance

Appendix F

have Immunity under the 11th Amendment when, they do not know the Risk or harm that is involved. Officers Rodriguez and Jane Doe knew 1st hand of the harm involved and neglected to inform the Court Room of such and therefor inadequate or Breach of Duty on both officers by neglect are involved. The Court Room neglected to review all Medical records and there fore is at lieable Civil by inadequate Duties and Shall be held lieable while acting under the color of State law! In Relief Offender is asking to be move NOW! to a bottom bunk as well as to have any immunities that the 11th Amendment Grants be nullified due to officals acting under their own indiviual and Personal Capacities of Neglect with delibrate Indifference and malicious behaviors. For all resorts of this complaint to be filed on all officals of TDCJ McConnell Unit Staff's I-15 that are mention herein complaint JUN 0 9 2015

Action Requested to resolve your Complaint.

To have all relief Granted asked by offender To be Re-assigned to a bottom Bunk ; For any immunites dis Qualified, To have Complaint filed on all TDCJ Officals I-15 File 1 and To have a Thorough Investigation

Offender Signature: _____   Date: 6/7/15

**Grievance Response:**

Your concern has been noted. A review of your health summary indicates that there was no medical reason for you to refuse 7I-55T as housing at that time. This housing assignment was appropriate, therefore, you would be subject to all applicable consequences for refusing this lawful order. This housing was in compliance with policy and procedures. No action warranted.

### Warden C, Furr

Signature Authority: _____C. Furr AW_____   Date: ██ 3 1 2015

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

Returned because:   *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☑ 2. Submission in excess of 1 every 7 days. • 6/3, 6/15
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant. Refer to grievance #_____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

UGI Printed Name/Signature: _____

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

OFFICE USE ONLY

Initial Submission   UGI Initials
Grievance #: 2015159405
Screening Criteria Used: #2-5001
Date Recd from Offender: JUN 0 9 2015
Date Returned to Offender: JUN 0 9 2015

2nd Submission   UGI Initials
Grievance #: 2015159405
Screening Criteria Used: #3-5001
Date Recd from Offender: JUN 1 5 2015
Date Returned to Offender: JUN 1 5 2015

3rd Submission   UGI Initials
Grievance #: 2015159405
Screening Criteria Used: #2-5001
Date Recd from Offender: JUN 1 9 2015
Date Returned to Offender: JUN 1 9 2015

Appendix F

STRONG MSJ APP. 109

# Texas Department of Criminal Justice

## STEP 2 OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: 2015162604

Date Received: JUL 27 2015

Date Due: AUG 0 3 2015 9/10

Grievance Code: 673

Investigator ID #: _____

Extension Date: _____

Date Retd to Offender: _____

Offender Name: Tahari Strong     TDCJ # 1688849

Unit: M(4)     Housing Assignment: 8-J-34B

Unit where incident occurred: M(4) Administration Bldg

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Rachel Romine (Practice Manager)     When? 7-23-15

What was their response? That offender Strong "Refused on Medical Chain"

What action was taken? Inappropriate Response to ALL of Complaint (Showers, Recreation etc...)

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

1) Offender Strong did and is not Grieving the Medical Department; Offender Strong is Grieving the issues of a Captain Saxton refusing to allow him an escort to medical as well as his (Cpt Saxton's) Subordinants Officer SHancher and John Does working that date as well as the following dates of being denied Showers for three or four days; the One hour of out of cell time or recreation; being refused hygiene; of toothpaste, soap, toothbrush for an extended time Period of No less than 6 days and no more than 7 days. Offender was not Given his Property until May 26th of which officer working 11building refused him on Said Hygiene; Offender Stated that there were multiple dates of being denied showers (refer to Step one 1st paragraph). As well as offender Strong is Grieving the facts that Capt. Saxton and Sub-ordinate officer Shancher and officer(s) John Doe(s) were making fun of his Medical condition as well as Neglected to provide an escort to the infirmary when he 1st complained of said injury. Therefor; Neglect of said officials of TDCJ's McConnell Unit Shall have NO Immunity under the 11th Amendment of the U.S. Constitution while acting under the color of State law due to the fact that; the officials of TDCJ's McConnell Unit, for acting within their own Personal Capacity; Capt Saxton; and Said others were acting in their own individual or Personal Capacity for the acts Stated in Complaint of which; No Immunity Shall be Granted. Offender Strong has Since been affected with Skin irritation due to the NOT showering and or providing him with basic hygiene needs of soap, toothpaste and toothbrush as well as has Put in request to see Skin Specialist for such Skin problems and as well was Seen by a Nurse for teeth cleaning of which; the Nurse informed him that he would have to Pay a Co-fee of $100.00 for such Cleaning when in fact

---

I-127 Front (Revised 11-2010)     YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM     (OVER)

Appendix F

STRONG MSJ APP. 110

Property office and said 1) building officers (ranking Sergeants, Lieuts. Capts etc...) all refused him/strong a toothbrush and toothpaste for over (6) Six Days! This is what offender is Grieving so for Rachel Romine a practice Member to answer said Compliant is inappropriate as well as another way to toss Toss blame where it's not directed at which this shall be filed on all TDCJ's Administrators I- 15 file for conspiracy. In Relief Offender Strong is asking the U.S. District courts to deny all Immunity for any and all officer Named here so in compliant as well as to have offender Strong's teeth Cleaned without Any Said Co-fee of 100.⁰⁰ as well as to have any and all Skin irritation be Medically treated with out and a co-payment; offender also request that a Policy be put in place for offenders to receive said basic hygiene and writting.

**Action Requested to resolve your Complaint.** Material upon arrival of 1) building Regaudless of Matter!

To have all Relief Grant Requested by offender in last Paragrah of Compliant

**Offender Signature:** [signature]                  **Date:** 7/26/15

**Grievance Response:**

A review of the Step 1 medical grievance was completed regarding your complaint you submitted a Sick Call Request (SCR) to medical complaining of a rash and broken shoulder which have not been seen yet. You were told you would be charged the Annual Health Care Service Fee. You also complained you were denied showers on 5/20/2015 and 5/22/2015.

The documentation in your medical record is supportive of the response received at Step 1. Further review reflects you were seen by the Orthopedic Specialist on 6/29/2015 who recommended physical therapy (PT). You were seen in PT on 8/18/2015 and were instructed on exercises. If you have issues with security, you may wish to submit and I-60 through the security grievance process. You may wish to review Administrative Directive 06.08 in the unit law library regarding the Annual Health Care Service Fee

If you feel your condition has changed to warrant further evaluation, you may submit a SCR to the medical department. 2.01

**Signature Authority:** ~~STEP II MEDICAL GRIEVANCE PROGRAM~~            **Date:** 8.27.15

If you are dissatisfied with the Step II res~~OFFICE OF PROFESSIONAL STANDARDS~~vance Investigator within 15 days from the date of the Step 1 response.
State the reason for appeal on the Step 2 f~~TDCJ HEALTH SERVICES DIVISION~~

**Returned because:**       *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.

☐ 2. Submission in excess of 1 every 7 days. *

☐ 3. Originals not submitted. *

☐ 4. Inappropriate/Excessive attachments. *

☐ 5. No documented attempt at informal resolution. *

☐ 6. No requested relief is stated. *

☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *

☐ 8. The issue presented is not grievable.

