United States District Court
Southern District of Texas
**ENTERED**
February 02, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| TABARI S STRONG, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-131 |
| | § | |
| BRAD  LIVINGSTON, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION AND SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

This is a civil rights case brought by Plaintiff Tabari S. Strong, a Texas inmate. Plaintiff claims that the grooming policy of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) conflicts with his right to practice his Muslim faith in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*   Plaintiff further asserts a First Amendment retaliation claim and an Eighth Amendment excessive force claim.

Pending before the Court is a Motion for Summary Judgment and Supplemental Motion for Summary Judgment filed by Defendants Matt Barber, Jose Fernandez, Sergeant Lorenzo Diaz, Anthony Mackey, and Megan Gonzalez.  (D.E. 32, 38).  For the reasons stated herein, it is respectfully recommended that these defendants' motions be **GRANTED**.  It is further recommended the Court adopt the undersigned's October 11, 2016 Memorandum and Recommendation (D.E. 12), overrule Plaintiff's objections (D.E. 14), and enter final judgment dismissing this case with prejudice.

## I.      JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331.  This case was referred to the undersigned United States Magistrate Judge for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

## II.     PROCEDURAL BACKGROUND

Plaintiff is a Muslim prisoner in the TDCJ-CID, and is currently confined at the McConnell Unit in Beeville, Texas.  He is serving a life sentence without parole for capital murder.

### A.     Plaintiff's First Action

In April 2012, Plaintiff filed a RLUIPA action against several TDCJ and McConnell Unit officials, seeking to wear a quarter-inch beard.  (*Strong v. Livingston, et al.*, No. 2:12-cv-106 (*Strong I*)).  Following the Fifth Circuit Court of Appeals' decision in *Garner v. Kennedy*, 713 F.3d 237 (5th Cir. 2013), Plaintiff was granted a preliminary injunction to enjoin the defendants from enforcing the TDCJ's no-beard policy and to permit Plaintiff to grow and maintain a quarter-inch beard.  (*Id.*, D.E. 67).  United States District Judge Nelva Gonzales Ramos subsequently denied the defendants' motion to stay the preliminary injunction while defendants appealed the grant of injunctive relief.  (*Id.*, D.E. 76).  On March 14, 2014, the Fifth Circuit dismissed the interlocutory appeal.  (*Id.*, D.E. 91).

On April 11, 2014, District Judge Ramos continued to stay *Strong I* until after a bench trial was conducted in *Ali v. Stephens*, No. 9:09-cv-052 (E.D. Tex.), which was a similar case where a prisoner practicing the Muslim faith had challenged the TDCJ's no-

beard policy.  (*Id.*, D.E. 98).  Judge Ramos issued an order on February 10, 2015, to stay *Strong I* while TDCJ worked on developing a new beard policy and the *Ali* case remained pending before the Fifth Circuit.  (*Id.*, D.E. 117).

According to a new policy effective August 1, 2015, TDCJ Muslim prisoners were permitted to wear a half-inch beard.  (*Id.*, D.E. 129).  On May 2, 2016, the Fifth Circuit applied the Supreme Court's decision in *Holt v. Hobbs,* --- U.S. ---, 135 S. Ct. 853 (2015) to affirm the lower court's decision granting a Muslim inmate the right to grow a four-inch, or fist-length, beard.  *Ali v. Stephens,* 822 F.3d 776. 793-94 (5th Cir. 2016).  In light of *Ali*, United States Magistrate Judge B. Janice Ellington lifted the stay in *Strong I.* (*Strong I*, D.E. 133).  On August 4, 2016, Judge Ellington reinstituted a 90-day stay to provide the TDCJ an opportunity to promulgate a new rule allowing Muslim prisoners the right to maintain a fist-length (or four-inch) beard.  (*Id.*, D.E. 137).

On November 4, 2016, the TDCJ's Executive Director, Bryan Collier, filed a motion for summary judgment to dismiss Plaintiff's RLUIPA claim as moot.  (*Id.*, D.E. 141).  Executive Director Collier presented evidence showing that Plaintiff had been permitted to grow a fist-length beard.  (*Id.*, D.E. 141-1).  He further explained that a new grooming policy would be instituted state-wide by January 2017.  (*Id.*, D.E. 141, p. 2).  The new grooming policy, which became effective on February 1, 2017, allowed prisoners to wear a four-inch beard pursuant to a religious exemption.  (*Id.*, D.E. 144-1).

On March 7, 2017, Judge Ellington issued a Memorandum and Recommendation (March 7, 2017 M&R) to grant Executive Director Collier's summary judgment motion

on the issue of mootness.  (*Id.*, D.E. 145).  On March 23, 2017, Judge Ramos adopted the March 7, 2017 M&R and entered a final judgment in *Strong I.*  (*Id.*, D.E. 148, 149).

### B.    The Instant Action

On April 22, 2016, Plaintiff filed his original complaint pursuant to 42 U.S.C. § 1983 and named sixty-nine defendants.  (D.E. 1).  Pursuant to RLUIPA, Plaintiff claims that the TDCJ's grooming policy requiring him to shave once a year for an identification photograph places a substantial burden on his religious freedom.  Plaintiff further claims that RLUIPA protects his religious interest to trim or sculpt his beard to an appropriate look beyond any limitations imposed by the grooming policy.  Plaintiff next claims that Defendants violated his First Amendment rights by engaging in a campaign of retaliation against him because he prevailed in obtaining the right to wear ¼ inch beard and now, due to both Fifth Circuit precedent and an updated grooming policy, can wear a fist-length beard.  Lastly, Plaintiff claims that prison officials used excessive force against him in violation of his Eighth Amendment rights.  Plaintiff seeks declaratory, injunctive, and monetary relief.