☐ 9. Redundant, Refer to grievance #_____

☐ 10. Illegible/Incomprehensible. *

☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:** _____

**I-127 Back** (Revised 11-2010)

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2ⁿᵈ Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3ʳᵈ Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

**Appendix F**

STRONG MSJ APP. 111



**Texas Department of Cri~~~~~ace**

# STEP 1

**OFFENDER GRIEVANCE FORM**

8J-34B

| OFFICE USE ONLY |
|---|
| Grievance #: 2015162604 |
| Date Received: 06.22.15 |
| Date Due: 08.01.15 |
| Grievance Code: 673 |
| Investigator ID #: 1950 |
| Extension Date: _____ |
| Date Retd to Offender: JUL 24 2015 |

Offender Name: Tabari Strong     TDCJ # 1689849

Unit: M(4)     Housing Assignment: H-AH-72cell

Unit where incident occurred: M(4) 11 building     7

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Sgts. and officer(s) working on 11 building     When? May 20th through June 2nd

What was their response? No Staff ; No Showers

What action was taken? Cruel and unusual punishment by neglect of all officers working 11 building

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

This Grievance Shall be filed on all officers I-15 file who are mention in complaint. All Time lap video shall be reviewed of all events that did or did not occurred on said dates listed herein Complaint. On the dates of May 20th, 21st, 22nd, 2015 offender was denied Showers ; On May 30th 31st, June 1st and June 2nd 2015 offender was denied Showers ; Offender was denied his (1) one hour of out of cell time or out side exercise which is to be given once every 7 days ; During this time offender was denied Medical Attention on May 20th 2015 through May 21st 2015 of which officer Sanchez Captain Saxton and other unknown officers of 11 building refuse to escort offender to medical. Officer Sanchez thought it was funny and told offender to just "hold his arm up and Pop it back in Place." Offenders shoulder was broken which Medical Records will Prove. Captain Saxton Stated that "It's not bleeding. You're okay it's not serious." This is neglect and deprivation of Inhumane Punishment. Offender was shown discrimination and deliberate indifference on all said said violation which is a breach of Duty by all TDCJ McConnell Unit Staff. as well as Inadequate training and hires by Executive Director. Regional Director and all Wardens of McConnell Unit. This behavior of neglect harms offender in the ways of having had to seek medical attention for rashes, and infections due to not bathing as well as has forced offender to be subjected to Put a Co-Pay of $100.00 of which is a cruel act due to the fact TDCJ does not Pay or Provide any moneys for offenders who "work" said job assignment which by right ; to make an offender Pay for Medical "Co-Pays" without any financial support from TDCJ is a form of extortion and Slavery or Involuntary servitude! Offender Strong contends Avers that his under arms, legs, arms and feet has broken out into an unknown rash of which he has put an I-60 to medical Administration about but has yet to be seen about. Offender is requesting that all medical Co-Pay be Paid by TDCJ's McConnell Unit due to Neglect and cruel and unusual Punishment. The out

---

I-127 Front (Revised 11-2010)     **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**     (OVER)

Appendix F

...risk harm offender's 8th amend right. It is a well know fact that exercise can heal and... all Stress as well its a protected right by the U.S. Const. This also has a mental factor of... [lea]ving offender in a cell for weeks without any movement can cause health issues... mental to diet or weight. Any and all illnesses shall be taken medical care by... this McConnel unit and all TDCJ Policy Makers due to their ~~inaccu~~ inadequate trai[n]ing of all Subordinates in said matters listed. Offender contends that this was an o[ngo]ing collaboration or conspiring against him freely expressing his 1st Amendment R[i]ghts by all officers who are listed herein. **JUN 0 9 2015**

**Action requested to resolve your Complaint.** ...have an and all medical cost be paid by TDCJ McConnell Unit due to neglect and harm-ful treatments. To have all officers I-15 file noted of said events and a full investigation conducted

Offender Signature: _[signature]_                    Date: June 2nd 2015

**Grievance Response:**

Offender Strong, Tahari TDCJ# 1689849, you were seen on 5/21/15 after your sick call was received with complaint of shoulder pain after an altercation. You were given meds, a sling to wear for 4 months and a referral to Ortho(shoulder and elbow). You signed a refusal on 5/28/15 because "do not want to get go through DA Unit." You were assessed again on 6/16/15 and signed another refusal after that for the referral for PT on 7/12/15. Both times you were counseled on adverse reactions due to refusal of chain. There has been a current evaluation done today on 7/21/15 for expedited referral to Ortho(shoulder and elbow). It would be in your best interest not to sign a refusal again for the appointment. Medical has no influence on security procedures. If you feel your treatment of security is neglectful or harmful you need to report this to rank. There have been no charges to your Inmate Trust fund since 2012.

Signature Authority: _Rachel Romine, PM_     RACHEL ROMINE     Date: 7-21-15
PRACTICE MANAGER

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**     *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *   6/3 6/15
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance #_____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

UGI Printed Name/Signature: _[signature] Garcia_

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

**OFFICE USE ONLY**

Initial Submission UGI Initials:
Grievance #: 2015130101
Screening Criteria Used: #2-899
Date Recd from Offender: JUN 0 9 2015
Date Returned to Offender: JUN 0 9 2015

2nd Submission UGI Initials:
Grievance #: 2015130101
Screening Criteria Used: JUN 1 5 2015
Date Recd from Offender:
Date Returned to Offender: JUN 1 5 2015

3rd Submission UGI Initials:
Grievance #: 2015130101
Screening Criteria Used: #2-899
Date Recd from Offender: JUN 1 5 2015
Date Returned to Offender: JUN 1 5 2015

Appendix F

**STRONG MSJ APP. 113**

**Texas Department of Criminal Justice**

STEP 2

OFFENDER
GRIEVANCE FORM

OFFICE USE ONLY

Grievance #: 2015164744
Date Received: JUL 27 2015
Date Due: AUG 03 2015
Grievance Code: 410
Investigator ID #: 11312
Extension Date: _____
Date Retd to Offender: _____

Offender Name: Tahari Strong    TDCJ # 1689849

Unit: MC4    Housing Assignment: 8-T-34 B

Unit where incident occurred: MC4 Administration

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Warden Furr    When? July 23, 2015

What was their response? "No Procedural Errors; No Reasons exist to warrant overturning this Case."

What action was taken? Failure to Provide Due Process and to Equal Rights due to inhume treatment (5th Amend)

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

1) Due Process has two prongs to Satisfy: A) being temory effectiveness and b) Long term or Sufficient of which, this disciplinary of use of force or Assault on an officer never would have taken Place if it were not for a temporary relief of assinging offender to an adequate Cell of which he could have used his fan in the extreme heat of 100° plus heat, a cell that had lights working and a desk were offender could do his legal work but instead of such Adequate Shelter Provided the Sergeant on Call of the use of force chose to have his sub-ordinate attack offender Strong while his back was turned towards them. Offender Strong did not at any time show any signs of violence towards any TDCJ official until they tried to replace him in an Inadequate Cell (Housing) while doing so offender "Allegally" Kicked officer of which the Use of force video was denied to be reviewed for such Proves. As well as this offender Strong was forced to Act out of Character and acted out the only way he saw fit to relieve the Unjust Property Stolen ($1.00) out of his property as well as the inadequate Shelter. The long or Sufficient harm of such such Can easily be seen by an bais DHO who refused to Give the dates of Soltary done of 14 days Plus a credit to offender's Restriction Dates as well the Facts that offender was seen and treated by Medical for Faint Blackouts due to the heat and his asthma Condition as well as the fact offender was Fasting During the Holy Month of Rama-dan. Offender as well had to be reseen for his shoulder that the officers re-injuried and Caused further harm to. As well as now offender Strong has an assaulting an officer Charge on his file which will be looked at in the future with out full explaination of what truly took Place. The cell had Poor ventilation as well there were dates but offender was refused Showers, the 1 hour out of cell time or recreation for exercise And the facts that he could not read his Mail at Night upon receiving it as well as reading the Holy Quran of which is required during the month of Ramadan (1st Amendment). Offender was falsly confined on 11building Soltary by