On May 13, 2016, a *Spears*[1] hearing was held.  (D.E. 8).  On July 25, 2016, the Court entered an order requiring Plaintiff to submit a more definite statement of the facts involved in this action. (D.E. 10).  On August 22, 2016, Plaintiff filed a More Definite Statement pursuant to the Court's order.  (D.E. 11).

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

On October 11, 2016, the undersigned issued a Memorandum and Recommendation (October 11, 2016 M&R), recommending that the Court: (1) retain Plaintiff's RLUIPA claims against McConnell Unit Warden Matt Barber in his official capacity for injunctive relief; (2) retain Plaintiff's retaliation claims against Warden Barber in his official capacity for injunctive relief; (3) retain Plaintiff's excessive force claims against McConnell Unit officials Lorenzo Diaz, Megan Gonzalez, Anthony Mackey, and Jose Fernandez in their individual capacities; and (4) dismiss with prejudice all remaining claims and defendants for failure to state a claim and/or as frivolous.  (D.E. 12).  Plaintiff filed objections on October 20, 2016 (D.E. 14), and the October 11, 2016 M&R remains pending before the District Judge.

The undersigned ordered service on Defendants Barber, Diaz, Gonzalez, Mackey and Fernandez (collectively referred to as "Defendants").  (D.E. 13).  Defendants filed their answer on November 22, 2016.  (D.E. 16).  On May 24, 2017, Defendants filed the instant motion for summary judgment.  (D.E. 32).  Thereafter, Plaintiff filed his response to the summary judgment motion.  (D.E. 35).

## III.   SUMMARY JUDGMENT EVIDENCE.

Defendants offer the following summary judgment evidence in connection with their original summary judgment motion:

Exh. A:     TDCJ Security Memorandum 06.16, "Offender Grooming," eff. August 1, 2015 (D.E. 32-1, pp. 2-4).

Exh. B:     TDCJ Security Memorandum SM-06.16 (rev. 1), "Offender Grooming," eff. February 1, 2017 (D.E. 32-1, pp 6-10).

Exh. C:     TDCJ Administrative Directive AD-03.75 (rev. 3), "Offender Identification Cards," eff. February 20, 2009 (D.E. 32-1, pp. 11-18).

| | |
|---|---|
| Exh. D: | TDCJ Administrative Directive AD-03.83 (rev. 7), "Offenders Who Refuse to Comply with Grooming Standards," eff. June 30, 2014 (D.E. 32-1, pp. 19-22). |
| Exh. E: | TDCJ Unit Classification Procedure 6.03, "Religious Beards," eff. December 2015 (D.E. 32-1, pp. 23-29). |
| Exh. F: | TDCJ Approvals for Religious Beards at Male Units in CY 2015 through February 14, 2017 (D.E. 32-1, pp. 30-34). |
| Exh. G: | TDCJ Offenders with a Beard Designator on the Institutional Adjustment Screen as of November 30, 2016, by Religious Preference (D.E. 32-1, p. 35-41). |
| Exh. H: | Number of offenders in TDCJ custody who identify as Muslim as of April 10, 2017 (D.E. 32-1, pp. 42-45). |
| Exh. I: | Affidavit of William Stephens, former TDCJ-CID Deputy Director, in *Ali v. Thaler*, Cause No. 9:09-CV-052, in the Eastern District of Texas, Tyler Division, dated July 10, 2013 (D.E. 32-1, pp. 46-55). |
| Exh. J: | Affidavit of Tony O'Hare, TDCJ-CID Region 1 Director (D.E. 32-1, pp. 56-67). |
| Exh. K: | Relevant portions of Plaintiff's Grievance Records (D.E. 32-1, pp. 68-131). |
| Exh. L: | Identification photographs of Plaintiff with and without facial hair (D.E. 32-1, pp. 132-136). |
| Exh. M: | Identification photographs of offenders before and after haircuts taken at the Gurney Unit in Tennessee Colony from February to April 2013 (D.E. 32-1, pp. 137-147). |

Defendants further attached the following summary judgment evidence to their supplemental summary judgment motion: Exh. A – Notice to Offenders (D.E. 38-1); and Exh. B – Second Affidavit of Mr. O'Hare (D.E. 38-2).

Plaintiff, in turn, has not attached any summary judgment evidence to his response to Defendants' summary judgment motion.  Plaintiff's verified complaint and testimony at the *Spears* hearing, nevertheless, serve as competent summary judgment evidence.  *See Garrett v. Davis*, No. 2:14-CV-70, 2017 WL 1044969, at *3 (S.D. Tex. Mar. 20, 2017). Plaintiff also references in his response to the original summary judgment motion his

numerous grievances filed along with his original complaint.[2]  (D.E. 1; D.E. 35, pp. 16-17).   These grievances are considered summary judgment evidence and are labeled by Plaintiff as follows:

Attach. C:     Grievances appealing Plaintiff's disciplinary convictions.
Attach. D:     Grievances involving Executive Directors, Regional Directors, and Wardens.
Attach. E:     Grievances on stolen, lost, or damaged property.
Attach. F:     Grievances on the denial of religious meals.
Attach. G:     Grievances on inadequate shelter.
Attach. H:     Grievances on the denial of access to the courts.
Attach. I:     Grievances on the denial of showers.
Attach. J:     Grievances on being denied "legal and hygiene" as well as commissary privileges.
Attach K:      Grievances on being denied religious services.
Attach. L:     Grievances on being denied necessities.
Attach. M:     Grievances complaining of sexual harassment.
Attach. N:     Grievances on being denied medical treatment.
Attach. O:     Grievances on officers and ranking officials who harassed Plaintiff.