I-127 Front (Revised 11-2010)    YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM    (OVER)

& Sergeant Villareal & the Imprisonment of which Sgt Villareal acted out of retaliation (Grievances
filed by Offender Strong) and refused to & adhere to the 1st Shift Sgt and officer of that date and
instead just decided to take offender to in inadequate Cell write a false disciplinary and as well
as steal over $41.00 of offender property all said offender Strong's Due forces of Equal
protection has and was violated for all Disciplinaries due to have all evidence provide as well as
an Non-bais DHO, therefore relief must be Granted on the Grounds of having said Case
overturned Due to offender being forced to act out of Chartter of his housing being in-
adequate and as well as being falsly confined in a solitary cell without reasons No
Immunity shall be Granted to Am and All TDCJ officials that will be named in further legal
Matter with in the U.S. District Courts. Offender was also reduced to a G-4 for said Case.

**Action Requested to resolve your Complaint.** For All relief to be Granted Sought by Offender Strong

**Offender Signature:** [signature]

**Grievance Response:** A review of Disciplinary Case #20150296416 has been conducted. The hearing records support the guilty finding. The punishment was within established guidelines and no due process errors identified. Even if you do not recall kicking the officer, the violation still exists. Therefore, no further action is warranted by this office.

**Signature Authority:** **B. BARNETT** *BBarnett*     **Date:** 8-11-15

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response.
State the reason for appeal on the Step 2 Form.

**Returned because:**      *Resubmit this form when the corrections are made.*

- [ ] 1. Grievable time period has expired.
- [ ] 2. Submission in excess of 1 every 7 days. *
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant. Refer to grievance #_____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely
Affect the offender's health.**

**Medical Signature Authority:** _____

I-127 Back (Revised 11-2010)

**OFFICE USE ONLY**

Initial Submission          UGI Initials:_____

Grievance #:_____

Screening Criteria Used:_____

Date Recd from Offender: _____

Date Returned to Offender: _____

**2nd Submission**          UGI Initials:_____

Grievance #:_____

Screening Criteria Used:_____

Date Recd from Offender: _____

Date Returned to Offender: _____

**3rd Submission**          UGI Initials:_____

Grievance #:_____

Screening Criteria Used:_____

Date Recd from Offender: _____

Date Returned to Offender: _____

**Appendix F**

**STRONG MSJ APP. 115**

**Texas Department of Criminal Justice**

# STEP 1

### OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: 2015164744

Date Received: June 24, 2015

Date Due: July 24, 2015

Grievance Code: 410

Investigator ID #: 1950

Extension Date: .

Date Retd to Offender JUL 24 2015

Offender Name: Tabari Strong    TDC J #1689849

Unit: MC(4)    Housing Assignment: 11-55-7cell

Unit where incident occurred: MC(4) Disciplinary Hearing   8J-34B

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name. title)? Cpt / DHO Boyer    When? 6/22/15

What was their response? Found Guilty of 03.3 (Disruptive) # 20150296416; 45/46/45/120 restrictions

What action was taken? Excessive Punishments; Failure to review all evidence; Inhumane Punishment

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

I'm appealing case #20150296416 due to the following: 1) All evidence was not allowed to be re-viewed in the said manner that the Use of Force video. Offender asked for the use of force video to be entered into the records to show and provide facts that; 2) Offender Strong did not mean to Kick said officer of which #Officer Gonzales even said during hearing; 3) The reason(s) the restrictions were excessive are due to the facts that a). DHO refuse to have the 14 days of Solitary count towards his restrictions; b) The cause of the use of force was due to the inhumane treatment of the conditions of confinement! Offender Strong Simply wanted adequate Shelter of being housed in a cell with; 1) A cell that had outlets in order to use his Fan to Keep cool; 2) No lights, the cell of which offender is being housed has no cell lights which offender cannot read, write at night (1st Amend constit vs.) as well is forced to endure excessive heat during daylight hours while do so. 3) Offender has asthma which the excessive heat of (100° plus temps) cause breathing troubles as well as # 4) Offender is a Muslim and is fasting during the month of Ramadan of which is a Required Duty of All Muslims in which offender cannot drink fluids to Keep his body cool during the day and has suffered medical issues of faint dizzie Spills and Shortage of breath. 5) Offender has not a desk of table to sit at to do said le-gal work 6) Poor Ventilization, there are no windows to open as well as the venting system is very Poor as to were, little to no air circulates in offender Cell. 7) Offender was Falsly taken to solitary by an and an Sgt Villreal on June 8th 2015 because he Sgt Villreal wanted to Force False disciplinaries against offender stat-ing that he refused housing, disobried orders and was out of place (refer to disciplinary 20150280493 which was dismissed due to Sgt. Whandu and Officers McQuinn, Sg-azar and Blesdeo Stating that Told offender not to reenter I-55T due a cellie conflict

I-127 Front (Revised 11-2010)    YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM    (OVER)

of which SGT Villised was informed of yet want to false imprisonment offender due to his dislikeness towards offender.). 8) This is an ongoing retaliation on offender Strong by TDCJ's officials at McConnell Unit due to offender exercising his 1st Amendment rights of freedom of expression, either through Grievances and I-60 as well as him offender freely practicing his religious Pastro Faith. Due to these above Said facts offender Strong ask in relief that Said disciplinary be overturned Now and according to his 1st 4th, 5th, 6th, 8th and 14th Amendments of the U.S. Const. being Violated. Note* (offender's 4th Amend const Right was violated during Sgt Villiseu either Frylich and officer Martinez Stole and or destroyed over $41.00 of offender's property of which offender has notified AW TDCJ McConnell Unit Administration.).

Action Requested to resolve your Complaint

To have all relief Granted that offender has asked as well as for QIS immunity to be Granted to Said TDCJ officials named herein is relevant due to them act in person/color.

Offender Signature: _____  Date: 6/23/15

Grievance Response:
Disciplinary Case 20150296416 has been reviewed and there were no procedural errors noted. The Disciplinary Hearing Officer determined that there was sufficient evidence to support the guilty verdict. The punishment imposed was within the established guidelines. No reasons exist to warrant overturning this case. No further action is warranted.

Signature Authority: C. _____  **Warden C. Furr**  Date: JUL 2 2 2015

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

Returned because:          *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance #_____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

UGI Printed Name/Signature: _____

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

| OFFICE USE ONLY | |
| --- | --- |
| Initial Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2nd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

Appendix F

STRONG MSJ APP. 117

# Texas Department of Criminal Justice

## STEP 2 OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: 2015169067

Date Received: SEP 2 SEP 2 8 2015

Date Due: 10127

Grievance Code: 815

Investigator ID #: 12363

Extension Date: _____

Date Retd to Offender: _____

Offender Name: Tabari Strong      TDCJ # 1689549

Unit: M(4)      Housing Assignment: 8-W-64B

Unit where incident occurred: M(4) Administration

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Warden K. Putnam      When? 9-18-15

What was their response? As an offender You are subjected to Searches at any time; NO Supporting evidence.