**A.     Plaintiff's Verified Complaint and *Spears* Hearing Testimony**

According to Plaintiff, a campaign of retaliatory conduct began around the same time as he was given the right to wear a quarter-inch religious beard in February 2013. Plaintiff asserts the retaliation heightened on or about November 22, 2013, when then Warden Gary Currie instructed his subordinates to forge disciplinary cases against Plaintiff if he continued to wear his beard.

Plaintiff alleges that starting in October 2013, Plaintiff was told he would have to be clean shaven to go to the cafeteria for meals, and some officers would close him in his cell to prevent him from going to the cafeteria.  (D.E. 8, pp. 7-8).   The denial of meals

---

[2] Because of the difficulty encountered in scanning Plaintiff's grievances into the CM-ECF computer system, the Court only has paper copies of such grievances in the record.

was not an everyday occurrence, and he believed officers were "nitpicking" because he had filed grievances against them.  (D.E. 8, p. 11).  On two occasions, officers brought Plaintiff a pork tray although he is on a pork-free diet due to his religious beliefs.  (D.E. 8, pp. 12-13). Plaintiff indicated that the problem regarding access to meals worked itself out by mid-2014. (D.E. 8, p. 11).  Plaintiff did not indicate he had lost any weight or suffered any health problems due to the lost meals which occurred about once a week. (D.E. 8, p. 14).

Starting around November 13, 2013, Plaintiff alleges he was regularly denied recreation time outside of his cell.  (D.E. 8, pp. 17-18).  Plaintiff contends when it came to be his turn to have recreation time, the officers would indicate there was a shortage of staff due to breaks or responding to situations with other inmates.  (D.E. 8, p. 17).  Plaintiff was supposed to be allowed one day out for recreation a week and at least two times each month he was refused his recreation time.  (D.E. 8, p. 17).  Plaintiff experienced this denial of recreation time until around October of 2014.  (D.E. 8, p. 18).

Plaintiff alleges that from November 2015 to February 2016 he was housed inadequately.  (D.E. 8, pp. 21-22).  Around November 2015, Plaintiff was put in "Ten Cell of 11 building" because he allegedly caused an altercation with another inmate. (D.E. 8, pp. 22-23).  The cell had no working lights, was infested with ants, and was damp.  (D.E. 8, pp. 23-24).  Plaintiff suffered numerous ant bites and guards refused to allow Plaintiff breakfast for a span of four days because his light was not on, as is required by TDCJ policy.  (D.E. 8, pp. 24-25).

From December 2015 to February 2016, Plaintiff was housed in K-Pod, fifty-eight cell. (D.E. 8, p. 26). This cell had ants at the bottom of the bunk, no heat, and rain could enter from the outside. (D.E. 8, p. 25). The water leaking into the cell caused mold and mildew to collect in the cell. (D.E. 8, p. 25). Plaintiff alleges he told officers about the situation and every officer on duty laughed at him and moved on. (D.E. 8, p. 27). Plaintiff believes he became a target for placement in these cells or officers ignored his conditions because of his wearing a beard. (D.E. 8, pp. 31-32). Further, Plaintiff states he was put in solitary confinement because he was in the dayroom while on restriction. Plaintiff maintains, however, he was given permission to be in the dayroom because his cellmate had tried to attack him. (D.E. 1-3, pp. 11-12). Yet, other officials chose to pursue a disciplinary action against him because of the Plaintiff's situation and constant grievance filing.

Plaintiff maintains over one hundred and fifty dollars of personal property has been misplaced, lost, or damaged. (D.E. 11, p. 8). Plaintiff reports that various items were taken from his cell, including on May 16, 2014, officers searched his cell and took a jar of Vaseline from his personal belongings and on March 25, 2016, a magazine and some pictures were taken. (D.E. 1-3, p. 34; D.E. 8, p. 36). When Plaintiff was released from solitary confinement, the property officers did not provide him with his fan, hotpot, radio, and other personal items. (D.E. 1-3, p. 14). After numerous inquiries and grievances, Plaintiff still had not received his personal items following his release from solitary confinement. (D.E. 1-3, pp. 15-16). Plaintiff also noticed a discrepancy in his inmate trust account. (D.E. 1-3, p. 22).

Plaintiff further maintains that he was denied access to the commissary. Plaintiff states he was routinely denied regular visits to the commissary.  Around September 15, 2015, Plaintiff reported he had not been allowed regular commissary privileges for over ninety days and had only one restricted commissary visit in over sixty days. (D.E. 1-3, p. 23).  On October 22, 2015, Plaintiff was denied a regular visit to the commissary and Plaintiff filed a grievance based on this event, indicating that the property officer lost his ID causing him to only be able to make one purchase in the last four months.  (D.E. 1-3, p. 24).  Plaintiff states that he had a regular commissary visit on November 3, 2015, which was his first since January of that year.  (D.E. 1-3, p. 25).