What action was taken? In appropriate Screened Grievance (899+999) Collaboration in Conspiring to Cover Criminal Acts

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

1) The warden (Putnam) has inappropriately responded to said step one; No where in the step one did offender State anything about a illegal Shearch; 2) Therefore, Warden Putnam has collaborated to conspire (Conspiracy Laws of Title 14 U.S.C. 1985() and 1986() in order to; cover criminal acts TX Penal Code 37.02, Gov't Code 500-008, of said TDCJ Subordinates to Neglect and deprive offender of his Property (Gov't Code 501-007 and Tx head rule 836.06 and Tx Penal Code 39.04), to Knowingly to inflict the harm of overheating (Heat Exhaustion) of which was in direct violation of the Heat Precaution Plan (Heat Precaution Plan of 2014, designed by Executive Director William Sterlins and Program Managers Amber and Rosie). This along with Ad. 05.72, AD. 04.63 and the Government Code of 500-007, are in place to Protect the liberty Interest of offender's well being which includes "Life". Offender Avers that the act(s) and omission(s) committed against him by Officer Bashes and Administrators of TDCJ has caused him to; (A) contract High Blood Pressure. According to recent medical Blood work done by TDCJ, offender has a reading of High Blood of which he NEVER had before. (B) offender has had to revert to using an Asthma Inhaler which he never needed upuntil said time of this report (C). offender has also been cited as having High Cholesterol no prior record can reflect Said problems. (all said facts shall be checked by Medical records), and as well (D) offender suffered Numerous Black Outs during said time his fan was illegally siezed by Property officer Bashes and TDCJ's Administration as well as Chest Pains, dizzy spills which he offender did write MULTIPLE I-60s to Wardens, Majors and Captains of TDCJ's McConnell Unit Yet all were denied to due to what offender Avers as a retaliation factor that has been Going on since Warden Currie Directed this Emergency in 2013 Nov 22nd and a Captain Perez who on January (or around) 19th, 2015 Stated to his Capts. Sub-ordinates to write a disciplinary on offender Strong for any and every thing they can, even if it ment

I-127 Front (Revised 11-2010)      YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM      (OVER)

Appendix F

to "lie" or force documents. This can be easily seen through offenders' disciplinary records as well as a Claim (Grievances) that were wrote on over $120.00 Plus dollars was stolen by TDCJ's officers, of which SGt Villareal is responsible for over $41.00 Plus dollars for. Offender furtherly states that TDCJ Medical has joined this action by tampering with funds § 37.09 and § 37.10 (TX Penal Code) and forged documents to steal over $100.00 from offender Strong. Property Officer Bostic and Warden Putnam has in fact has joined this criminal act of conspiring against offender and therefore No Immunity shall be Granted under the 11th Amendment for such action as well as all rules of "Inmate Grievance System" Govt. Code 501-008 Shall be followed and All Evidence shall be recorded (on all ) TDCJ Officials that are Named here-in Report I-15 File to reflect Officer wrong doing

**Action Requested to resolve your Complaint.** For All Relief to be Granted that was and is requested in Step One and Step Two of this Grievance

**Offender Signature:** _(signature)_ **Date:** 9/21/15

**Grievance Response:**

An investigation has been conducted into your complaint. You were appropriately advised at Step 1. Please refer to that response. No conclusive evidence of staff misconduct or policy violations could be substantiated. No further action warranted by this office.

**Signature Authority:** B. PARKER _(signature)_ **Date:** OCT 0 6 2015

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:** *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant. Refer to grievance # _____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

UGI Printed Name/Signature: _____

Application of the screening criteria for this grievance is not expected to adversely affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

**OFFICE USE ONLY**

Initial Submission          UGI Initials:_____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

2nd Submission          UGI Initials:_____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

3rd Submission          UGI Initials:_____
Grievance #: _____
Screening Criteria Used: _____
Date Recd from Offender: _____
Date Returned to Offender: _____

Appendix F

**STRONG MSJ APP. 119**

**Texas Department of Crim** **Justice**

# STEP 1

## OFFENDER GRIEVANCE FORM

OFFICE USE ONLY

Grievance #: 2015169067

Date Received: 07-01-15

Date Due: 08-10-15

Grievance Code: 815

Investigator ID #: 7266 1722

Extension Date: 09-30-15

Date Retd to Offender: SEP 18 2015

Offender Name: Tabari Strong   TDC# 1689849

Unit: M(4)   Housing Assignment: 7-60-Tail

Unit where incident occurred: M(4) @ 7 building   8K-64B

---

You must try to resolve your problem with a staff member bef___ submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Sgt Villired & Counsel Snier & DHO Boxer   When? 6-22-15

What was their response? Dismissed Case # 2015028493 due to IOC's of 4 TDCJ McConnell Unit Officals

What action was taken? False Imprisonment, Inhumane Treatment of Condition of Confinement

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

Offender IS NOT appealing Disciplinary 2015028493; he offender is writing a Complaint or Grievance on Sgt Villired of False Imprisonment, Forged Disciplinaries in an attempt to slander offender's character as well as, confining offender in an cell without adequate shelter of lights, outlet to use fan etc... Offender Strong was told by Capt. Boxer and Counsel Substitute Snier that disciplinary # 2015028493 was dismissed on June 22nd 2015 due to Sgt Ukunbe and officer(s) Salazar, McQuinn, and Blesedo's IOC of the fact that they had informed 2nd shift officer and Sgt Villired that they (the 1st shift officer at 7 building) told offender Strong not to go back in then his assigned cell of I-55 Top due to the facts that his cellie he tried to assault offender with a hotpot while officer Blesedo and Sgt Ukundu was present on June 8th, 2015 at or around 9:05am. On the date of June 8th 2015, at or around 7:45 pm Sgt Villired did falsely confined offender in 11 building solitary cell 7 on an attempt to charge offender with 3 false charges of disciplinary action of: 1) Refusing to house 2) out of Place 3) Disobeying a direct order. These false charges were brought against offender to 1) perform an illegal search and seizure on offender's property, of which i over $41.00 of commissary was stolen lost or damaged. 2) To confine offender in a cell without lights, without an outlet to use his fan in excessive heat at which caused his asthma to flare up. 3) Refused to provide a video cam recorder to surveillance the fact that offender stated his life would be in danger if he offender went back into I-55T. 4) In order to disrupt offender being able to attend any of his religious services of humada or the fasting that started June 2015 as well as in a cell without a desk or table to do his legal work or writings. 4) A cell that has poor venting poor air circulate. Offender was refused a shower from June 8th until June 11 2015 of which he has complained about rashes that has been appearing on offender's body, and an outbreak of his

---

I-127 Front (Revised 11-2010)   YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM   (OVER)

Appendix F

as time and Athletics foot problems. The cell also is roach infested. SGt Villareal knew of the Circumstances of Strong being in Cell 55 of I-pod Yet instead of taken proper action Falsified State documents to Give offender a disciplinary action. This was done in a retaliatory harassment of offender expressing his first Amendment Right of Freedom of Expression as well. SGt violated offender's 4th, 8th, 5th and 6th and 14th Amendment Rights while falsely inprisoning offender in a Solitary Cell. SGt Villareal cannot ☒☒☒ claim immunitty under the 11th Amendment due to him SGt Villreall acting in his own Personal Capacity while under the color of State law. This compliant shall be posted on all TDCJ officials I-15 file that are listed and as well Grievance Inspector Shall Perform a thorough investigation of all Said facts. JUN 2 4 2015

**Action Requested to resolve your Complaint.**
For No Immunity to be Granted to any and all officals involved in the false imprisonment and the illegal search and seizure as well as to have Complaint filed on all officers I-15 report. JUN 2 4 2015

Offender Signature: _____ Date: June 23-2015

**Grievance Response:**

Your complaint has been noted. As an incarcerated offender of TDCJ you are subject to searches at any given time. Staff denies your allegations and contends you were appropriately housed. You failed to present collaborating witnesses and or evidence supporting you charge. No further action warranted.