Additionally, Plaintiff alleges access to his mail was interrupted and interfered with by TDCJ staff. Plaintiff filed numerous complaints about not receiving his Islamic newspaper.  The first reported incidence was August 3, 2015, and Plaintiff eventually received copies of the paper on September 14, 2015.  (D.E. 1-3, p. 22).  Again, in January of 2016, the mail room at the McConnell Unit had received issues of his paper subscription but refused to deliver the paper, and when delivery was finally made, only one of the withheld issues was delivered to Plaintiff.  (D.E. 1-3, p. 31).

On an unspecified date, Plaintiff alleges that Sergeant Jose Fernandez organized an assault on him. (D.E. 11, p. 13). Plaintiff claims that Sergeant Fernandez approached another offender, named Mendoza, to attack him by the "B-side Chow Hall."  (D.E. 11, p. 13).  Plaintiff states that Mendoza informed him, in front of two other inmates, that Sergeant Fernandez approached him about the attack.  (D.E. 11, p. 13). Plaintiff claims that this attack left him with a broken left shoulder.  (D.E. 11, p. 13).

Plaintiff further alleges that in late June or July of 2015, a small group of officers used excessive force because Plaintiff had been telling the officers about how his cell had no lights, an ant infestation, no ventilation, and no outlet to use his fan. (D.E. 11, pp. 5-6). Plaintiff had also been asking about the location of approximately forty-one dollars of his property that was missing. (D.E. 11, p. 6). Plaintiff alleges he wanted to speak to a ranking officer about the issues; however, according to Plaintiff, Sergeant Diaz ignored protocol and ordered the officers to use force on Plaintiff. (D.E. 11, pp. 5-6). An unknown officer and Officer Anthony Mackey jumped on Plaintiff while he was on the floor. (D.E. 11, p. 6). Plaintiff was in hand restraints and a sling, due to recently breaking his left shoulder in the incident mentioned above. (D.E. 11, p. 6). Plaintiff alleges Officer Megan Gonzalez and another unknown officer picked Plaintiff up and drove his left shoulder into the walls as they placed him in his cell. (D.E. 11, p. 6). Finally, Plaintiff alleges he was dumped onto the floor, landing on his left shoulder. (D.E. 11, p. 6). Plaintiff claims that as a result he has suffered nerve damage to his arm and has been experiencing sharp pains, stiffness, and twitching in his left arm and shoulder. (D.E. 11, p. 7).

### B. TDCJ's Grooming Policy

In accordance with the Offender Orientation Handbook, printed in 2004, TDCJ offenders were required to be clean shaven with no beards, mustaches, or hair under the lip. (D.E. 32-1, pp. 46-47). In light of the Fifth Circuit's decision in *Garner* issued on April 2, 2013, TDCJ officials were enjoined from enforcing the no-beard policy. *Garner*, 713 F.3d at 247. As a result, Plaintiff was granted a preliminary injunction in *Strong I* on

December 20, 2013, to enjoin defendants from enforcing the TDCJ's no-beard policy and to permit Plaintiff to grow and maintain a quarter-inch religious beard.  (*Strong I*, D.E. 67).

Effective August 1, 2015, the TDCJ's Security Memorandum 06.16 provided that religious beards: (1) "shall not extend more than one-half (1/2) inch in length outward from the face;" and (2) "shall not be sculpted and must remain neatly trimmed and clean." (D.E. 32-1, p. 3).  This grooming policy further stated that:

> Offenders with religious beards are required to take a clean-shaven photo each year, during the month of the offender's birthday.  This photo will be captured and stored for current identification purposes only.  The offender is required to shave prior to the scheduled lay-in.

(D.E. 32-1, pp. 4-5).

The grooming policy was revised in Security Memorandum SM-06.16, effective February 1, 2017, to reflect that "[r]eligious beards shall be no more than fist length and not exceed four inches outward from the face."  (D.E. 32-1, p. 7).  This religious exemption is available to offenders of any faith and is granted through a request for the exemption.  (D.E. 32-1, pp. 8, 24).  The revised grooming policy did not alter the requirement that such beards shall not be sculpted and must remain neatly trimmed. (D.E. 32-1, p. 8).  Furthermore, the annual shaving requirement was not changed in the February 1, 2017 policy.  (D.E. 32-1, p. 9).  From 2015 through February 14, 2017, over 84,000 inmates from nearly every religious group have gained approval to grow a religious beard.  (D.E. 32-1, pp. 32-34).

In a "Notice to Offenders" issued on December 1, 2017, the TDCJ again changed its policy to reflect that: (1) the practice of requiring annual shaving of beards is no longer implemented; and (2) "offenders with religious beards are permitted to shave the moustache, neck, and cheek line of their religious beards provided that the religious beard remains neatly trimmed and clean, and that not lines, designs, patterns, or symbols are cut or shaped into the religious beard."   (D.E. 38-1, 38-2).   Mr. O'Hare, who has been employed by the TDCJ since May 1987 in numerous positions including Assistant Warden and Senior Warden, testified in his affidavit attached to the supplemental summary judgment motion that the "TDCJ is in the process of amending its written policies to reflect this change."   (D.E. 38-2, p. 2).

At a telephone conference conducted by the undersigned on January 17, 2018, Plaintiff stated that other offenders had told him about the new policy changes regarding religious beards but that he was not made aware of such changes in writing.   Plaintiff indicated that the new policy changes, assuming they could be verified, addressed his RLUIPA claims regarding the annual shaving requirement and ability to trim his beard to a clean and appropriate look.[3]   Mr. O'Hare verified in his affidavit that:

> Absent any unforeseen disciplinary issues or failure to abide by the religious beard specifications outlined in the Offender Orientation Handbook and updated with the Notice to Offenders effective December 1, 2017, it is anticipated [Plaintiff] will continue to be permitted to wear his four-inch religious beard.