**Warden K. Putnam**

Signature Authority: _____ Date: 9/7/15

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

Returned because: *Resubmit this form when the corrections are made.

- [ ] 1. Grievable time period has expired.
- [x] 2. Submission in excess of 1 every 7 days. *6/24
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant, Refer to grievance # _____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

UGI Printed Name/Signature: J. Garcia

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

<table>
<tr><td colspan="2"><b>OFFICE USE ONLY</b></td></tr>
<tr><td>Initial Submission</td><td>UGI Initials:</td></tr>
<tr><td>Grievance #:</td><td>2015147135</td></tr>
<tr><td>Screening Criteria Used:</td><td># 2 - 8qq JUN 2 4 2015</td></tr>
<tr><td>Date Recd from Offender:</td><td></td></tr>
<tr><td>Date Returned to Offender:</td><td>JUN 2 4 2015</td></tr>
<tr><td>2nd Submission</td><td>UGI Initials:</td></tr>
<tr><td>Grievance #:</td><td></td></tr>
<tr><td>Screening Criteria Used:</td><td></td></tr>
<tr><td>Date Recd from Offender:</td><td></td></tr>
<tr><td>Date Returned to Offender:</td><td></td></tr>
<tr><td>3rd Submission</td><td>UGI Initials:</td></tr>
<tr><td>Grievance #:</td><td></td></tr>
<tr><td>Screening Criteria Used:</td><td></td></tr>
<tr><td>Date Recd from Offender:</td><td></td></tr>
<tr><td>Date Returned to Offender:</td><td></td></tr>
</table>

Appendix F



**Texas Department of Criminal Justice**

## STEP 2

OFFENDER
GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance # _2015172781_

Date Received: _SEP 24 2015_

HQ recd _OCT 05 2015_

Date Due: _10-29_

Grievance Code: _200_

Investigator ID #: _2 1918_

Extension Date: _____

Date Retd to Offender: _____

Offender Name: _Tabari Strong_   TDCJ# _1685849_

Unit: _ML(4)_   Housing Assignment: _8-K-64B_

Unit where incident occurred: _ML(4) Administration_

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? _Warden K Putnam_   When? _Sept. 22, 2015_

What was their response? _"Investigation into your claims reveals your appropriately housed."_

What action was taken? _Neglect 1 of adequate shelter due to retaliation of Freedom of Expression(s)_

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

1) Offender avers that the Step one Grievance was not responded to until Sept 21st, 2015 of which he did not receive until the 22nd of Sept 2015 and the statement that claims "Your appropriately housed; No further action warranted" is more far from the truth then and conditions of confinement can meet. 2) At said time of Grievance (Step One) offender was housed over 2 of 3 weeks without lights, proper ventilization, multiple dates of not showering 1 experiences of faint blackouts and dizzy spells; No out let to use fan 1 denials of medical attention etc.... of which are all considered as 'inadequate shelter' (8th Amend Cont.i.s.). 3) Offender avers this along with the property that was destroyed, stolen and or damaged (over $41.00) by Sgt Vilbell and subordinates Officers English and Martinez (Tex. Gov't Code 3501-007), all or were all a part of a collaborated Criminal Act of Conspiring (Tx Penal Code 71.01 and 36.06); due to offender enticing Freedom of Expression U.S.C.A: Const. Amend 1; 42 U.S.C.A 3 1983 of Retaliation by Conspiracy and Fraud; Under the Conspiracy Laws of Title 42 U.S.C. 1195(3) and 1986 and Texas Gov't Codes and Tex Penal Codes all said TDCJ Administrators who are listed has collaborated and conspired with an ongoing plot of Warden Gard Currie (who initially open the plot in 2013) and a Capt Perez (who followed up on all orders by carrenting the officers to forge disciplinaries against offender in 2015) and a Sgt Fernando who is now a Lieutenant of TDCJ and order an assault on offender by Bribery T/Penal Code 836.02. This has been enacted by the hands of Executive Director Livingston and Stephens; who has sat and watch all Policies and Constitutional Rights of offender be violated. Offender avers he still has been inadequately housed in K-Pod 64 cell Bottom Bunk due to his cell Not having lights which he has informed all Wardens, Majors, Captains, Lieutenants, Sergeants of 8 building Yet Nothing is done which is a fact that remains that TDCJ wants to keep offender without lights in order to slow his progress on any legal action(s) he may take against an unjustified system of abuse and discrimat-

I-127 Front (Revised 11-2010)   YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM   (OVER)

Appendix F

ion. The Grievance inspector shall review grievances that offender wrote in 2011-2012 of which, will prove that this is a way to "Quiet" what TDCJ considered a "Trouble maker" or one who file complaints against TDCJ. These Grievances will show that offender was held in a cell without light in 2011 through 2012 on 8-J-63 cell for over 3 months due to offender freely expressing his 1st Amend Right(s) of the Const. of the U.S. Through out said time from 2011 through or up until present date of Sept. 23rd 2015 in multiple cells without lights or some in operative problem and instead of Red Tagging the cell they TDCJ Administration, Inadequately house offender to slow any action of legal restitution and or to retaliate a-gainst said offender for him exercising Freedom of Expression(s)! Offender was not ade-quately housed then June 22nd 2015 nor is he adequately house Now Sept. 23rd 2015!

**Action Requested to resolve your Complaint.** For all relief to be granted requested in both Step one and Step two complaints!

**Offender Signature:** _[signature]_   **Date:** 9/23/15

**Grievance Response:**

Your complaint has been noted.  Investigation reveals that Maintenance is rebuilding the light so that it is working properly and all breakers will be monitored and fixed.  No further action warranted.

P. Chapa, Assistant Region IV Director

**Signature Authority:** _[signature]_   **Date:** 10-21-2015

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**     *Resubmit this form when the corrections are made.

- ☐ 1.  Grievable time period has expired.
- ☐ 2.  Submission in excess of 1 every 7 days. *
- ☐ 3.  Originals not submitted. *
- ☐ 4.  Inappropriate/Excessive attachments. *
- ☐ 5.  No documented attempt at informal resolution. *
- ☐ 6.  No requested relief is stated. *
- ☐ 7.  Malicious use of vulgar, indecent, or physically threatening language. *
- ☐ 8.  The issue presented is not grievable.
- ☐ 9.  Redundant, Refer to grievance #
- ☐ 10. Illegible/Incomprehensible. *
- ☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

Application of the screening criteria for this grievance is not expected to adversely affect the offender's health.

Medical Signature Authority: _____

I-127 Back (Revised 11-2010)

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials:____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2nd Submission | UGI Initials:____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission | UGI Initials:____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

Appendix F

**STRONG MSJ APP. 123**

# Texas Department of Criminal Justice

## STEP 1
### OFFENDER GRIEVANCE FORM

**OFFICE USE ONLY**

Grievance #: 2015172781

Date Received: 07·08·15

Date Due: 08·17·15

Grievance Code: 200

Investigator ID #: 1950 1978

Extension Date: 9·26·15

Date Retd to Offender: SEP 22 2015

Offender Name: Tabari Strong    TDCJ # 1659449 1/2

Unit: MCU    Housing Assignment: 11-30-7 Flett

Unit where incident occurred: TDCJ McConnell Unit Administration   8K-64B

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title): Wardens, Majors, Cap__, Lenants, Sergeant   When? June 8 - Present Jun 22nd 2015

What was their response: Don't Know • We check on __ final Just __ were not answered pi F.O.o-Letters I

What action was taken? Inhumane Punishment by Conditions of Confinement 8th and 14th Amend Const U.S.