(D.E. 38-2, p. 3).

---

[3] Plaintiff further acknowledged his understanding that the shaving requirement was changed from mandating an annual shave to requiring a shave every three years.

### C.    Plaintiff's Grievances

In his Step 1 grievance (Grievance No. 2015152233), dated June 2, 2015, Plaintiff appealed from a disciplinary conviction he received for fighting another inmate.  (D.E. 32-1, pp. 70-71).  Plaintiff alleged that Sergeant Fernandez staged an assault on him in May 2015 by having another inmate attack Plaintiff.  (D.E. 32-1, p. 70).  Plaintiff claimed, therefore, that he was maliciously prosecuted by TDCJ officials and that his due process rights were violated.  (D.E. 32-1, pp. 70-71).  In denying relief, the reviewing officer found no procedural errors in connection with the disciplinary proceeding as well as sufficient evidence to support the guilty verdict.  (D.E. 32-1, p. 71).

In a Step 2 grievance dated July 4, 2015, Plaintiff appealed from the denial of his Step 1 grievance.  (D.E. 32-1, pp. 68-69).  Therein, Plaintiff complained about the excessive punishment received and violations of his equal protection rights.  (D.E. 32-1, p. 68).  Plaintiff did not mention in the Step 2 grievance Sergeant Fernandez or the organized assault allegedly perpetrated upon Plaintiff.  (D.E. 32-1, pp. 68-69).  The reviewing officer denied relief to Plaintiff, finding that sufficient evidence was presented to support the finding of guilt.  (D.E. 32-1, p. 69).

Plaintiff proceeded to file numerous other grievances after May 2015, with none of the grievances specifically claiming that Defendants Fernandez, Diaz, Mackey, or Gonzales used excessive force against him.  (D.E. 32-1, pp. 103-29).  Plaintiff mentioned a use of force in Step 1 and Step 2  grievances dated June 24, 2015, and July 27, 2015, respectively (Grievance No. 2015164744).  However, Plaintiff's claim in this set of grievances related to an appeal from a disciplinary conviction for assaulting Defendant

Gonzales during the use of force.  (D.E. 32-1, pp. 115-18).  Each of these grievances were denied on the grounds that no due process violations were identified and that sufficient evidence was presented at the disciplinary hearing to support the finding of guilt.  (D.E. 32-1, pp. 116, 118).

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  *Id.*  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider

hearsay evidence in affidavits and depositions).   Unauthenticated and unverified documents do not constitute proper summary judgment evidence.   *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).   To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.   Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.   "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."   *Caboni*, 278 F.3d at 451.   "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."   *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.   "[T]he substantive law will identify which facts are material.   Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Id.* at 248.

## V.   DISCUSSION

### A.   RLUIPA Claims

Defendants contend in their original summary judgment motion that Plaintiff's RLUIPA claims fail because Plaintiff cannot demonstrate the TDCJ's grooming policy substantially burdens Plaintiff's religious exercise.  (D.E. 32, pp. 11-15).  Defendants further contend that, based on the competent summary judgment evidence, the challenged grooming policy is the least restrictive means to further the TDCJ's compelling security and costs interests.  (D.E. 32, pp. 15-24).  Defendants contend in their supplemental summary judgment motion that Plaintiff's RLUIPA claim are now moot based on changes made to the TDCJ's religious beard policy, effective December 1, 2017.  (D.E. 38).

The undersigned will first address Defendants' mootness argument.  Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.  U.S. Const., Art. III, § 2.  This article requires parties seeking to invoke federal court jurisdiction to demonstrate they have a legally cognizable interest or personal stake in the outcome of a case.  *Genesis Healthcare v. Symczyk*, 569 U.S. 66, 71 (2013); *Payne v. Progressive Financial Services, Inc.*, 748 F.3d 605, 607 (5th Cir. 2014).  A live controversy must exist at every stage of the litigation.  *Genesis*, 569 U.S. at 71.

A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  In other words, if a controversy between parties resolves to the point that they no longer qualify as "'adverse parties with sufficient legal interests to maintain

the litigation,'" a court is without power to entertain the particular claim.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 351 (5th Cir. 2006) (per curiam)). Courts, therefore, lack "constitutional jurisdiction" to resolve an issue where there is no Article III controversy. *See Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

Defendants have submitted evidence demonstrating that TDCJ changed its religious beard policy to eliminate the annual shaving requirement and to permit offenders with religious beards to neatly trim and clean them without any designs, patterns, or symbols.  (D.E. 38-1, 38-2).  This change of policy is reflected in a "Notice to Offenders" issued on December 1, 2017.  (D.E. 37-1).  While the TDCJ's policy has not yet officially been amended to include this change, Mr. O'Hare verified that Plaintiff has permission to wear his four-inch beard in accordance with the Offender Orientation Handbook and the updated policy set forth in the December 1, 2017 Notice to Offenders. (D.E. 38-2, pp. 2-3).