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

Offender Strong has either talked to or wrote All Wardens, Majors, Captains, Lieutenants, and Sergeants and Court Room of all Civil Facts listed herein compliant and therefore No Immunity at the Eleventh Amendment of the United States Constitution shall be Granted to any and All TDCJ Personal listed here in Complaint and following any other Legal Aid Sought by Offender Strong. Offender has tried Soic June 8th to formly resolve all matters Yet TDCJ's McConnell Unit Administration refuse to comply with any request. Conditions of Con-finement is and will be the Grounds of relief Sought by offender. 1) Offender Strong is being held in a cell which does not have any outlets for use of his fan ie appliance, elec-tronical that he may keep his body at a normal regulate temeture. On the Second floor of 11 building Know as "Solitary" the heat is excessive heat (100° Plus temperatures), this condition has had offender to Seek medical aid of such his asthma Condition has worsen to a de-gree of the need of an Asthmapump or Inhaler. It is Known that offender has asthma as well that in 80° Plus heat he offender Strong needs his fan to stay cool and have proper breathing. 2) Poor Ventilitization in the cell of which offender is housed, there is little to No Ventilitization which can surpress the air the Crikeulerization is Poor and makes Asthma Conditions Worsen 3) There are no windows for air to come through at. 4) No Lights - offender Strong cell has no Lights which requires him to not be allowed to read mail upon it delivery (1st Amendment) as well as he can not work on his legal work or write letters in the cool part of the date This also conflicts this is with his Religious Studies. Offender is a Muslim and this is the month of Ramadan (fasting) which means he offender can not drink fluids to keep his body cool during the day time in the excessive heat which also puts his health of Asthma at a high risk. Officer Gonzales refused to call medical

JUN 22 2015

I-127 Front (Revised 11-2010)    YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM    (OVER)

Appendix F

June 20th, 2015 when offender asked and coowered on the floor due to his illreular breath- ing. 6.5) Offender is also being denied showers and his one hour of recreation out of cell time that TDCJ policy states and the Constitution protects. These dates of de- nial has been listed by I-60s sent to Mairs and Warden with dates on them and Offender has copies of each. 6) The necessities workers refuses to supply offender with toothbrushes as well as proper fitting boxers. 7) The cells is roach infested and as well has No table or desk area where offender may due his writings, he must sit or lad on the floor of which makes his already broke shoulder hurt worse then that it is. 8) Offender has multiple rashes due to not showering as will has asked for a his teeth to be cleaned due to the neglect of TDCJ's officials. offender's eyes has also started to weaken due to dim lighting.

_Action Requested to resolve your Complaint._
To have all conditions of confinement meet and for no Immuniti to be Granted to any and all TDCJ officials that will be Named in the Lawsuite following the exhausting of Remedies:

**Offender Signature:** _____     **Date:** June 22nd, 2015

**Grievance Response:**

Investigation into your claims reveals your appropriately housed. No further action warranted.

**Warden K. Putnam**

**Signature Authority:** _____     **Date:** 7/2/15

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**     *Resubmit this form when the corrections are made.

- [ ] 1.  Grievable time period has expired.
- [x] 2.  Submission in excess of 1 every 7 days. *
- [ ] 3.  Originals not submitted. *
- [ ] 4.  Inappropriate/Excessive attachments. *
- [ ] 5.  No documented attempt at informal resolution. *
- [ ] 6.  No requested relief is stated. *
- [ ] 7.  Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8.  The issue presented is not grievable.
- [ ] 9.  Redundant, Refer to grievance #_____
- [ ] 10.  Illegible/Incomprehensible. *
- [ ] 11.  Inappropriate. *

**UGI Printed Name/Signature:** C Selzle C

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

**Medical Signature Authority:** _____

**I-127 Back** (Revised 11-2010)

<table>
<tr><td colspan="2"><b>OFFICE USE ONLY</b></td></tr>
<tr><td>Initial Submission</td><td>UGI Initials</td></tr>
<tr><td>Grievance #:</td><td>2015162885</td></tr>
<tr><td>Screening Criteria Used:</td><td>599 #2</td></tr>
<tr><td>Date Recd from Offender:</td><td>JUN 22 2015</td></tr>
<tr><td>Date Returned to Offender:</td><td>JUN 22 2015</td></tr>
<tr><td>2nd Submission</td><td>UGI Initials CS</td></tr>
<tr><td>Grievance #:</td><td>2015162887</td></tr>
<tr><td>Screening Criteria Used:</td><td>#3-500</td></tr>
<tr><td>Date Recd from Offender:</td><td>JUN 24 2015</td></tr>
<tr><td>Date Returned to Offender:</td><td>JUN 24 2015</td></tr>
<tr><td>3rd Submission</td><td>UGI Initials OMC</td></tr>
<tr><td>Grievance #:</td><td>2015162887</td></tr>
<tr><td>Screening Criteria Used:</td><td>599 #2</td></tr>
<tr><td>Date Recd from Offender:</td><td>07-01-15</td></tr>
<tr><td>Date Returned to Offender:</td><td>07-01-15</td></tr>
</table>

Appendix F

**STRONG MSJ APP. 125**

**Texas Department of Criminal Justice**

# STEP 2

**OFFENDER GRIEVANCE FORM**

OFFICE USE ONLY

Grievance #: 2016015488

Date Received: OCT 16 2015

Date Due: OCT 23 2015     11-30

Grievance Code: 812

Investigator ID #: 10742

Extension Date: _____

Date Retd to Offender: _____

Offender Name: Tabari Strong     TDCJ # 1688849

Unit: MC4     Housing Assignment: S-K64B

Unit where incident occurred: MC4 Administraton

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Warden C. Furr     When? Oct. 13th, 2015

What was their response? Offender Must follow Agency Policy ; No Sculpting beard ; Beard Must be Neatly trimmed

What action was taken? Religious Presecution & Freedom of Expression U.S.CA Const. Amend 1 ; USCA 42 1983