Based on a review of the new policy contained in the Notice to Offenders and Mr. O'Hare's affidavit, there is no longer a controversy between parties such that they qualify as adverse parties with sufficient legal interests to maintain the litigation as to Plaintiff's RLUIPA claims.  Plaintiff acknowledged at the January 17, 2018 telephone conference that the policy changes in the Notice to Offenders addressed and resolved his RLUIPA claims regarding the annual shaving requirement and ability to trim his beard to a clean

and appropriate look.[4]   Accordingly, it is respectfully recommended that Defendants'
supplemental summary judgment motion be granted and that Plaintiff's RLUIPA claims
be dismissed as moot.[5]

### B.   Retaliation Claims

Retaliation is not expressly referred to in the Constitution; however, it is
nonetheless actionable because retaliatory actions may tend to chill an individual's
exercise of constitutional rights.   *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972).
Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of
ordinary firmness from further exercising his constitutional rights.'"   *Bibbs v. Early*, 541
F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.
2006)).   "A prison official may not retaliate against or harass an inmate for exercising the
right of access to the courts, or for complaining to a supervisor about a guard's
misconduct."   *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995).   The purpose of
allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly
discouraged from exercising their constitutional rights.   *Morris*, 449 F.3d at 686.

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are
regarded with skepticism and are carefully scrutinized by the courts."   *Adeleke v.
Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).   In

---

[4] On January 29, 2018, the Court received a letter from Plaintiff.  (D.E. 39).  Therein, Plaintiff complained that he
was not properly notified of the hearing and could not adequately prepare for it.  (D.E. 39, pp. 1-2).  While claiming
he was not aware of the latest grooming policy change in effect at the time of the telephone hearing, Plaintiff stated
that he had not been ordered to shave his religious beard.  (D.E. 39, p. 2).  Plaintiff presents nothing in his letter to
suggest that his RLUIPA claims have not been resolved by the new policy.

[5] Because Plaintiff's RLUIPA claims have been rendered moot, it is unnecessary to address Defendants' contentions
advanced in their original summary judgment motion.

addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.* For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id.* at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. *Woods*, 60 F.3d at 1166. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Id.*

Plaintiff alleges that, after he was granted the right to wear a ¼ inch beard in early 2013, a series of events occurred that demonstrated a pattern of retaliatory behavior. Specifically, Plaintiff alleged that: (1) starting in October 2013, Plaintiff was informed he would have to be clean shaven to go to the cafeteria for meals and some officers would

close him in his cell to prevent him from going to the cafeteria; (2) on or about November 22, 2013, former Warden Currie instructed his subordinates to forge disciplinary cases against Plaintiff if he continued to wear his beard; (3) Plaintiff was placed in solitary confinement in response to disciplinary forms that he alleges were forged by various officers; (4) certain property of Plaintiff's either disappeared or was lost; (5) he was deliberately not provided pork-free meals in conformity with his religious preferences and on several occasions he was denied certain meals all together; (6) he was denied access to showers, recreation time, and adequate living conditions; (7) officers stopped allowing him access to the commissary even on a restricted basis; (8) officers allegedly delayed and/or tampered with his mail on several occasions;  (9) his cell was frequently searched by corrections officers; and (10) Sergeant Fernandez organized an assault on Plaintiff by other offenders.

In the October 11, 2016 M&R, the undersigned construed Plaintiff's allegations as asserting a retaliation claim but noting that "none of the defendants singularly orchestrated the retaliation or participated in all incidents."  (D.E. 12, p. 17).  Because Warden Barber was the only defendant in a position of control over the McConnell Unit, the undersigned recommended retaining Plaintiff's retaliation claim against Warden Barber in his official capacity for injunctive relief.  (D.E. 12, p. 17).  The undersigned further recommended dismissing Plaintiff's retaliation claims against all other defendants because his allegations failed to show that any single defendant was involved in a chronology of events from which retaliation could be inferred.  (D.E. 12, pp. 17-18).

Thus, for purposes of the Defendants' summary judgment motion, the issues presented are whether a campaign of retaliation was undertaken against Plaintiff and whether Warden Barber may be held responsible.  According to Defendants, Plaintiff "has alleged no set of facts or legal theories on which the Court can find [Warden Barber] liable" with regard to Plaintiff's "broadly conceived retaliation claim."  (D.E. 32, p. 24).

Defendants first contend that Plaintiff has neither alleged facts nor presented competent summary judgment evidence to show that Warden Barber personally retaliated against him.  (D.E. 32, p. 25).  Plaintiff contends that he sent Warden Barber letters regarding his subordinate officers' misconduct but that Warden Barber failed to investigate and devise a plan to ensure Plaintiff's safety.  (D.E. 35, p. 16).  Plaintiff further complains about Warden Barber's denial of some of Plaintiff's grievances.  (D.E. 35, p. 16).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).  Plaintiff has attached over 100 sets of Step 1 and Step 2 grievances to his original complaint, a few of which Warden Barber answered at the Step 1 level.  (D.E. 1, Attachments).  In some of the grievances submitted, Plaintiff challenged his various disciplinary convictions resulting from violating the TDCJ's grooming policy prohibiting him from wearing his religious beard over a certain length.  (D.E. 1, Attach. C).  Warden Barber answered and rejected Grievance Nos. 2014063478 and 2014064860 on this issue, with both decisions being reversed at the Step 2 level and his disciplinary convictions overturned.  Certain Step 1 grievances filed by Plaintiff (Grievance Nos. 2013137889, 2014020291, 2014017351,

2014017197, and 2014019661) on other prison matters were rejected by Warden Barber and affirmed at the Step 2 level.

The evidence presented by Plaintiff reflects his dissatisfaction with the actions taken by Warden Barber, both in not investigating Plaintiff's complaints and in rejecting Plaintiff's Step 1 grievances.   As such, Plaintiff fails to demonstrate a cognizable constitutional claim based on any actions undertaken by Warden Barber in addressing Plaintiff's grievances.  *See Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor).   Plaintiff otherwise has failed to show that Warden Barber personally participated in any retaliatory acts.