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

1) Holt v. Hobbs is the Controlling Cause of Strong v. Livingston. 2) In Said Cause of Holt v. Hobbs 135 S.Ct.453 (2015) The United States Supreme Courts did not state that a(n) Offender/Plaintiff Could not "esculpt" their beard. Nor does it state one must be Neatly trimmed which Sculpt and Trimmed are the Same thing. The Supreme Courts Just state that Plaintiff/Offender Can Grow and Maintain up to 1/2 inch beard for Religious Prefuses. This along with the Force Shaving once a year is Religious Presecution & Freedom of Expression. Offender that has chosen not to Grow beards are not re-quire to "Update" their Photos once a year but one that Chose to Practice his Faith through Expression of wear a beard is subjected to be harassed and as well used forced upon it that doesnt comply with TDCI unconstitutional acts of Clean Shaven. 3) No where in Holt v. Hobbs does it State that a "New File Photo" will be required of Plaintiff to Shave once a year. Plaintiff Strong's original com-Plaint States he does not want to be forced to Shave at no point to have A(a) "New Photo" taken. TDCI Administration refuses to readvise their Policy where no harm will be shown towards a Plaintiff as well as ; TDCI Still is harassing Plaintiff for his 1st Amend Rights of Freedom of Expression. TDCI has asked the Imans of TDCI their advise which Imam Shakur, Shabazz and other TDCI Islamic Imams are the very ones who went against Plaintiff and Stated it was not a Pratice of Isl-am. Now all of a Sudden when the U.S. Supreme Courts has decided with Plaintiff, TDCI and In-mam Schaur, Shabazz are all of a sudden reliable for what is or is not Islamic. Plaintiff re-Futes ANY Statements and testimony that Imam Shakur or any other TDCI Chaplin/Iman Makes towards Said Cause due to the fact that ; They (Iman shakur) is Paid by TDCI and Does not have Plaintiff's best intrest at hand. If offender is made to "Neatly" Groom his beard, then he must "esculpt" his beard because the terms are one in the Same (Sculpt Means Trim and vise versa) Plaintiff Strong Cause of Strong v. Livingston Cv 13-106 is Still Pending in a Process of "Stayed" "Stayed" of which his Preliminary Injunction is as well Still Stated the Same Manner and there

I-127 Front (Revised 11-2010)     **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**     (OVER)

Fore: TDCT "New Policy" does not effect him in the manner of him having to shave once a year on his birthdate of Dec. 19th 2015. ∅ Plaintiff is and will refuse to clean shave and at any time TDCT officials try to use force against him to make him shave will be meet with the Viscerous Reactions with a Defense of Life. Plaintiff is request that sanctions be applied other to award all TDCT officials who chose to violate Holt v. Hobbs and or Strong v. Livingston of which damages of declatort will be award to Plaintiff. ∅ Plaintiff is requesting that all relief in Step one and Step two Grievance be adhered to and that TDCT revise said Plan ∅ in so far as not to violate any of the Plaintff's U.S. Const: Amed 1 Rights. Any Force used against Plaintiff /Offender Strong by TDCT will result to harm to both Parties, Plaintiff refuses to Shave once a year!

**Action Requested to resolve your Complaint.** For All relief to be Granted to Plaintiff /Offender Stated in the Step One (1) and Step (2) of Said Grievances

**Offender Signature:** _____   **Date:** 10/15/15

**Grievance Response:**

An investigation has been conducted into your complaint. Per policy a "Religious Beard" is any facial hair not altered from its natural growth pattern and includes the sideburns, a mustache, or any hair on the cheeks, chin, and neck. It shall not extend more than one-half (1/2) inch in length outward from the face. Lines, designs, patterns, symbols cut or shaped, or any alterations from the natural hair growth are not allowed. It may not be sculpted and must remain neatly trimmed and clean. See attached copy of the "Notice to Offenders", regarding the guidelines of the TDCJ policy, effective August 1, 2015, allowing offenders to grow beards for religious purposes. No further action is warranted at this time.

**Signature Authority:** _____   K. Ward   **Date:** NOV 2 0 2015

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**   *Resubmit this form when the corrections are made.

- [ ] 1. Grievable time period has expired.
- [ ] 2. Submission in excess of 1 every 7 days. *
- [ ] 3. Originals not submitted. *
- [ ] 4. Inappropriate/Excessive attachments. *
- [ ] 5. No documented attempt at informal resolution. *
- [ ] 6. No requested relief is stated. *
- [ ] 7. Malicious use of vulgar, indecent, or physically threatening language. *
- [ ] 8. The issue presented is not grievable.
- [ ] 9. Redundant, Refer to grievance # _____
- [ ] 10. Illegible/Incomprehensible. *
- [ ] 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.

**Medical Signature Authority:** _____

I-127 Back (Revised 11-2010)

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials:_____ |
| Grievance #: | _____ |
| Screening Criteria Used: | _____ |
| Date Recd from Offender: | _____ |
| Date Returned to Offender: | _____ |
| 2nd Submission | UGI Initials:_____ |
| Grievance #: | _____ |
| Screening Criteria Used: | _____ |
| Date Recd from Offender: | _____ |
| Date Returned to Offender: | _____ |
| 3rd Submission | UGI Initials:_____ |
| Grievance #: | _____ |
| Screening Criteria Used: | _____ |
| Date Recd from Offender: | _____ |
| Date Returned to Offender: | _____ |

Appendix F

**STRONG MSJ APP. 127**

SUBMITTED BY OFFENDER

# NOTICE TO OFFENDERS

## Effective August 1, 2015

This policy will allow offenders to grow beards for religious purposes.

**Offenders who would like to grow a religious beard must:**

1. Submit an I-60, "Inmate Request to an Official" to the warden's office on the unit;
2. Remain clean shaven until receiving a response approving the request to grow a religious beard; and
3. Have a new offender photo taken 30 days after being approved to grow the religious beard in order for a new identification (ID) card to be issued.

**Guidelines for Religious Beards:**

1. Shall not extend more than one-half (1/2) inch in length outward from the face.
2. Shall not have any lines, designs, patterns, symbols cut or shaped, or any alterations from the natural hair growth.
3. Shall not be sculpted and must remain neatly trimmed and clean.
4. The offender will be required to take a clean-shaven photo each year, during the month of the offender's birthday, for current identification purposes.

- If, at any time, an offender decides to no longer grow a religious beard, the offender must notify the warden's office to change their status and will not be approved again for a religious beard for 12 months.
- Offenders refusing to abide by the guidelines in the new grooming policy will be subject to disciplinary action in accordance with the TDCJ *Disciplinary Rules and Procedures for Offenders.*

# AVISO A OFENSORES

## A partir del 1 de Agosto del 2015

Esta política permitirá que los ofensores dejen crecer sus barbas por motivos religiosos.

**Ofensores quienes desean dejar crecer una barba religiosa deben:**

4. Enviar un I-60, "Petición de Ofensor a un Oficial" a la oficina del guardián en la unidad;
5. Permanecer bien afeitado hasta que reciba una respuesta aprobando la petición para dejar crecer una barba religiosa; y
6. Tener una foto nueva del ofensor tomada 30 días después de ser aprobado a dejarse crecer la barba religiosa para que una nueva identificación (ID) sea generada.

**Directrices para Barbas Religiosas:**

5. No se extenderá más de media (1/2) pulgada de largo hacia el exterior de la cara.
6. No tendrá ninguna línea, diseño, forma, cortes en símbolos o figuras, o ningún cambio del crecimiento natural del vello.
7. No será esculpida y debe seguir siendo perfectamente recortada y limpia.
8. El ofensor será requerido a tomarse una foto bien afeitado cada año, durante el mes del cumpleaños del ofensor, para fines de identificación actuales.