The undersigned next considers whether Warden Barber is liable on Plaintiff's retaliation claims in his supervisory role.  According to Defendants, Plaintiff has failed to present any evidence showing that Warden Barber improperly trained or supervised his subordinates, that the requisite causal link exists between Warden Barber's conduct as a supervisor and the alleged constitutional violations, and that Warden Barber acted with deliberate indifference to Plaintiff's plight.   (D.E. 32, p. 25).   Plaintiff responds that Warden Barber supervised "his subordinates to violate multiple constitutional acts of [r]eligious as well as deliberate indifference [sic] with the intent to cause harm."  (D.E. 35, p. 15).

A prison supervisor cannot be held liable for the misconduct of his or her subordinates.  *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Id.* at 303-

04.  *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983."  *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).  "Supervisory officials may be held liable if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries."  *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).  A supervisor may also be liable under § 1983 for failure to supervise or train if (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the constitutional violation; and (3) the failure to train or supervise amounts to deliberate indifference to the plaintiff's constitutional rights.  *Roberts v. City of Shreveport,* 397 F.3d 287, 292 (5th Cir. 2005).  Establishing a supervisor's deliberate indifference generally requires a plaintiff to demonstrate "at least a pattern of similar violations."  *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 427 (5th Cir. 2006) (citations omitted).

Plaintiff testified at the *Spears* hearing that he was given the right to wear a quarter-inch beard in 2013 and that a campaign of retaliatory conduct soon commenced against him after being afforded that right.  While a few of Plaintiff's disciplinary convictions related to violations of the grooming standard were overturned in 2014, the competent summary judgment establishes that Plaintiff received thirty disciplinary

convictions from the beginning of 2013 through the end of 2015 which were neither overturned on appeal nor otherwise called into question.  (D.E. 32-1, pp. 62-63).

Plaintiff's disciplinary convictions arose from numerous charges of refusing to obey orders, creating disturbances, being out of place, threatening and assaulting officers, fighting with another offender, use of indecent and vulgar language or gestures, participating in a riot and attempting to establish an inappropriate relationship with staff. (D.E. 32-1, pp. 62-63). In addition, Plaintiff has submitted numerous grievances regarding his complaints on issues including lost property, denial of religious meals, inadequate shelter, denial of access to the courts, denial of showers and other necessities, denial of commissary privileges, denial of religious services, sexual harassment, denial of medical treatment, and general harassment by prison officials.  Plaintiff failed to substantiate his complaints and obtain relief in an overwhelming majority of his administrative grievances.

Plaintiff's lack of success in challenging both his disciplinary convictions and the various conditions of his confinement suggests that it was his own conduct, rather than any retaliatory intent, that motivated the conduct of TDCJ staff in taking action against Plaintiff.  At best, the competent summary judgment evidence shows only a temporal proximity between the time when Plaintiff was permitted to wear a religious beard and the onset of the purported campaign of harassment.  Such temporal proximity alone is insufficient to establish "but for" causation in a retaliation claim.  *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009).  Plaintiff fails to present any competent summary

judgment evidence to demonstrate anything more than his belief he was the victim of a campaign of retaliation.

Even if Plaintiff could establish retaliatory conduct toward him after being allowed to wear a religious beard in 2013, he has not demonstrated that Warden Barber bears any responsibility.  Plaintiff presents no competent summary judgment evidence to demonstrate that Warden Barber, in his role as a supervisory official, either was complicit or otherwise approved of the purported retaliatory actions taken against Plaintiff.  Indeed, the record is devoid of any evidence to establish that a campaign of retaliation, orchestrated by Warden Barber, was instigated against Plaintiff.   Plaintiff otherwise offers no competent summary judgment to show: (1) Warden Barber failed to train or properly supervise his subordinates; (2) any causal link between Warden Barber's conduct as a supervisor and the purported retaliatory conduct; and (3) Warden Barber's conduct amounted to deliberate indifference to Plaintiff's constitutional rights.

In sum, when viewing the competent summary judgment in a light most favorable to Plaintiff, no genuine issues of material fact exist as to whether Plaintiff can demonstrate a retaliation claim against Warden Barber.  Accordingly, the undersigned recommends that Defendants are entitled to summary judgment on Plaintiff's retaliation claims against Warden Barber in his official capacity and dismissal of same with prejudice.[6]

---

[6] On September 25, 2017, this Court received a letter from Plaintiff in which he alleged that TDCJ staff is subjecting Plaintiff to retaliatory acts and harassment in the form of "three forged" disciplinary proceedings within the last three months.  (D.E. 36).  Plaintiff also complains in the letter about the conditions of his cell.  (D.E. 36, p. 3).  In his January 29, 2018 letter, Plaintiff further complains about harassment and retaliation occurring during January, 2018.