- Si, en cualquier momento, un ofensor decide ya no dejarse crecer una barba religiosa, el ofensor debe notificar a la oficina del guardián para cambiar su estatus y no será aprobado otra vez para una barba religiosa por 12 meses.
- Ofensores que se niegan a cumplir las directrices de la nueva política de aseo personal serán sujetos a medidas disciplinarias de acuerdo con las *Reglas y Procedimientos Disciplinarios para los Ofensores de TDCJ.*

## Texas Department of Criminal Justice

### STEP 1   OFFENDER GRIEVANCE FORM

| OFFICE USE ONLY | |
|---|---|
| Grievance #: | 2015015488 |
| Date Received: | 09.28.15 |
| Date Due: | 11.07.15 |
| Grievance Code: | 812 |
| Investigator ID #: | 1482 2169 |
| Extension Date: | |
| Date Retd to Offender: | OCT 09 2015 |

Offender Name: Tahari Strong    TDCJ # 1689849

Unit: ML(u)    Housing Assignment: 8-K-64B

Unit where incident occurred: ML @ (TDCJ Executive Policy Makers)

---

You must try to resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Executive Director of TDCJ and Policy Makers    When? Sept. 21st 2015

What was their response? Forced Shaven, No trimming or Sculpting of beards (TDCJ New Grooming Policy)

What action was taken? Violation of Freedom of Expression U.S. CA. Const. Amend 1: USCA 42 1983

---

State your grievance in the space provided. Please state who, what, when, where and the disciplinary case number if appropriate

Relief Sought: 1) That No Immunity be Granted to any and all TDCJ officials who Violates offender Strong's Right to Freedom of Expression (U.S.C.A. Const. Amend 1, USCA Title 42 1993). 2) For the Supreme Court Case of Holt V. Hobbs 135 S. Ct 853 (2015) be upheld in TDCJ. 3) For the Cause of Strong V. Livingston CV: 12:106 be upheld as the cause has been labeled as "STAYED" and not taken has not been lifed therefore; the Preliminary Injunction that offender Strong holds is still in tact and any disciplinaries for Grooming (other than the 1/2 inch Growth) is a direct Contempt of court and Shall be Punishable with Sanctions. 3) For TDCJ Policy that has been "Revised" of Grooming be Scrutinized as a direct Violation of offender's Freedom of Expression due to the Facts that: TDCJ has Suggested that they will use excessive Force against offender every year on his Birthdate if he choses not to Clean Shave for a "New Photo Update. This will not only violate offender Religious Rights but is cruel and unusual Punishment that will lead to possible loss of Life! If TDCJ officials try to use Force against offender and force him to Shave; offender will DEFEND Himself BY ANY MEANS NECESSARY which will lead to harm of offender and TDCJ officials! 4) For TDCJ's Policy that States "Offender must keep beard Neatly Groomed and trimmed. But yet the Next Statement of Offenders Can not "Sculpted" their beards be completely Changed. The Defination for trimmed and Scu-lpted are one in the Same meaning "to alter from original Stage of Growth." (Websters Dictionary) This word "Sculpted" is being used by TDCJ as a Phrase to Punish offender Strong for Expressing his want to maintain a Healthy and or Clean appearance. This does not in No way Being pose a threat to Security to Cut or trimm under the Neck as will as the or the BELOW the Face, if anything it helps the officers of TDCJ see that No Contreband is in hair. Offender States at times he does line or edge his Face as well as he allows it to Grow untrimm but niether has Posed any threat to Security due to the Facts that he has a I.D that Shows his beard as well as TDCJ has a clean Sha-ved Photo of offender and officers has no Problem I.D'ing offender Strong. Offender has ever rece-

---

I-127 Front (Revised 11-2010)    YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM    (OVER)

Appendix F

STRONG MSJ APP. 129

got a disciplinary for not trimming or sculpting _____ Beard in Jan 2015. Only to be Contridicted by Regional Director W of TDCJ, Joe Grimes and Senior Warden Guri Currie two month later when saw that (Grimes and Currie) told Five other Muslim offenders that "Offender Strong is the Model of how we want you to Grow Your Beards!" TDCJ Constantly Contridicts itself from the start of offenders Cause of Strong v. Livingston until now. They are simply trying to find ways to Force dis-ciplinaries against offender for his legal Expression(s) of Speech and Religion and as well each off-icer of TDCJ has their own rule which offender will be subjected to when in all said the U.S. Supreme Courts Case of Holt v. Hobbs which simply states an offender can Grow and maintain a 1/2 inch beard. It does not state anything about having to trim his beard nor does it says and any thing about whether if he choses to Neatly Trim or Sculpt his beard yet TDCJ overrides this!

**Action Requested to resolve your Complaint:** For all relief request to be Granted!

**Offender Signature:** [signature]   **Date:** September 27th, 2015

**Grievance Response:**

Offenders must adhere to the agency policy 6.03 for religious beards. The policy states no sculpting of the beard. The beard must be trimmed neatly. this refers to the 1/2 inch length allowed. No further action warranted.

**Signature Authority:** C. Furr MW     Warden C. Furr          **Date:** OCT 09 2015

If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.

**Returned because:**   *Resubmit this form when the corrections are made.

☐ 1. Grievable time period has expired.
☐ 2. Submission in excess of 1 every 7 days. *
☐ 3. Originals not submitted. *
☐ 4. Inappropriate/Excessive attachments. *
☐ 5. No documented attempt at informal resolution. *
☐ 6. No requested relief is stated. *
☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *
☐ 8. The issue presented is not grievable.
☐ 9. Redundant, Refer to grievance # _____
☐ 10. Illegible/Incomprehensible. *
☐ 11. Inappropriate. *

UGI Printed Name/Signature: _____

Application of the screening criteria for this grievance is not expected to adversely affect the offender's health.

Medical Signature Authority: _____

| OFFICE USE ONLY | |
| --- | --- |
| Initial Submission | UGI Initials: _____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 2nd Submission | UGI Initials: _____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| 3rd Submission | UGI Initials: _____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |

I-127 Back (Revised 11-2010)

Appendix F

**STRONG MSJ APP. 130**

# DECLARATION OF KELLI LIMBER

"I am over 21 years of age, of sound mind, capable of making this declaration, and personally acquainted with the facts herein stated."

. "I am a custodian of records for Byrd Unit Photo & Identification Department, a part of the Correctional Institutions Division within the Texas Department of Criminal Justice ("TDCJ"). I have been requested to provide a two sets of photos. One set portraying no facial hair and one set with facial hair maintained by this department for the Offender Tabari Sharrieff Strong (TDCJ #1689849) Attached are true and correct copies of the records which are kept by the TDCJ in regular course of its business activity. The entries of such records were made as a regularly conducted activity and a regular practice of the TDCJ, and were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

"My name is Kelli Limber and I am an employee of the TDC, a governmental agency. I am executing this declaration as part of my assigned duties and responsibilities. I declare under penalty of perjury that the foregoing is true and correct."

Executed in Walker County, State of Texas. On the 17th day of May, 2017.


Kelli Limber
Intake Coordinator, Offender Intake
Texas Department of Criminal Justice

**STRONG MSJ APP. 131**



MSJ APP. 132



MSJ APP. 133





**BUSINESS RECORDS AFFIDAVIT**

STATE OF TEXAS

COUNTY OF ANDERSON

Before me, the undersigned authority, personally appeared Robert Eason, who, being by me duly sworn, deposed as follows:

"My name is Robert Eason. I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts as stated herein.

"I am the custodian of records for the Texas Department of Criminal Justice Region II Headquarters. These records are kept by myself in the regular course of business, and it was the regular course of business of this office for an employee or representative of our department, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

"Attached are copies of photographs of offenders before and after intake haircuts taken at the Gurney Unit in Tennessee Colony from February to April, 2013."

ROBERT EASON
Regional Director, Region II
Correctional Institutions Division
Texas Department of Criminal Justice

SWORN TO AND SUBSCRIBED BEFORE ME, the undersigned notary public, on this the 21 day of June, 2013.

Notary Public in and for the State of Texas

CANDACE R. MOORE
NOTARY PUBLIC
NOTARY WITHOUT BOND
STATE OF TEXAS
My Comm. Exp. 09-31-2013

Candace R. Moore
Notary's Printed Name

1

STRONG MSJ APP. 136





STRONG MSJ APP. 138



