### C.  Excessive Force Claims

In their summary judgment motion, Defendants seek dismissal of Plaintiff's excessive force claims for failure to exhaust his administrative remedies.  (D.E. 32, pp. 26-28).  The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court.  *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).  Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints.  *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances.  *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam).  Step 1 requires the

---

(D.E. 39).  Plaintiff, however, has not sought leave to amend his complaint with these additional allegations of retaliation, and they are disregarded.

inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has fifteen days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.*

The Fifth Circuit takes "a strict approach to the exhaustion requirement." *See Randle v. Woods*, 299 F. App'x 466, 467 (5th Cir. 2008) (citing *Woodford*, 548 U.S. at 92-93); *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003), (per curiam), *overruled by implication on other grounds by Jones*, 549 U.S. at 216. Both steps of the TDCJ's administrative grievance process must be completed in order to file suit in federal court. *Id* at 515-16 ("[A] prisoner must pursue a grievance through both steps for it to be considered exhausted."). *See also Dillion v. Rogers,* 596 F.3d 260, 268 (5th Cir. 2010) ("under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly.").

Defendants Fernandez, Diaz, Mackey, and Gonzalez assert that Plaintiff failed to file any grievances alleging excessive force claims against them. (D.E. 32, p. 27). These defendants contend that the grievances filed by Plaintiff mentioned uses of force against him by officers but only sought to appeal two separate disciplinary convictions, the first where he was convicted of assaulting another offender and the second where he was convicted of assaulting Defendant Gonzalez. (D.E. 32, pp. 27-28). Plaintiff responds

that he exhausted his excessive force claims and attached all his grievances reflecting exhaustion with his original complaint.  (D.E. 35, pp. 16-17).

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies.  The Fifth Circuit noted that one of the purposes of the exhaustion requirement is to give officials "time and opportunity to address complaints internally."  *Johnson*, 385 F.3d at 517 (citations omitted).  A grievance "should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."  *Id.*  Further, the nature of the complaint will influence how much detail is necessary.  *Id.*  For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition, such as vermin in a cell or that commissary costs are too high, might not identify any individual.  *Id*.

In this case, Plaintiff has failed to exhaust his excessive force claims through both steps of the grievance process.  Plaintiff filed a Step 1 and Step 2 grievance (Grievance No. 2015152233) in which he appealed from a disciplinary conviction for fighting another inmate.  (D.E. 32-1, pp. 68-71).  As part of his Step 1 grievance, Plaintiff alleged that Defendant Fernandez staged an assault on him.  (D.E. 32-1, p. 70).  The Grievance Investigation Worksheet for this grievance, however, reflects the existence of one grievable issue, whether Plaintiff's disciplinary conviction should be overturned.  (D.E. 32-1, p. 73).  Plaintiff did not mention Defendant Fernandez in the Step 2 grievance or otherwise refer to the alleged assault staged by Defendant Fernandez.

Plaintiff also mentioned a use of force in Step 1 and Step 2 grievances dated June 24, 2015, and July 27, 2015, respectively (Grievance No. 2015164744).  (D.E. 32-1, pp. 115-118)  However, Plaintiff's sole claim in this set of grievances related to an appeal from a disciplinary conviction for assaulting Defendant Gonzales during the use of force. (D.E. 32-1, pp. 115-118).

When viewing the competent summary judgment in a light most favorable to Plaintiff, no genuine issues of material fact exist as to whether Plaintiff exhausted his excessive force claims against Defendants Fernandez, Diaz, Mackey, and Gonzalez.  The uncontroverted summary judgment evidence demonstrates that the only issues exhausted through the TDCJ's two-step administrative process in Grievance Nos. 2015152233 and 2015164744 were claims appealing from two disciplinary convictions.[7]  Plaintiff's grievances fail to provide prison officials with sufficient notice to address any claim of excessive force against Defendants Fernandez, Diaz, Mackey, and Gonzalez. Accordingly, in the absence of any genuine issues of material fact, these defendants are entitled to summary judgment in their favor and dismissal of Plaintiff's excessive force claims with prejudice for lack of exhaustion.[8]

---

[7] As noted above, Plaintiff has attached to his original complaint over 100 sets of Step 1 and Step 2 grievances in which he appealed his various disciplinary convictions and challenged many aspects of his conditions of confinement.  Plaintiff makes no attempt to identify the specific grievance or grievances where he claimed excessive force against Defendants Fernandez, Diaz, Mackey, and Gonzalez, relying instead on the Court to parse through his voluminous submissions.  A careful review of these grievances fails to indicate Plaintiff properly grieved any claim of excessive force allegedly committed by Defendants Fernandez, Diaz, Mackey, and Gonzalez.

[8] A dismissal for failure to exhaust is generally without prejudice.  However, because any new grievance filed by Plaintiff would be time-barred under the TDCJ's grievance procedure and the failure to exhaust cannot be cured, dismissal with prejudice is appropriate in this case.  *See Marsh v. Jones*, 53, F.3d 707, 710 (5th Cir. 1995) (holding that dismissal with prejudice warranted when administrative relief is time barred or otherwise precluded).

## VI.    CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that Defendants' Motion for Summary Judgment (D.E. 32) and Supplemental Motion for Summary Judgment (D.E. 38) be **GRANTED** as follows: (a) that Plaintiff's RLUIPA claims against **Warden Barber** in his official capacity be **DISMISSED with prejudice** as moot; (2) that Plaintiff's retaliation claims against **Warden Barber** in his official capacity be **DISMISSED with prejudice**; and (3) that Plaintiff's excessive force claims against **Defendants Fernandez, Diaz, Mackey, and Gonzalez** be **DISMISSED with prejudice** for lack of exhaustion.   It is further recommended the Court adopt the undersigned's October 11, 2016 Memorandum and Recommendation (D.E. 12), overrule Plaintiff's objections (D.E. 14), and enter final judgment dismissing this case with prejudice.

Respectfully submitted this 1st day of February, 2018.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).